NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GENE J. STONEBARGER (SBN 209461)
gstonebarger@stonebargerlaw.com
RICHARD D. LAMBERT (SBN 251148)
rlambert@stonebargerlaw.com
CRYSTAL L. KELLY (SBN 278084)
cmatter@stonebargerlaw.com
**STONEBARGER LAW, APC**
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEMETRIUS MARTIN,** an individual; **OMAR ATEBAR**, an individual; **ESTHER VEGA**, an individual; and, **JESUS VEGA**, an individual; on behalf of themselves and all other similarly situated persons;<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**SAMSUNG ELECTRONICS AMERICA, INC.,** a New York Corporation; and **SAMSUNG ELECTRONICS CO., LTD.,** a Foreign Corporation,<br><br>**DEFENDANTS.** | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **FRAUDULENT CONCEALMENT / NON-DISCLOSURE;**<br>2. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW;**<br>3. **VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW;**<br>4. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT; AND**<br>5. **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   JURISDICTION AND VENUE ................................................................. 3

III.  THE PARTIES ........................................................................................... 5

    A.    PLAINTIFFS ................................................................................... 5

    B.    DEFENDANTS ................................................................................ 5

    C.    AGENCY & CONCERT OF ACTION ........................................... 6

IV.   FACTUAL BACKGROUND .................................................................... 7

    A.    SAMSUNG'S GALAXY S AND NOTE PRODUCTS.................... 7

    B.    THE DANGERS OF THE LITHIUM ION BATTERIES IN
            SAMSUNG'S SMARTPHONES ..................................................... 9

    C.    SAMSUNG WAS AND IS AWARE OF OVERHEATING PROBLEMS
            WITH THE SUBJECT PHONES, FAILED TO FIX THE PROBLEM OR
            WARN ITS CUSTOMERS ............................................................. 11

    D.    SAMSUNG'S CONCEALED OF THE DANGERS POSED BY ITS PRODUCTS... 16

    E.    PLAINTIFFS' EXPERIENCES ..................................................... 21

           1.    Demetrius Martin's Samsung S6 Edge+ ...................................... 21

           2.    Omar Atebar's Experience ...................................................... 22

           3.    Esther Vega's Experience ....................................................... 23

           4.    Jesus Vega's Experience ........................................................ 23

V.    CLASS ACTION ALLEGATIONS ......................................................... 23

VI.   CAUSES OF ACTION ............................................................................. 26

    <u>FIRST CAUSE OF ACTION</u> ............................................................... 26
    FRAUDULENT CONCEALMENT/NON-DISCLOSURE.......................... 26
    CAL. CIV. CODE §§ 1709 AND 1710(3) .............................................. 26
    (PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS) ............ 26

SECOND CAUSE OF ACTION ................................................................... 28
VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ........................... 28
CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. ................................................ 28
(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS) ............................ 28

THIRD CAUSE OF ACTION ................................................................... 29
VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW .............................. 29
CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.* ............................................... 29
(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS) ............................ 29

FOURTH CAUSE OF ACTION .................................................................. 30
VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT ................................. 30
CAL. CIV. CODE §§ 1750 *ET SEQ.* ........................................................... 30
(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS) ............................ 30

FIFTH CAUSE OF ACTION ..................................................................... 31
UNJUST ENRICHMENT ......................................................................... 31
(PLAINTIFFS AND THE CLASS AGAINST SAMSUNG) ...................................... 31

VII. PRAYER FOR RELIEF ....................................................................... 31

VIII. JURY DEMAND ............................................................................ 32

**CLASS ACTION COMPLAINT**

Plaintiffs **DEMETRIUS MARTIN, OMAR ATEBAR, ESTHER VEGA,** and **JESUS VEGA** (collectively hereinafter, "**PLAINTIFFS**") bring this action on behalf of themselves and all other similarly situated individuals, by and through their attorneys, for injunctive relief, restitution and damages caused by the conduct of **DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.** and **SAMSUNG ELECTRONICS CO., LTD.** (collectively hereinafter, "**SAMSUNG**"), and each of them, as follows:

I.    <u>**INTRODUCTION**</u>

1.    **SAMSUNG** manufactures and sells smartphones which pose a threat to the safety of consumers.  These dangers made international headlines when numerous Samsung Note7 devices exploded and burst into flames leading to a complete recall of the product.  **SAMSUNG** has yet to determine the cause of the problems with the Note7, and continues to sell, market, and distribute other smartphones which are at risk of overheating, fire and explosion.  **SAMSUNG** recalled the Note7 while leaving other dangerous products in the marketplace.  Unfortunately, the problem is not limited to the Note7.  The Note7 recall was a Band-Aid to a pervasive problem for which major surgery was required.

2.    **SAMSUNG** has been made repeatedly aware of the issues with its smartphones, yet has failed to warn consumers of the dangers posed by the lithium ion batteries in the devices. **SAMSUNG** markets its phones as durable, reliable, always available, and the "hub" of consumers' lives.  **SAMSUNG** expects and encourages consumers to use their phone for all aspects of their lives and to always have their phone with them.  Despite this expected ubiquity, **SAMSUNG** conceals from consumers that the products are, in fact, ticking time bombs.

3.    **SAMSUNG** designs, manufactures and advertises the batteries in its smartphones to have maximum duration with minimum charge times.  **SAMSUNG** also designs, manufactures and advertises its smartphones to have superior computing capacity and power, and to effectively run a multitude of applications and processes simultaneously.  The desire to design a product with each of these, and other, qualities led **SAMSUNG** to manufacture smartphones which pose a risk of overheating, fire and explosion.  While **SAMSUNG** recalled the Note7, it has failed, and continues to fail, to recall other dangerous products, failed to warn consumers of the dangers they pose, and

❀
LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1   failed to adequately respond to consumers whose phones have suffered from overheating, fire and

2   explosion.

3       4.      The extreme risk of overheating, fire, and explosion along with **SAMSUNG'S**

4   concomitant refusal to recall the products leaves **PLAINTIFFS** and each member of the Class

5   owning phones that have the propensity for the following:





27   / / /

28   / / /

**CLASS ACTION COMPLAINT**                                                    2

## II.   JURISDICTION AND VENUE

5.     This action is within the jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2).  **PLAINTIFFS** and **SAMSUNG** are citizens of different states and the amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over **MARTIN, ATEBAR, E. VEGA,** and **J. VEGA** because they reside in California, and submit to the Court's jurisdiction in this case. Additionally, **MARTIN** lives in this District and purchased the device at issue in this District.

7.     This Court has personal jurisdiction over **SAMSUNG ELECTRONICS AMERICA, INC.,** because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including:  Samsung Media Solutions Center America, a division of **SAMSUNG ELECTRONICS AMERICA, INC.,** is based out of Mountain View, California; and, **SAMSUNG ELECTRONICS AMERICA, INC.'S** printer product division is headquartered in Irvine, California.[1]

8.     This Court has personal jurisdiction over **SAMSUNG ELECTRONICS CO., LTD** because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including:  Samsung Strategy and Innovation Center, a global organization within **SAMSUNG'S** Device Solutions division, is headquartered in Menlo Park, California; Samsung Information Systems America is headquartered in San Jose, California; Samsung Semiconductor, Inc. is headquartered in San Jose, California; and, Samsung Open Innovation Center is located in Palo Alto, California.[2]

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because **SAMSUNG** innovates, researches, develops, improves, and markets a substantial amount of phones in this

---

[1] See Samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutSamsung/Samsung_electronics /us_divisions/; http://www.samsung.com/ContactUs/ElectronicsAmerica/index.htm; http://www.samsung.com/ContactUs/InformationSystemsAmerica/index.htm; see also Gannes, Liz, "Samsung Confirms Four New Bay Area Offices," Allthingsd.com (Dec. 29, 2012 at 2:13PM) available at: http://allthingsd.com/20121229/SAMSUNG-confirms-four-new-bay-area-offices/; "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00 AM) available at: http://www.businesswire.com/news/home/20120919005456/en/Samsung-Electronics-Announces-Silicon-Valley-Center.
[2] *Ibid.*

District.  **SAMSUNG** "has been a presence in Silicon Valley for more than two decades."[1]

**SAMSUNG'S** Media Solutions Center (a.k.a. Research and Development Center)[2], which is located in this District, "delivers innovative, connected experiences across Samsung's ***mobile*** and digital ecosystem that enhance the experience of owning a Samsung product,"[3] is "[c]omprised of two six-story LEED Platinum designed office buildings totaling nearly 385,000 square feet, and two parking structures," and "serves as an epicenter of innovation and is home to some of the world's top talent," including "more than 250 doctorate recipients from some of the best schools around the globe."[4] According to a **SAMSUNG** press release, the "great successes" of the labs housed at the Media Solutions Center "benefit Samsung's vast portfolio of mobile, visual display, home appliance, wearable and audio and stereo products."[5] **SAMSUNG** also maintains and operates a Strategy and Innovation headquarters "within Samsung's Device Solutions division, with the core missions of open innovation in collaboration with entrepreneurs and strategic partners," within this District. Not to mention, Samsung's Information Systems America and Semiconductor divisions are headquartered in this District, along with an Open Innovation Center.[6] Therefore, a substantial part of the events and/or omissions alleged in this complaint, giving rise to **PLAINTIFFS'** claims, occurred in, emanated from and/or were directed from this District.  Venue is also proper because **SAMSUNG** is subject to this District's personal jurisdiction with respect to this action.

/ / /

/ / /

/ / /

---

[1] "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00 AM) available at: http://www.businesswire.com/news/home/20120919005456/en/samsung-Electronics-Announces-Silicon-Valley-Center.

[2] See *Ibid.*

[3] See samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutsamsung/samsung_electronics/us_divisions/.

[4] "Research at the Core of SAMSUNG Research America's New Mountain View Campus," SAMSUNG Newsroom (Sept. 1, 2015) available at: https://news.SAMSUNG.com/global/research-at-the-core-of-SAMSUNG-research-americas-new-mountain-view-campus.

[5] *Ibid.*

[6] See SAMSUNG, U.S. Divisions, available at:
http://www.SAMSUNG.com/us/aboutSAMSUNG/SAMSUNG_electronics /us_divisions/.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

III.     **THE PARTIES**

    A.     **PLAINTIFFS**

    10.     Plaintiff **DEMETRIUS MARTIN** is a resident of San Francisco, California. Plaintiff **MARTIN** purchased a Samsung Galaxy S6 Edge+ smartphone in California, and suffered the injuries and damage complained of herein in the State of California.

    11.     Plaintiff **OMAR ATEBAR** is a resident of Elk Grove, California. Plaintiff **ATEBAR** purchased a Samsung Galaxy S7 smartphone in Elk Grove, California, and suffered the injuries and damage complained of herein in the State of California.

    12.     Plaintiff **ESTHER VEGA** ("**E. VEGA**") is a resident of Elk Grove, California. Plaintiff **E. VEGA** came into possession of her Samsung Galaxy S7 in Elk Grove, California, and suffered the injuries and damage complained of herein in the State of California.

    13.     Plaintiff **JESUS VEGA** ("**J. VEGA**") is a resident of Stockton, California. Plaintiff **J. VEGA** came into possession of his Samsung Galaxy Note5 in Elk Grove, California, and suffered the injuries and damage complained of herein in the State of California.

    B.     **DEFENDANTS**

    14.     **PLAINTIFFS** are informed and believe, and thereon allege, that **SAMSUNG ELECTRONICS CO., LTD.** was, at all relevant times mentioned herein, a foreign corporation organized and existing under the laws of the Republic of Korea, with its principal place of business located at 129 Samsung-Ro, Yeongtong-Gu, Suwon-si, Gyeonggi-do, Korea. **SAMSUNG ELECTRONICS CO., LTD.** is the parent company of **SAMSUNG ELECTRONICS AMERICA, INC**.

    15.     **PLAINTIFFS** are informed and believe, and thereon allege, that **SAMSUNG ELECTRONICS AMERICA, INC.** was, at all relevant times mentioned herein, a New York corporation organized and existing under the laws of the state of New York and registered with the California Secretary of State to conduct business in California. **SAMSUNG ELECTRONICS AMERICA, INC.** touts itself as "a recognized innovation leader in consumer electronics design

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

and technology."[1] **SAMSUNG ELECTRONICS AMERICA, INC.** is also a wholly owned subsidiary of Defendant **SAMSUNG ELECTRONICS CO., LTD.**

16. **SAMSUNG** is the largest seller of smartphones in the world, dominating 22.8% of the worldwide market in the second quarter of 2016, nearly double the market share of the next highest competitor.[2]  In 2011 alone, **SAMSUNG** reported $143.1 billion in sales and had 206,000 employees worldwide.[3]  As of March 2016, **SAMSUNG** held the largest share of the United States' smartphone market, at 28.8 percent.[4]

C.   **AGENCY & CONCERT OF ACTION**

17. At all times herein mentioned, **SAMSUNG**, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, and/or joint venturers of each of the **SAMSUNG** entities named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining **SAMSUNG** entities. Each of the **SAMSUNG** entities aided and abetted, encouraged, and rendered substantial assistance to the other **SAMSUNG** entities in breaching their obligations to **PLAINTIFFS** and the Class, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the **SAMSUNG** entities acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

/ / /

/ / /

---

[1] See Samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutsamsung/samsung_electronics/us_divisions/.
[2] The next closest competitor was Apple with only 11.7% in worldwide sales of smartphones. "Smartphone Vendor Market Share, 2016 Q2," International Data Corporation (IDC), available at: http://www.idc.com/prodserv/smartphone-market-share.jsp.
[3] "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00AM) available at: http://www.businesswire.com/news/home/20120919005456/en/samsung-Electronics-Announces-Silicon-Valley-Center.
[4] Spence, Ewan "Samsung Topples Apple as Galaxy S7 Defeats iPhone" available at http://www.forbes.com/sites/ewanspence/2016/05/04/samsung-overtakes-apple-us-smartphone-sales/#dcc15d3289f9

## IV.    FACTUAL BACKGROUND

### A.    SAMSUNG'S GALAXY S AND NOTE PRODUCTS

18.    **SAMSUNG** makes Android-based mobile devices, including its popular "Galaxy" line of smartphones, phablets, and tablets. New flagship smartphones are released each year and are identified as part of the "Galaxy S" series. The first generation "Galaxy S" phone hit the market in June 2010, and was followed in subsequent years by the SII, SIII, S4, S5, S6, and S7. In between the roll-out of a new flagship model, **SAMSUNG** commonly releases one or more iteration of the prior flagship model. These interim iterations are often followed by variants that have the word "Edge," "Edge+," or "Active" added to the model name. *See* Table in ¶21.

19.    In late 2011, **SAMSUNG** began selling a high-end smartphone/tablet hybrid which it called the "Galaxy Note." Galaxy Note products were larger than regular smartphones and include a stylus for additional functionality.

20.    Since April 2015, **SAMSUNG** has released the following Galaxy S6, S7 and Note[1] models:

| GALAXY S SERIES | |
| --- | --- |
| Model | Release Date |
| S6 | April 2015 |
| S6 Edge | April 2015 |
| S6 Active | July 2015 |
| S6 Edge+ | August 2015 |
| S7 | March 2016 |
| S7 Edge | March 2016 |
| S7 Active | June 2016 |
| GALAXY NOTE SERIES | |
| Model | Release Date |
| Note 5 | August 2015 |
| Note 7 | August 2016 |

21.    The "Galaxy S" and "Galaxy Note" phones are powered by lithium ion batteries. Lithium-ion batteries power a host of consumer electronic devices, including computers and power

---

[1] **SAMSUNG** did not release a "Note6."

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

tools.  Prior to the Note5 and S6 models, the battery was removable.  For the Note5, Note7, S6, and S7 models, the battery is encompassed in the product and is no longer removable.

22.     The batteries in **SAMSUNG'S** phones are measured in milli-ampere hours ("mAh"), which is a unit of electric charge that expresses the capacity of a battery – how much total energy a battery can discharge before needing to be recharged.  A battery's discharge rate is the amount of current being drawn from the battery.  The length of time a battery will run depends on both the battery's capacity and discharge rate.

23.     The Note7 and S6 Active use lithium ion batteries with the same capacity.  The S6 Edge+, S7 and Note5 use lithium ion batteries with the same capacity. The S7 Edge and S7 Active both use lithium ion batteries with greater capacity than the Note7.

24.     The following chart shows the battery capacity of **SAMSUNG'S** Note and Galaxy S devices:

| GALAXY S SERIES | |
| --- | --- |
| Model | Battery Capacity |
| S6 | 2,550 mAh |
| S6 Edge | 2,600 mAh |
| S6 Edge+ | 3,000 mAh |
| S7 | 3,000 mAh |
| S6 Active | 3,500 mAh |
| S7 Edge | 3,600 mAh |
| S7 Active | 3,900 mAh |
| GALAXY NOTE SERIES | |
| Model | Battery Capacity |
| Note 5 | 3,000 mAh |
| Note 7 | 3,500 mAh |

25.     The Galaxy S6 Active, the Galaxy S7 Edge, and the Galaxy S7 Active all contain batteries with at least the capacity of the recalled Note7 battery.

/ / /

26.     The S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (the "Subject Phones"), as well as the Note7, all pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the Note7.  While **SAMSUNG** has recalled the Note7, it has not done so with respect to the Subject Phones.

**B.     THE DANGERS OF THE LITHIUM ION BATTERIES IN SAMSUNG'S SMARTPHONES**

27.     The dangers posed by lithium ion batteries made headlines recently when numerous **SAMSUNG** Note7 devices exploded and burst into flames. This caused the Consumer Product Safety Commission ("CPSC") to order a formal recall of the Note7.  The Note7 devices have also been banned from all commercial air travel.  **SAMSUNG** initially offered an exchange program for the Note7.  While investigation into the Note7 defect is ongoing, **SAMSUNG** has admitted an unspecified "battery cell issue" is the root problem.

28.     Lithium ion batteries are often used in consumer electronics.  However, they present inherent risks which require software, hardware and design solutions and protections to operate safely.  The electrolyte material in the batteries is highly volatile, flammable, and potentially explosive if it gets too hot. Dr. Donald Sadoway, a Materials Chemistry professor at MIT, described why lithium ion batteries explode in an interview with *Time Magazine*:[1]

> If the temperature gets high enough . . . at some point, if you get up to about 400-500 degrees Centigrade, the metal oxide in the negative electrode actually starts liberating oxygen. And that's really dangerous, because now, instead of having a fire . . . getting its oxygen from the air surrounding it, it's getting its oxygen from inside the battery itself. *The term of art is, this has now become a bomb*. You've got fuel and oxygen in the same place at the same time.

29.     This is often referred to as a "thermal runaway" event, after which the battery will catch fire or explode.  A thermal runaway event generates high temperatures exceeding 1100 degrees Fahrenheit. It can happen in a variety of circumstances, including when the battery is

---

[1] "We Asked a Battery Expert Why Samsung's Phones Are Catching Fire, by Alex Fitzpatrick, published by Time Magazine on September 9, 2016 (emphasis added), available at: http://time.com/4485396/samsung-note-7-battery-fire-why/

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

overcharged, when it is rapidly discharged, when there is a cell defect, when there is cell damage, and in heat.[1]  According to Scientific American:

> … *faulty batteries can be overcharged. Well-made batteries will stop charging automatically once they're full*, but that's not always the case for faulty batteries, …. If left plugged in for too long, the lithium ions can collect in one spot and be deposited as metallic lithium within the battery…. Also, heat from the overcharging can cause oxygen bubbles within the gel, which are highly reactive with metallic lithium.[2]

30.     In cellular phones, both software and hardware regulate the temperature, charging and use of the battery.  If the software protocols are programmed or set incorrectly a thermal runaway event can occur.  A careless manufacturing process that leaves unwanted material in the battery can also lead to thermal runaway.  A poorly manufactured separator that breaks can also lead to thermal runaway.  As can a defective thermal spreader can lead to a thermal runaway.

31.     **SAMSUNG** initially stated the Note7's problem was limited to only one (1) of its two (2) battery supply sources.  After the initial recall and exchange of the Note7 devices, more explosions of the devices were reported.  On October 13, 2016, SAMSUMG announced it was recalling all Note7 devices, original and exchanged.  As reported by the Wall Street Journal[3]:

> The X-ray and CT scans showed a pronounced bulge.
>
> After reports of Galaxy Note 7 smartphones catching fire spread in early September, Samsung Electronics Co. executives debated how to respond. Some were skeptical the incidents amounted to much, according to people familiar with the meetings, but others thought the company needed to act decisively.
>
> A laboratory report said scans of some faulty devices showed a protrusion in Note 7 batteries supplied by Samsung SDI Co., a company affiliate, while phones with batteries from another supplier didn't.
>
> It wasn't a definitive answer, and there was no explanation for the bulges. But with consumers complaining and telecom operators demanding answers, newly appointed mobile chief D.J. Koh felt the company knew enough to recall 2.5 million phones. His suggestion was backed by Samsung's third-generation heir apparent, Lee Jae-yong, who has advocated for more openness at one of the world's most opaque conglomerates.

---

[1] See, Federal Aviation Administration ("FAA"), Summary of Findings from Previous Tests – Lithium-ion, available at: http://www.icao.int/safety/DangerousGoods/pptfaa/Full scale ion and large format.pptx (last accessed October 13, 2016).

[2] https://www.scientificamerican.com/article/the-science-behind-samsung-phone-battery-fires/ (last accessed October 13, 2016) (emphasis added).

[3] Cheng, Jonathan and McKinnon, John, "The Fatal Mistake that Doomed Samsung's Galaxy Note," available at http://www.wsj.com/articles/the-fatal-mistake-that-doomed-Samsungs-galaxy-note-1477248978.

That decision in early September—to push a sweeping recall based on what turned out to be incomplete evidence—is now coming back to haunt the company.

Two weeks after Samsung began handing out millions of new phones, with batteries from the other supplier, the company was forced to all but acknowledge that its initial diagnosis was incorrect, following a spate of new incidents, some involving supposedly safe replacement devices. With regulators raising fresh questions, Messrs. Lee and Koh decided to take the drastic step of killing the phone outright.

32.     **SAMSUNG** instructed consumers who had a Note7 device to "please power down immediately" and "contact the carrier or retail outlet where they purchased their device."[1] **SAMSUNG** stated that it was announcing the program "in cooperation with the U.S. Consumer Product Safety Commission and in partnership with carriers and retailers."[2]

33.     Consumers could turn in their Note7 devices (both the original and exchanged versions) for refunds, exchanges for **SAMSUNG** products or other smartphones and offered between $25 and $100 "bill credits."  Consumers who exchanged their Note7 for other **SAMSUNG** devices were offered $100 bill credits.[3]  Consumers who elected to receive a refund or purchase a different brand of smartphone, were offered $25 bill credits, "less any incentive credits already received."[4]

34.     Outside of the Note7 recall, **SAMSUNG** has taken no steps to recall or warn consumers about the risks of overheating, fire and explosion posed by its Subject Phones.

C.     **SAMSUNG WAS AND IS AWARE OF OVERHEATING PROBLEMS WITH THE SUBJECT PHONES, FAILED TO FIX THE PROBLEM OR WARN ITS CUSTOMERS**

35.     **SAMSUNG** made the choice to increase the power of the battery in the Subject Phones despite knowing that older models and generations with less powerful batteries were experiencing problems with overheating, catching fire, and even exploding. The problem dates back several years; and well before the release of the Subject Phones.  It is only with the Note7

---

[1] See "Samsung Note7 Safety Recall" available at http://www.samsung.com/us/note7recall/, updated October 13, 2016.
[2] *Ibid.*
[3] For consumers who had already exchanged their phones, they were offered a $75 bill credit in addition to the $25 bill credit from the exchange program.  *Ibid.*
[4] *Ibid.*

that complaints of overheating, fire and explosion became so overwhelming that **SAMSUNG** could no longer ignore or mask the problem.

36.     **SAMSUNG** had good reason to be concerned about overheating in its smartphones. The occurrence of similar incidents in other models of **SAMSUNG** phones and electronic devices have been reported through the media and consumer protection agencies for years. Despite knowledge and awareness, **SAMSUNG** failed to fix the root problem, notify or warn the public of the dangers its electronic devices presented, initiate a recall of all devices where overheating, explosion, and/or fire were foreseeable, or otherwise address the problem. Instead, **SAMSUNG** provided individual consumers with replacements without disclosing the risks and defects in the Subject Phones.

37.     The CPSC has recorded numerous consumer incident reports of **SAMSUNG** phones and accessories overheating, catching fire, and even exploding.  The reports relate to a variety of devices—including the Galaxy S2, Galaxy Tab 2, Galaxy Tab 3, Galaxy S3, Galaxy S4 Active, Galaxy S5, Galaxy S6, Galaxy S6 Edge, and Galaxy S6 Active. The consumer complaints of such problems date back to August of 2011.

38.     Consumer reports to CPSC regarding unsafe Samsung Galaxy S and Samsung Galaxy Note products (not including complaints regarding the Note7) include the following:

- On <u>December 6, 2012</u>, a Health Care Professional reported that a Galaxy S3 got "warm" and caused a "partial thickness" burn on a consumer's right cheek.  CPSC Report No. 20121206-FE67D-2147461269.

- On <u>February 28, 2013</u>, a consumer reported that he or she observed a Galaxy S2 "overheating" and "battery swelling."  The consumer expressed "[f]ear of battery fire."  CPSC Report No. 20130228-0C612-2147458351.

- On <u>August 16, 2013</u>, a consumer reported that a Galaxy S2 began "hissing," made a loud "POP," and filled the room with a noxious smoke.  The incident occurred while the device was charging at night.  CPSC Report No. 20130816-D0B19-2147453034.

- On <u>January 20, 2014</u>, a consumer reported that a Samsung Galaxy S3 and charging cord became "visibly burned and melted."  The consumer reported "[i]t looks like it had been on fire momentarily."  The incident occurred while the device was charging.  CPSC Report No. 20140120-0DFDC-2147448018.

- On <u>April 17, 2014</u>, a consumer reported that a Galaxy S4 started to "smell" and "smoke," causing the charger to melt into the phone.  The incident occurred while the device was charging.  CPSC Report No. 20140417-51573-2147445343.

- On April 25, 2014, a consumer reported that a Galaxy S3 made a "loud pop," and "the battery … shot the back cover and battery out of the phone spraying a black fluid out and pouring out black smoke … the battery pack was red in color and smoking hot …." The device was charging at the time.  CPSC Report No. 20140425-7FBF6-2147445126

- On May 1, 2014, a consumer reported that a Galaxy S4 became "extremely hot" and burned the consumer's son.  The consumer contacted Samsung about the incident, but they had not called back at the time of the report.  The consumer reported he felt the "phone is dangerous."  CPSC Report No. 20140501-C2DA6-2147444903.

- On May 12, 2014, a consumer reported that a Galaxy S4 "became so hot it melted the cable. I'm not sure if there was fire but the device was certainly smoking." The device was charging at the time.  CPSC Report No. 20140512-5B5C8-2147444606.

- On September 29, 2014, a consumer reported that a Galaxy S4 began smoking and the "battery caught on fire," damaging the consumer's floor.  The consumer reported the incident directly to Samsung.  CPSC Report No. 20140929-BD00A-1431381

- On November 2, 2014, a consumer reported that a Galaxy S4 began burning in the consumer's pocket.  When the consumer pulled the phone out of his or her pocket, it seared the consumer's skin.  The consumer further reported "[t]he temperature was equivalent to pulling something out of the oven after baking or boiling water and dunking your hand in it."  CPSC Report No. 20141102-D37FA-2147439274.

- On November 13, 2014, a consumer reported that a refurbished Galaxy S4 awoke the consumer with the smell of burning electronics, and burned the consumer's hand before the consumer realized "the phone was starting to catch fire."  The consumer further reported that "[t]he charging port was burnt, the cord was melted, and [his or her] sheets and mattress pad were burnt."  CPSC Report No. 20141113-0F420-2147438923.

- On December 30, 2014, a consumer reported that a Galaxy S4 "literally melted to [the consumer's] counter" while charging.  The consumer further reported that "[t]he area around the charging port was black and melted."  CPSC Report No. 20141230-C86A9-2147437158.

- On July 24, 2015, a consumer reported that a Galaxy Note 2 "became hot," and emitted "large amounts of smoke" and "sparks."  The consumer further reported that the battery "projected out of the back of the device … leaving burn marks and a hole in the carpet."  CPSC Report No. 20150724-ABD3B-2147429986.

- On August 9, 2015, a consumer reported that a Galaxy S5 began "smoking from the point at which the charge plugs into the phone."  Both the phone and charger had "burn marks and were melted slightly."  The consumer further reported that he or she feared the phone or charger would have started a fire if the consumer had not woken up.  CPSC Report No. 20150809-FD1A7-2147429518.

- On September 19, 2015, a consumer reported that the Samsung charging device for a Galaxy S6 was "overheating excessively under normal use."  "The consumer further reported that the heating was "severe" enough to burn the consumer.  CPSC Report No. 20150919-9088D-2147428266.

- On December 29, 2015, a consumer reported that a Samsung phone charger for a "Newer Samsung Galaxy" had "almost started on fire."  The "phone was red hot," the tip of the charger was black, and the phone was "completely toast."  The consumer further reported: "Totally unsafe! My house could have started on fire."  CPSC Report No. 20151229-96F83-2147425364.

- On <u>January 18, 2016</u>, a consumer reported that a <u>Galaxy S6 Edge</u> became "extremely hot to touch," and developed a crack in the screen.  CPSC Report No. 20160118-B87EB-2147424570.

- On <u>January 23, 2016</u>, a consumer reported that a <u>Galaxy S6</u> began emitting a "strange smell," and that the Samsung charger was "warped, melted, and discolored."  The consumer further reported that the phone was "extremely hot" to the point it would have "burned a small child." The incident occurred while the phone was charging.  CPSC Report No. 20160123-F8845-2147424397.

- On <u>January 14, 2016</u>, a consumer reported that a charging device for a Galaxy S4 got "extremely hot and started to melt."  CPSC Report No. 20160114-AC115-1545877.

- On <u>March 21, 2016</u>, a consumer reported that a Samsung charging device for a <u>Galaxy S6</u> "caught on fire and melted."  CPSC Report No. 20160321-83C90-2147420788.

- On <u>September 16, 2016</u>, a consumer reported that a Galaxy S4 Active "melted" into the charging cable.  The phone burned the consumer's finger.  The consumer further reported that the phone "probably could have got a fire." CPSC Report No. 20160916-61984-2147414098.

- On <u>September 16, 2016</u>, a consumer reported that the battery of a Samsung Galaxy S5 is "bulging" and the phone is "warm to touch."  The consumer further reported that Samsung refused to do anything other than sell the customer a new battery because the phone "had not yet exploded."   CPSC Report No. 20160916-13A98-2147414102.

- On <u>September 16, 2016</u>, a consumer reported that a Samsung <u>Galaxy S6 Active</u> "burned up while charging via a Samsung charger."  The incident set off smoke alarms, filled the customer's bedroom with smoke, charred curtains and bedding, and burned through the hardcover of a book.  The consumer reported that she contacted Samsung about the incident, and that Samsung gave her the "runaround."  CPSC Report No. 20160916-1BB3F-2147414093.

39.     Numerous additional complaints have been submitted by consumers to saferproducts.gov.  Reports at saferproducts.gov related to the Subject Phones include the following:

- On <u>November 16, 2015</u>, a consumer reported suffering "a first degree burn of my right ring finger due to excessive heat from the charger at the point of connection to the phone while on 'fast charge' mode."

- On <u>September 23, 2016</u>, a consumer reported using a <u>Samsung Galaxy S6</u> "when it started reporting it no longer had service. It then got very hot near the power button. I burnt my finger trying to get it to turn off."  The consumer explained that "Despite getting hot enough that I got a burn that blistered, the phone has never reported itself as being overheated."

- On <u>September 21, 2016</u>, a consumer reported their <u>Galaxy S6</u> "heats up to the point where it can't be used because it'll burn," and that Samsung had refused to address his serious concern about his own safety and risk of fire or explosion.

- On <u>September 19, 2016</u>, a consumer reported their five month old <u>Galaxy S6</u> charger was overheating and had "melted plastic from the overheating of the charger."  The consumer reported the "Heating is severe," and that the phone "gets very hot to the touch. . .

enough to burn myself." The consumer also reported that the "chargers are original chargers, from the box . . . that came with the phone."

• On <u>August 17,</u> 2016, a consumer being burned and scarred as a result of repeated overheating of their <u>Galaxy S6 Edge</u>.

• On <u>January 18, 2016</u>, a consumer reported that "during operation" of their <u>Galaxy S6 Edge</u>, it "became extremely hot to touch and the screen developed a crack."

• On <u>September 30, 2016</u>, a consumer reported the following about their <u>Galaxy S6 Active</u>: "9-26-2016 I woke up at 5:30 took phone off charger and did usual checking email and played games on phone until 6:30. Phone was not hot that I could tell. After taking kids to the bus about 20 minutes without using the phone I took it out of my pocket laid it on my bed and it popped really loud and start spewing smoke and melted plastic out of the phone on both ends, screen shattered and the case melted. The smoke alarms went off and the phone was too hot to touch."

• On <u>September 16, 2016</u>, a consumer reported their <u>Galaxy S6 Active</u> "burned up while charging via a Samsung charger. The smoke alarms went off and our bedroom was filled with smoke. There was char on the curtains about 2 feet away from the bed and charred marks on the headboard; the phone burned through the hardcover of a book." The consumer complained about receiving the "runaround" from Samsung customer service and suffering through substantial delays prior to receiving a replacement and check for the property damage.

• On <u>September 2, 2016</u>, a consumer reported the battery in their <u>Galaxy S6 Active</u> caught fire and nearly caused a house fire.

• On <u>June 21, 2016</u>, a consumer reported that at "1230am on June 9, 2016 using the Samsung charger that is issued with the phone. The phone was sitting on the side of the bed, with nothing covering it, and around 4am [] it pretty much exploded and caught on fire. The sound was so loud it woke my child up in the next room. The fire burnt through my sheets, mattress . . ."

• On <u>October 1, 2016</u>, a consumer reported their <u>Galaxy S7</u> was having significant problems with the "phone getting extremely and dangerously hot." The consumer reported the problem to Samsung, but was told that the S7 was not affected by the recall of the Note7 and that Samsung would not replace it because it was outside the 30-day warranty period. According to the report, the problem worsened until the "phone got so hot that it melted into the [] case."

• On <u>September 26, 2016</u>, a consumer reported her phone charger cord was "hot, melted and smoking" while her <u>Galaxy S7</u> was plugged in and charging.

• On <u>September 16, 2016</u>, a consumer reported her "two-month-old <u>Samsung S7 Edge</u> got so hot that it burned my hand and I could not hold onto it."

• On <u>September 10, 2016</u>, a consumer reported he had placed his <u>S7 Edge</u> in his "right front pocket" and that "shortly thereafter he noticed his phone whistling, screeching, and vibrating, as well as smoke coming from his pocket." According to the report, the consumer suffered burns to his hand when he tried to remove the phone from his pocket and that, "without warning the S7 Edge exploded and caught fire" causing second and third degree burns.

40. **SAMSUNG** is and was aware of these reports and the hazards posed by their phones because consumers report the incidents directly to **SAMSUNG**, and **SAMSUNG** has also acknowledged the reports by responding on the consumer agency's website with a boilerplate

response.  Many consumers report that **SAMSUNG** failed to take their complaints seriously, and refused to provide any compensation beyond merely replacing the dangerous and defective phones with similarly risky products.

41.     **SAMSUNG** even took specific steps to attempt to address the overheating issues in designing the hardware for the S7, relying on unconventional technology and unproven designs to attempt to provide a partial solution to the overheating problems in its smartphones hardware designs.

42.     **SAMSUNG'S** website describes the new hardware used to attempt to address these concerns, known as a "thermal spreader."  According to **SAMSUNG**, the thermal spreader it designed was "unlike conventional thermal spread technology."[1]  **SAMSUNG'S** team responsible for designing the system further stated that "due to the spatial limits of smartphones, the cooling system's cooling capacity alone is not enough to cool the device. We need to calculate the amount of electric current and optimize the heat control algorithm to minimize occurring heat. In other words, the new thermal spreader hardware controls the heat more effectively but the software heat-control algorithm must be made compatible to ensure best performance."[2]

**D.     SAMSUNG'S CONCEALED OF THE DANGERS POSED BY ITS PRODUCTS**

43.     Despite knowledge of the overheating problem existing across multiple models and generations of **SAMSUNG** phones and despite choosing to put increasingly powerful batteries in smaller spaces in the Subject Phones, **SAMSUNG** concealed from consumers the risks of fire, explosion and overheating.

44.     **SAMSUNG** marketed the S6 Active as indestructible, innovative, and better than ever.  According to **SAMSUNG**: "AT&T is bringing its customers the toughest and most advanced member of the Galaxy S family. The Samsung Galaxy S6 Active . . . is designed with your active

---

[1] See https://news.samsung.com/global/faces-of-innovation-galaxy-s7-s7-edge-how-we-created-the-cooling-system-in-the-galaxy-s7-and-s7-edge.
[2] *Ibid*.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1  lifestyle in mind. It gives you the durability you want while boasting a sleek, lightweight design

2  and all of the innovation the Galaxy S6 has to offer."[1]

3      45.    It is "[b]uilt to withstand whatever everyday life throws its way, the Samsung

4  Galaxy S6 active has IP68 certified casing that is water resistant up to 1.5 meters for up to 30

5  minutes, shock resistant, and dust proof."[2]

6      46.    According to Tim Baxter, President, Chief Operating Officer, and General Manager

7  of **SAMSUNG**: "With the Galaxy S6 active, we're delivering consumers with high durability

8  coupled with the powerful performance of Samsung's latest flagship smartphone. The result is a

9  smartphone that brings ruggedized capabilities and water resistance coupled with the camera,

10  battery and design features that empower our consumers and business users to do more."[3]

11      47.    According to Kwangjin Bae, the Principal Engineer at IT & Mobile

12  Communications, "the goal was to make Samsung latest flagship smartphone as strong and durable

13  as possible," for which, "[t]he development team for the Galaxy S6 worked around the clock. It

14  was one of the most difficult times of my life and all the members of the group from bottom to the

15  top worked together as one in developing the new product. It was not an easy task because it was

16  uncharted territory for all of us."[4]

17      48.    **SAMSUNG** bragged: "[i]n introducing innovation, not only in design and

18  engineering, but also in manufacturing processes, Samsung adheres to its notoriously strict quality

19  control policy. Each product undergoes intense durability testing such as drop tests, bending test

20  and performance testing among many other steps.  Samsung takes to ensure the highest quality

21  products. By fusing together innovation with durability, Samsung is able to provide the level of

22  quality consumers expect from Samsung."[5]

23

24  ---

[1] "Samsung Galaxy S6 active Available Exclusively at AT&T," Samsung Newsroom (June 9, 2015) available at:
25  https://news.samsung.com/global/Samsung-galaxy-s6-active-available-exclusively-at-att.
[2] *Ibid.*
26  [3] *Ibid.*

[4] "[Editorial] The Perfect Fusion: The Story Behind the Metal and Glass of the Galaxy S6," Samsung Newsroom (June
27  1, 2015) available at: https://news.Samsung.com/global/the-perfect-fusion-the-story-behind-the-metal-and-glass-of-
the-galaxy-s6-ass-and-metal-was-not-without-its-challenges-the-story-behind-the-galaxy-s6-sound.
[5] "Forming Glass, Metal Frame – The Art of Craftsmanship in the Galaxy S6," Samsung Newsroom (March 2, 2015)
28  available at: https://news.samsung.com/global/forming-glass-forging-metal-the-art-of-craftsmanship-in-the-galaxy-s6.

49.     **SAMSUNG** marketed the S6 Edge+ as being "More than a phone, it's the hub of your life, always with you, always on…you do everything with your phone… shouldn't you expect more from it?" And **SAMSUNG** also worked to decrease the charging time, advertising that, on the S6, S7 and Note5 models that charging was faster than ever and the phone could be fully charged in ninety minutes.

50.     **SAMSUNG** advertised the S6 as having "next level performance" and "next level charging," including built in wireless charging.

51.     **SAMSUNG** advertised and marketed the S7 models by explaining that it was "not just launching a new phone, we are launching a new way of thinking about what a phone can do." **SAMSUNG** stated, "our phones go everywhere with us," and told consumers "Time is valuable. If time is the most valuable thing, why would you waste time charging your phone" in advertising the "fast charging" capabilities of the S7 models.

52.     **SAMSUNG** advertised the S7 Active as the "toughest Samsung ever" and touted its battery performance and fast charging capability.

53.     Despite these descriptions and marketing efforts, **SAMSUNG** concealed from consumers the risks of overheating, fire, and explosion posed by the Subject Phones. **SAMSUNG'S** omissions were material to consumers' purchasing decisions in that had consumers been warned of the dangers of the products, they would not have purchased the Subject Phones or would have paid less for the Subject Phones than they paid.

54.     Even while **SAMSUNG** was performing its recalls of the Note7, it continued to attempt to conceal the scope of the problem. **SAMSUNG** reportedly offered to pay at least one consumer in China approximately $900 to replace his Note7 if he agreed not to publicize a video of his smartphone overheating and smoking.[1]   **SAMSUNG** has also issued copyright claims to YouTube in order to take down parody videos posted by the public of the Note7 bursting into flames or exploding.[2]   And despite the well-publicized recall of the Note7, **SAMSUNG** continues

---

[1] Wee, Sui-Lee, "Samsung's Uneven Handling of Galaxy Note 7 Fires Angers Chinese," (available at http://www.nytimes.com/2016/10/19/business/Samsung-galaxy-note7-china-test.html?_r=0).

[2] BBC News, October 21, 2016, "Samsung 'blocks' exploding Note 7 parody videos" (available at http://www.bbc.com/news/technology-37713939).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

to hide the risks of the Subject Phones, and has taken no steps to warn its customers or recall additional products subject to the same dangers, despite the fact that **SAMSUNG** has yet to identify the cause of the overheating, explosions and fires in the Note7 or the Subject Phones.

55.     On October 12, 2016, in the midst of the Note7 recalls, **SAMSUNG** reportedly[1] sent push notifications directly to some of its consumers' smartphones:



56.     **SAMSUNG** knew the Subject Phones were defectively designed or manufactured, would fail without warning, posed a risk to the public, and were not suitable for their intended use. Until the problem became too widespread, publicized, and pervasive to ignore with the Note7, **SAMSUNG** failed to warn **PLAINTIFFS**, the Class and the public about the inherent dangers of the Subject Phones, despite having a duty to do so. Additionally, **SAMSUNG** has continued to fail to warn consumers of the dangers related to the Subject Phones, implying the Note7 is an outlier and that **SAMSUNG'S** other products, including the Subject Phones, are safe.

57.     **SAMSUNG** owed **PLAINTIFFS** a duty to disclose the defective nature of Subject Phones, including the dangerous risk of explosion, fire and overheating, because **SAMSUNG**:

a.     possessed exclusive knowledge of the defects rendering the Subject Phones inherently more dangerous and unreliable than similar smartphone products; and,

b.     intentionally concealed the dangerous situation with the Subject Phones through their marketing campaign and recall programs.

---

[1] Haselton, Todd "Samsung to Galaxy S7 Owners: Your Phone is NOT Recalled" (available at http://www.technobuffalo.com/2016/10/12/galaxy-s7-not-recalled/).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1    58.    **SAMSUNG**, and each of them, designed, engineered, developed, manufactured,

2    tested, produced, assembled, labeled, supplied, imported, distributed, and sold the Subject Phones

3    and their component parts and constituents, which were intended by **SAMSUNG**, and each of

4    them, to be used as a consumer smartphone.

5    59.    The Galaxy S6 is unsafe for its intended use by reason of defects in its design,

6    engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

7    safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

8    60.    The Galaxy S6 Edge is unsafe for its intended use by reason of defects in its design,

9    engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

10   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

11   61.    The Galaxy S6 Edge+ is unsafe for its intended use by reason of defects in its

12   design, engineering, development, manufacturing, testing, production, and/or assembly, such that it

13   cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious

14   injury.

15   62.    The Galaxy S6 Active is unsafe for its intended use by reason of defects in its

16   design, engineering, development, manufacturing, testing, production, and/or assembly, such that it

17   cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious

18   injury.

19   63.    The Galaxy Note5 is unsafe for its intended use by reason of defects in its design,

20   engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

21   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

22   64.    The Galaxy S7 is unsafe for its intended use by reason of defects in its design,

23   engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

24   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

25   65.    The Galaxy S7 Edge is unsafe for its intended use by reason of defects in its design,

26   engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

27   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

28

66.     The Galaxy S7 Active is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but instead exposes the public and **PLAINTIFFS** to serious injury.

### E.     PLAINTIFFS' EXPERIENCES

#### 1.     Demetrius Martin's Samsung S6 Edge+

67.     Plaintiff **MARTIN** purchased a Samsung S6 Edge+.  Since the original purchase in August or September 2015, the phone has been replaced twice.  He purchased the phone for his former partner, Jeremy Estrada, and Plaintiff **MARTIN** pays for the phone and cell phone plan.

68.     Within two weeks of the original purchase the phone began malfunctioning and became pixelated.  Plaintiff **MARTIN** was ultimately issued a replacement Samsung S6 Edge+ through AT&T.

69.     The replacement S6 Edge+ consistently overheated and hot to the touch.  On or about December 30, 2015, the S6 Edge+ caught fire while it was plugged in.  As a result of the fire, the phone's battery expanded into an egg shape, and the front and back of the phone shattered.  Fortunately, Mr. Estrada was able to knock the phone off of the table to avoid his house catching on fire.  However, the fire still filled his home with smoke.

70.     When Plaintiff **MARTIN** went to his carrier (AT&T) to replace the burned phone, he was told he needed to go through the manufacturer, **SAMSUNG**, for replacement.  An AT&T employee told Plaintiff **MARTIN** it looked like the phone had not yet exploded but that it still could.  Plaintiff **MARTIN** put the phone into a fireproof container because he was worried it would explode.

71.     In early September 2016, Plaintiff **MARTIN** called **SAMSUNG** to report the issue. **SAMSUNG** was initially fairly prompt in responding and asked if there was property damage. However, after Plaintiff **MARTIN** told **SAMSUNG** that the phone had caused a burn in the rug, and after several follow up calls, **SAMSUNG** ceased responding.  Plaintiff **MARTIN** sent a video and / or photo of the phone to show **SAMSUNG** the problem.

72.     **SAMSUNG** eventually sent a simple mailer envelope to return the phone and finally sent (another) replacement **SAMSUNG** S6 Edge+.  This phone also runs hot and Plaintiff

1   **MARTIN** is concerned the product is not safe and poses a risk of fire.  **SAMSUNG** has not

2   responded to his inquiries about the safety or risks associated with the phone.

3       73.     Photos of Plaintiff MARTIN'S phone after the fire are below:




            (front)                              (back including battery)

74.     In order to attempt to understand the problem and potential risks, Plaintiff

**MARTIN** asked **SAMSUNG** if it there was a problem with the S6 Edge+ model.  **SAMSUNG** did

not provide a response.

### 2.     Omar Atebar's Experience

75.     Plaintiff **ATEBAR** purchased three of the Subject Phones as part of a single plan

with T-Mobile.  Plaintiff **ATEBAR** pays a monthly fee for each phone.  Plaintiff **ATEBAR**

received two Galaxy S7 devices and one Galaxy Note5.

76.     Plaintiff **ATEBAR** uses his Galaxy S7 every day, including for navigation purposes.  During use of his phone and while operating certain applications, the phone heats up, a "danger" screen appears, usually within 10-15 minutes of using navigation applications.  When the phone overheats, Plaintiff **ATEBAR** is forced to attempt to cool the phone with an air conditioner so that the phone can be used. All of these issues impair and impede her normal use of the product.

### 3.    Esther Vega's Experience

77.     Plaintiff **E. VEGA** has a Galaxy S7.  She uses her S7 daily. While using her S7, Plaintiff **E. VEGA** noticed her S7 overheats while she is talking on the phone, has issues connecting to the internet, randomly opens applications on its own, randomly dims and fails to charge. All of these issues impair and impede her normal use of the product.

### 4.    Jesus Vega's Experience

78.     Plaintiff **J. VEGA** acquired his Samsung Note5 in April 2016. He uses the device daily.  While using his device, Plaintiff **J. VEGA** has experienced the device overheat while talking on the device and running social media applications. While using the device he has received numerous warnings regarding overheating, as well as encountered shortened battery life and phone sluggishness. All of these issues impair and impede his use of the device.

## V.    CLASS ACTION ALLEGATIONS

79.     The following Class and Subclass may properly be maintained as a Class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

Class: All persons residing in the State of California who purchased, in the State of California, at least one (1) of the Subject Phones at any time during the four (4) year period preceding the filing of this Class Action Complaint and continuing through the date of trial.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶ 26).

CLRA Subclass: All persons residing in the State of California who purchased, in the State of California, for personal, family, or household purposes, at least one (1) of the Subject Phones at any time during the three (3) year period preceding the filing of this CLASS Action Complaint.[1]  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶ 26).

---

[1] **PLAINTIFFS** are representatives, and members of the Class and the CLRA Subclass. Because all members of the CLRA Subclass are also members of the Class, **PLAINTIFFS** will refer to the Class and the CLRA Subclass collectively as the "Class" unless otherwise specified.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

80.     Excluded from the Class are **SAMSUNG**, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.  Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident. Further excluded is any individual who after purchase of a Subject Phone returned the Subject Phone and received a full refund of his or her purchase price.

81.     In the addition, the following Class may properly be maintained as a class action pursuant to FRCP 23(b)(2) on behalf of the following individuals:

> <u>Injunction Class</u>: All persons residing in the State of California who, following trial, remain in possession of a Subject Phone.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶ 26).

82.     Excluded from the Injunction Class are **SAMSUNG**, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.  Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident.

83.     Throughout discovery in this litigation, **PLAINTIFFS** may find it appropriate and/or necessary to amend the definition of the Class, the CLRA Subclass, and/or the Injunction Class.  **PLAINTIFFS** will formally define and designate a Class definitions when they seek to certify the Classes alleged herein.

84.     Pursuant to Rule 23(a)(1), the Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to **PLAINTIFFS** at this time, **PLAINTIFFS** believe there are millions of members of the Class.

85.     Pursuant to Rule 23(a)(3), **PLAINTIFFS**' claims are typical of the claims of the other members of the Class.  **PLAINTIFFS** and other Class members received the same nondisclosures about the safety and quality of Subject Phones.  **PLAINTIFFS** and Class members purchased **SAMSUNG** Galaxy S and Note products that they would not have purchased at all, or

1  for as much as they paid, had they known the truth regarding the overheating problems and fire

2  hazards.  **PLAINTIFFS** and the members of the Class have sustained injury in that they overpaid

3  for the **SAMSUNG** smartphones due to **SAMSUNG'S** wrongful conduct.

4    86.  Pursuant to Rule 23(a)(4) and (g)(1), **PLAINTIFFS** will fairly and adequately

5  protect the interests of the members of the Class and Injunction Class and have retained counsel

6  competent and experienced in class action and consumer fraud and protection litigation.

7    87.  Pursuant to Rules 23(b)(2), **SAMSUNG** has acted or refused to act on grounds

8  generally applicable to the Injunction Class, thereby making appropriate final injunctive relief or

9  corresponding declaratory relief with respect to the Injunction Class as a whole.  In particular,

10  **SAMSUNG** has failed to properly repair, exchange, recall or replace the Subject Phones.

11  **SAMSUNG** also continues to sell the Subject Phones and has failed to properly warn consumers

12  of the risks of overheating, fire and explosion with the Subject Phones.

13    88.  Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to

14  all members of the Class and predominate over any questions solely affecting individual members

15  thereof.  Among the common questions of law and fact are as follows:

16    a.  whether **SAMSUNG** had knowledge of the defects affecting the Subject

17  Phones;

18    b.  whether **SAMSUNG** concealed defects affecting Subject Phones;

19    c.  whether **SAMSUNG** violated the unlawful prong of the UCL by its

20  violation of the CLRA;

21    d.  whether **SAMSUNG**'s omissions regarding the risks of the Subject Phones

22  were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

23    e.  whether **SAMSUNG'S** business practices, including the manufacture and

24  sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** failed to adequately

25  investigate, disclose and remedy, offend established public policy and cause harm to consumers

26  that greatly outweighs any benefits associated with those practices;

27    f.  whether **SAMSUNG'S** omissions regarding the risks of the Subject Phones

28  were likely to deceive a reasonable person in violation of the False Advertising Law;

1          g.     whether **SAMSUNG** was unjustly enriched at the expense of **PLAINTIFFS**

2  and the Class;

3          h.     whether **PLAINTIFFS** and the Class are entitled to damages, restitution,

4  restitutionary disgorgement, equitable relief, and/or other relief; and

5          i.     the amount and nature of such relief to be awarded to **PLAINTIFFS** and the

6  Class.

7        89.     Pursuant to Rules 23(b)(3), a Class action is superior to other available methods for

8  the fair and efficient adjudication of this controversy because joinder of all Class members is

9  impracticable.  The prosecution of separate actions by individual members of the Class would

10  impose heavy burdens upon the courts and **SAMSUNG**, and would create a risk of inconsistent or

11  varying adjudications of the questions of law and fact common to the Class.  A Class action would

12  achieve substantial economies of time, effort and expense, and would assure uniformity of decision

13  as to persons similarly situated without sacrificing procedural fairness.

14        90.     As a direct and legal result of the wrongful conduct and/or omissions of

15  **SAMSUNG**, and each of them, **PLAINTIFFS** have been harmed.

16  **VI.**     **CAUSES OF ACTION**

17
                  **FIRST CAUSE OF ACTION**
18        **FRAUDULENT CONCEALMENT/NON-DISCLOSURE**
            **CAL. CIV. CODE §§ 1709 AND 1710(3)**
19    **(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS)**

20        91.     **PLAINTIFFS** and the Class hereby reallege and incorporate by reference each and

21  every allegation set forth above, as if fully set forth in detail herein.

22        92.     **SAMSUNG**, through its advertising and marketing of the Subject Phones,

23  concealed, and failed to disclose, material information regarding the fact that the Subject Phones

24  were defectively designed and prone to overheating, catching fire, and explosion despite knowing

25  that such specific and material information to **PLAINTIFFS** and the Class.

26        93.     **SAMSUNG** sought to fraudulently depict the Subject Phones as safe.  But these

27  depictions failed to paint a true portrayal of the Subject Phones as **SAMSUNG** concealed, and

28  failed to disclose, material information regarding the fact that the Subject Phones were defectively

designed and prone to overheating, catching fire, and explosion, despite sole and exclusive knowledge.

94.     At no time, did **SAMSUNG** disclose to **PLAINTIFFS** and the Class that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion. Indeed, despite direct knowledge to the contrary, **SAMSUNG** continually failed to disclose to consumers that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion.

95.     **PLAINTIFFS** and the Class interpreted **SAMSUNG** failure to disclose and omissions as a representation that the Subject Phones did not pose the threat of danger by and through, among others, overheating, fire, and/or explosion.

96.     As a direct result of **SAMSUNG'S** failure to disclose that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion, **PLAINTIFFS** purchased or otherwise paid money for the Subject Phones which they otherwise would not have done had **SAMSUNG** disclosed the fact that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion.

97.     At all times mentioned herein, **SAMSUNG** was, and remain, in a superior position to know the truth about the Subject Phones and their propensity to overheat, catch fire, and explode.

98.     The facts concealed by **SAMSUNG** are material facts because any reasonable consumer would have considered the fact that the Subject Phones' propensity to overheat, catch fire, and explode to be important in deciding whether to purchase the Subject Phones as opposed to another, but less expensive, smartphone.

99.     **PLAINTIFFS** and the Class reasonably and justifiably relied on **SAMSUNG** failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion when purchasing the Subject Phones. **PLAINTIFFS** and the Class would not have purchased the Subject Phones were it not for the material omissions by **SAMSUNG**.

100.    The intentional omissions by **SAMSUNG** were a substantial factor in causing harm to **PLAINTIFFS** and the Class, and said harm would not have occurred absent the intentional omissions made by the **SAMSUNG**.

101.    **SAMSUNG** has deliberately caused and has intended to cause great harm to Plaintiff and the Class with full knowledge of the wrongfulness of their conduct.  **PLAINTIFFS** further allege **SAMSUNG** conduct as alleged above was despicable, was carried on with a willful and conscious disregard of **PLAINTIFFS** and the Class' rights and well-being, and subjected **PLAINTIFFS** and the Class to undue hardship. Therefore, **PLAINTIFFS** and the Class should be awarded punitive and exemplary damages sufficient to punish **SAMSUNG** for engaging in this conduct and to deter similar conduct on its part in the future.

WHEREFORE, **PLAINTIFFS** and the Class pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**
**(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS)**

102.    **PLAINTIFFS** hereby reallege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

103.    **PLAINTIFFS** have standing to bring this action under the UCL because they have suffered injury in fact as a result of **SAMSUNG'S** conduct and have lost money through their purchase or payment for one or more of the Subject Phones, which **PLAINTIFFS** would not have purchased, or made a payment towards, if had **SAMSUNG** not concealed the risks of overheating, fire and explosion described herein.

104.    **SAMSUNG'S** omissions, non-disclosures, concealments, and half-truths, constitute unfair, unlawful and/or fraudulent conduct under the UCL.

105.    **SAMSUNG'S** business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** has failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices, violating the unfair prong of the UCL.

106. **SAMSUNG'S** omissions regarding risks associated with the Subject Phones were likely to deceive a reasonable person, violating the fraudulent prong of the UCL.

107. **SAMSUNG'S** violations of the CLRA and FAL alleged herein violate the unlawful prong of the UCL.

108. **PLAINTIFFS** and the Class are entitled to full restitution and/or disgorgement of **SAMSUNG'S** revenues and profits resulting from the sale of the Subject Phones, and any other relief provided for under the UCL.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***
**(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS)**

109. **PLAINTIFFS** hereby reallege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

110. **SAMSUNG**, acting with intent to induce consumers to purchase the Subject Phones, in violation of Cal. Bus. & Prof. Code Section 17500, made or disseminated or caused to be made or disseminated the misleading statements alleged herein based upon their concealment of the risk of overheating, fire and explosion associated with the Subject Phones.

111. The facts omitted by **SAMSUNG** were misleading to consumers, and the truth was and is known to **SAMSUNG**, or by the exercise of reasonable care should have been known to **SAMSUNG**.

112. **PLAINTIFFS** and the Class relied upon **SAMSUNG** advertising in their decisions to purchase the Subject Phones.

113. As a direct and legal result of the wrongful conduct and/or omissions of **SAMSUNG**, and each of them, **PLAINTIFFS** have been harmed.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750 *ET SEQ.***
**(PLAINTIFFS AND THE CLASS AGAINST ALL DEFENDANTS)**

114.    **PLAINTIFFS** hereby reallege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

115.    California Civil Code section 1770(a) provides that it is unlawful to use unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.  California Civil Code section 1770(a) is specifically violated by, among other things:  "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Cal. Civ. Code § 1770(a)(5).

116.    The acts and practices on the part of **SAMSUNG**, as alleged herein, constituted and constitute unlawful methods of competition, unfair, or deceptive acts undertaken in a transaction which resulted in the sale of goods to consumers including, but in no way limited to, **SAMSUNG** failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion.

117.    Plaintiff seeks an order awarding restitution or disgorgement of **SAMSUNG'S** revenues and profits from the sale of the Subject Phones.

118.    As a direct and proximate result of **SAMSUNG'S** violations of the CLRA as alleged herein, **PLAINTIFFS** and Class have been injured by, including but not limited to, the following: (a) the infringement of their legal rights as a result of being subjected to the common course of fraudulent conduct alleged herein; (b) being induced to purchase the Subject Phones, which they would not have done had they been fully informed of **SAMSUNG'S** acts, omissions, practices, and nondisclosures as alleged herein, in violation of, *inter alia*, the CLRA, the FAL, and the UCL; (c) being induced to rely on **SAMSUNG'S** deceptive, fraudulent, and intentional omissions to their detriment as a result of **SAMSUNG'S** conduct as alleged in this Class Action Complaint, in violation of, *inter alia*, the CLRA, the FAL, and the UCL; and (d) unknowingly being subjected to fraudulent concealment and deceit as a result of **SAMSUNG'S** conduct.

1    Accordingly, **SAMSUNG** engaged in acts of fraud, malice, or oppression and in conscious

2    disregard of the rights and well-being of Plaintiff and the Class.

3         119.    As a direct and proximate result of **SAMSUNG** conduct in violation of the CLRA,

4    **PLAINTIFFS** and the Class have been harmed.

5         WHEREFORE, **PLAINTIFFS** and the Class pray for relief as set forth below.

6

7                              **FIFTH CAUSE OF ACTION**
                                  **UNJUST ENRICHMENT**
8             **(PLAINTIFFS AND THE CLASS AGAINST SAMSUNG)**

9         120.    **PLAINTIFFS** hereby re-allege and incorporate by reference each and every

10   allegation set forth above, as if fully set forth in detail herein.

11        121.    As a result of their wrongful and fraudulent acts and omissions, as set forth above,

12   pertaining to the Subject Phones, **SAMSUNG** charged a higher price for the Subject Phones than

13   the Subject Phones' true value and **SAMSUNG** obtained monies which rightfully belong to

14   **PLAINTIFFS** and the Class.

15        122.    **SAMSUNG** enjoyed the benefit of increased financial gains, to the detriment of

16   **PLAINTIFFS** and the Class, who paid a higher price for Subject Phones which actually had lower

17   values.  It would be inequitable and unjust for **SAMSUNG** to retain these wrongfully obtained

18   profits.

19        123.    **PLAINTIFFS**, therefore, seek an order establishing **SAMSUNG** as constructive

20   trustee of the profits unjustly obtained, plus interest.

21   **VII.    PRAYER FOR RELIEF**

22        WHEREFORE, **PLAINTIFFS** pray that this Court enter judgment in their favor on every

23   claim for relief set forth above and award them relief including, but not limited to, the following:

24        1.    An Order appointing **PLAINTIFFS** to represent the Class pursuant to FRCP 23(a)

25   and designating **PLAINTIFFS**' counsel as Class Counsel;

26        2.    An order enjoining **SAMSUNG** from any future violations of the CLRA, FAL and

27   UCL;

28        3.    An order enjoining **SAMSUNG** from selling the Subject Phones;

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1         4.        For economic losses, in an amount according to proof at trial;

2         5.        For restitution for **PLAINTIFFS** and the Class in an amount according to proof at

3  trial;

4         6.        An award for **PLAINTIFFS** for the costs of suit and reasonable attorneys' fees as

5  provided by law;

6         7.        For interest upon any judgment entered as provided by law; and,

7         8.        For such other and further relief as the Court may deem just and proper.

Dated: November 2, 2016         **COTCHETT, PITRE & MCCARTHY, LLP**

By: _/s/ Anne Marie Murphy_
       Niall P. McCarthy
       Anne Marie Murphy
       Eric J. Buescher

**STONEBARGER LAW, APC**

By: _/s/ Gene J. Stonebarger_
       Gene J. Stonebarger
       Richard D. Lambert
       Crystal L. Kelly

## VIII.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: November 2, 2016         COTCHETT, PITRE & MCCARTHY, LLP

By: _/s/ Anne Marie Murphy_
       Niall P. McCarthy
       Anne Marie Murphy
       Eric J. Buescher

STONEBARGER LAW, APC

By: _/s/ Gene J. Stonebarger_
       Gene J. Stonebarger
       Richard D. Lambert
       Crystal L. Kelly

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CLASS ACTION COMPLAINT**