NIALL P. McCARTHY (SBN 160175)
nmccarthy@cpmlegal.com
ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ERIC J. BUESCHER (SBN 271323)
ebuescher@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GENE J. STONEBARGER (SBN 209461)
gstonebarger@stonebargerlaw.com
RICHARD D. LAMBERT (SBN 251148)
rlambert@stonebargerlaw.com
CRYSTAL L. MATTER (SBN 278084)
cmatter@stonebargerlaw.com
**STONEBARGER LAW, APC**
75 Iron Point Circle, Suite 145
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141

*Interim Co-Lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE: SAMSUNG GALAXY SMARTPHONE MARKETING AND SALES PRACTICES LITIGATION** | **CASE NO.: 5:16-cv-06391-BLF**<br><br>**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs **DEMETRIUS MARTIN, OMAR ATEBAR, ESTHER VEGA, JESUS VEGA, LIZETT ANGUIANO, TOMAS HERNANDEZ, GREG ROBISON, DALE HOLZWORTH, ERIC PIRVERDIAN, TOMIG SALMASIAN, MICHAEL KOUYOUMDJIAN, DIOR DEE, CORY RAYMOND, JESUS SANCHEZ, AND FRANCISCO SOTO** (collectively hereinafter, "**PLAINTIFFS**") bring this action on behalf of themselves and all other similarly situated individuals, by and through their attorneys, for injunctive relief, restitution and damages caused by the conduct of **DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.** and **SAMSUNG ELECTRONICS CO., LTD.** (collectively hereinafter, "**SAMSUNG**"), and each of them, as follows:

## I.   INTRODUCTION

1.      **SAMSUNG** manufactures and sells smartphones which pose a threat to the safety of consumers. The danger posed by these smartphones made international headlines when numerous Samsung Note7 devices exploded and burst into flames leading to a complete recall of the product. **SAMSUNG** continues to sell, market, and distribute other smartphones which are at risk of overheating, fire and explosion. **SAMSUNG** recalled the Note7 while leaving other dangerous products in the marketplace. Unfortunately, the problem is not limited to the Note7. The Note7 recall was a Band-Aid to a pervasive problem for which major surgery was required.

2.      **SAMSUNG** has been made repeatedly aware of the issues with its smartphones, yet failed to warn consumers of the dangers posed by the lithium ion batteries in its devices. **SAMSUNG** markets its phones as durable, reliable, always available, and the "hub" of consumers' lives. **SAMSUNG** expects and encourages consumers to use their smartphones for all aspects of their lives and to always have their smartphones with them. Despite this expected ubiquity, **SAMSUNG** conceals from consumers that their products are, in fact, ticking time bombs.

3.      **SAMSUNG** designs, manufactures and advertises the batteries in its smartphones to have maximum duration with minimum charge times. **SAMSUNG** also designs, manufactures and advertises its smartphones to have superior computing capacity and power, and to effectively run a multitude of applications and processes simultaneously. The desire to design a product with each of these, and other, qualities led **SAMSUNG** to manufacture smartphones which pose a risk of

overheating, fire and explosion. While **SAMSUNG** recalled the Note7, it has failed, and continues to fail, to recall other dangerous products, failed to warn consumers of the dangers they pose, and failed to adequately respond to consumers whose phones have suffered from overheating, fire and explosion.

4.    The extreme risk of overheating, fire, and explosion along with **SAMSUNG'S** concomitant refusal to recall the products leaves **PLAINTIFFS** and each member of the Class owning phones that have the propensity for the following:





LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

## II.    JURISDICTION AND VENUE

5.    This action is within the jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2). **PLAINTIFFS** and **SAMSUNG** are citizens of different states and the amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs.

6.    This Court has personal jurisdiction over **PLAINTIFFS** because they submit to the Court's jurisdiction in this case.

7.    This Court has personal jurisdiction over **SAMSUNG ELECTRONICS AMERICA, INC.,** because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including: Samsung Media Solutions Center America, a division of **SAMSUNG ELECTRONICS AMERICA, INC.,** which is based out of Mountain View, California; and, **SAMSUNG ELECTRONICS AMERICA, INC.'S** printer product division is headquartered in Irvine, California.[1]

8.    This Court has personal jurisdiction over **SAMSUNG ELECTRONICS CO., LTD** because it conducted and continues to conduct substantial business in California, and has sufficient minimum contacts with California, including: Samsung Strategy and Innovation Center, a global organization within **SAMSUNG'S** Device Solutions division, is headquartered in Menlo Park, California; Samsung Information Systems America is headquartered in San Jose, California; Samsung Semiconductor, Inc. is headquartered in San Jose, California; and, Samsung Open Innovation Center is located in Palo Alto, California.[2]

9.    Venue is proper in this Court under 28 U.S.C. § 1391 because **SAMSUNG** innovates, researches, develops, improves, and markets a substantial amount of phones in this

---

[1] See Samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutSamsung/Samsung_electronics /us_divisions/; http://www.samsung.com/ContactUs/ElectronicsAmerica/index.htm; http://www.samsung.com/ContactUs/InformationSystemsAmerica/index.htm; see also Gannes, Liz, "Samsung Confirms Four New Bay Area Offices," Allthingsd.com (Dec. 29, 2012 at 2:13PM) available at: http://allthingsd.com/20121229/SAMSUNG-confirms-four-new-bay-area-offices/; "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00 AM) available at: http://www.businesswire.com/news/home/20120919005456/en/Samsung-Electronics-Announces-Silicon-Valley-Center.
[2] *Ibid.*

1    District. **SAMSUNG** "has been a presence in Silicon Valley for more than two decades."[3]

2    **SAMSUNG'S** Media Solutions Center (a.k.a. Research and Development Center)[4], which is

3    located in this District, "delivers innovative, connected experiences across Samsung's ***mobile*** and

4    digital ecosystem that enhance the experience of owning a Samsung product,"[5] is "[c]omprised of

5    two six-story LEED Platinum designed office buildings totaling nearly 385,000 square feet, and

6    two parking structures," and "serves as an epicenter of innovation and is home to some of the

7    world's top talent," including "more than 250 doctorate recipients from some of the best schools

8    around the globe."[6] According to a **SAMSUNG** press release, the "great successes" of the labs

9    housed at the Media Solutions Center "benefit Samsung's vast portfolio of mobile, visual display,

10   home appliance, wearable and audio and stereo products."[7] **SAMSUNG** also maintains and

11   operates a Strategy and Innovation headquarters "within Samsung's Device Solutions division,

12   with the core missions of open innovation in collaboration with entrepreneurs and strategic

13   partners," within this District. Not to mention, Samsung's Information Systems America and

14   Semiconductor divisions are headquartered in this District, along with an Open Innovation

15   Center.[8]   Therefore, a substantial part of the events and/or omissions alleged in this complaint,

16   giving rise to **PLAINTIFFS'** claims, occurred in, emanated from and/or were directed from this

17   District.  Venue is also proper because **SAMSUNG** is subject to this District's personal

18   jurisdiction with respect to this action.

19   / / /

20   / / /

21   / / /

22

23   [3] "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00 AM)
     available at: http://www.businesswire.com/news/home/20120919005456/en/samsung-Electronics-Announces-Silicon-
24   Valley-Center.
     [4] See *Ibid.*
25   [5] See samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutsamsung/samsung_electronics
     /us_divisions/.
26   [6] "Research at the Core of SAMSUNG Research America's New Mountain View Campus," SAMSUNG Newsroom
     (Sept. 1, 2015) available at: https://news.SAMSUNG.com/global/research-at-the-core-of-SAMSUNG-research-
27   americas-new-mountain-view-campus.
     [7] *Ibid.*
28   [8] See SAMSUNG, U.S. Divisions, available at:
     http://www.SAMSUNG.com/us/aboutSAMSUNG/SAMSUNG_electronics /us_divisions/.

III.    **THE PARTIES**

A.      **PLAINTIFFS**

10.    **PLAINTIFF DEMETRIUS MARTIN** is a resident of California. In or about August 2015, **PLAINTIFF MARTIN** purchased a Samsung Galaxy S6 Edge+ smartphone in California which received cellular service from AT&T, and suffered the injuries and damage complained of herein in the State of California.

11.    **PLAINTIFF OMAR ATEBAR** is a resident of California. On or about April 2, 2016, **PLAINTIFF ATEBAR** purchased two (2) Samsung Galaxy S7 smartphones and a Samsung Galaxy Note5 in California which received cellular service from T-Mobile, and suffered the injuries and damage complained of herein in the State of California.

12.    **PLAINTIFF ESTHER VEGA** ("**E. VEGA**") is a resident of California.  On or about April 2, 2016, **PLAINTIFF E. VEGA** came into possession of her Samsung Galaxy S7 in California which which received cellular service from T-Mobile, and suffered the injuries and damage complained of herein in the State of California.

13.    **PLAINTIFF JESUS VEGA** ("**J. VEGA**") is a resident of California. On or about April 2, 2016, **PLAINTIFF J. VEGA** came into possession of his Samsung Galaxy Note5 in California which received cellular service from T-Mobile, and suffered the injuries and damage complained of herein in the State of California.

14.    **PLAINTIFF LIZETT ANGUIANO** is a resident of California. On or about April 12, 2015, **PLAINTIFF ANGUIANO** purchased a Samsung Galaxy S6 Edge in California which received cellular service from Verizon, and suffered the injuries and damage complained of herein in the State of California.

15.    **PLAINTIFF TOMAS HERNANDEZ** is a resident of California. In or about August 2015, **PLAINTIFF HERNANDEZ** purchased a Samsung Galaxy S6 in California which received cellular service from Verizon, and suffered the injuries and damage complained of herein in the State of California.

16.    **PLAINTIFF GREG ROBISON** is a resident of, Maryland. On or about May 25, 2015, **PLAINTIFF ROBISON** purchased a Samsung Galaxy S6 in Maryland purchased a

Samsung Galaxy S6 in California which received cellular service from Verizon, and suffered the injuries and damage complained of herein in the State of Maryland.

17.     **PLAINTIFF DALE HOLZWORTH, SR.** is a resident of Massachusetts.  On or about June 3, 2016, **PLAINTIFF HOLZWORTH** purchased a Samsung Galaxy S7 Edge in the Commonwealth of Massachusetts which received cellular service from Sprint, and suffered the injuries and damage complained of herein in the Commonwealth of Massachusetts.

18.     **PLAINTIFF ERIC PIRVERDIAN** is a resident of California. On or about July 19, 2015, **PLAINTIFF PIRVERDIAN** purchased a Samsung Galaxy S6 Edge in California which received cellular service from T-Mobile, and suffered the injuries and damage complained of herein in the State of California.

19.     **PLAINTIFF TOMIG SALMASIAN** is a resident of California. On or about January 29, 2016, **PLAINTIFF SALMASIAN** purchased a Samsung Galaxy S6 Edge in California which received cellular service from Verizon, and suffered the injuries and damage complained of herein in the State of California.

20.     **PLAINTIFF MICHAEL KOUYOUMDJIAN** is a resident of California. On or about August 27, 2016, **PLAINTIFF KOUYOUMDJIAN** purchased a Samsung Galaxy S7 Edge in California which received cellular service from AT&T, and suffered the injuries and damage complained of herein in the State of California.

21.     **PLAINTIFF DIOR DEE** is a resident of California. In or about October 2016, **PLAINTIFF DEE** purchased a Samsung Galaxy S7 in California which received cellular service from Sprint, and suffered the injuries and damage complained of herein in the State of California.

22.     **PLAINTIFF CORY RAYMOND** is a resident of California. In or about March 2015, **PLAINTIFF RAYMOND** purchased two (2) Samsung Galaxy S7 Edge smartphones in California which received cellular service from Verizon, and suffered the injuries and damage complained of herein in the State of California.

23.     **PLAINTIFF JESUS SANCHEZ** is a resident of California. On or about April 12, 2015, **PLAINTIFF SANCHEZ** purchased a Samsung Galaxy S6 in California which received

1  cellular service from Verizon, and suffered the injuries and damage complained of herein in the

2  State of California.

3       24.   **PLAINTIFF FRANCISCO SOTO** is a resident of Arizona. On or about February

4  8, 2015, **PLAINTIFF SOTO** purchased a Samsung Galaxy S5 in Colorado which received

5  cellular service from Sprint, and suffered the injuries and damage complained of herein in the State

6  of Arizona.

7       **B.**   **DEFENDANTS**

8       25.   **PLAINTIFFS** are informed and believe, and thereon allege, that **SAMSUNG**

9  **ELECTRONICS CO., LTD.** was, at all relevant times mentioned herein, a foreign corporation

10  organized and existing under the laws of the Republic of Korea, with its principal place of business

11  located at 129 Samsung-Ro, Yeongtong-Gu, Suwon-si, Gyeonggi-do, Korea. **SAMSUNG**

12  **ELECTRONICS CO., LTD.** is the parent company of **SAMSUNG ELECTRONICS**

13  **AMERICA, INC**.

14       26.   **PLAINTIFFS** are informed and believe, and thereon allege, that **SAMSUNG**

15  **ELECTRONICS AMERICA, INC.** was, at all relevant times mentioned herein, a New York

16  corporation organized and existing under the laws of the state of New York and registered with the

17  California Secretary of State to conduct business in California. **SAMSUNG ELECTRONICS**

18  **AMERICA, INC.** touts itself as "a recognized innovation leader in consumer electronics design

19  and technology."[9] **SAMSUNG ELECTRONICS AMERICA, INC.** is also a wholly owned

20  subsidiary of Defendant **SAMSUNG ELECTRONICS CO., LTD.**

21       27.   **SAMSUNG** is the largest seller of smartphones in the world, dominating 22.8% of

22  the worldwide market in the second quarter of 2016, nearly double the market share of the next

23  highest competitor.[10] In 2011 alone, **SAMSUNG** reported $143.1 billion in sales and had 206,000

24

25

26  _____

[9] See Samsung, U.S. Divisions, available at: http://www.samsung.com/us/aboutsamsung/samsung_electronics
27  /us_divisions/.
[10] The next closest competitor was Apple with only 11.7% in worldwide sales of smartphones. "Smartphone Vendor
28  Market Share, 2016 Q2," International Data Corporation (IDC), available at:
http://www.idc.com/prodserv/smartphone-market-share.jsp.

1  employees worldwide.[11] As of March 2016, **SAMSUNG** held the largest share of the United

2  States' smartphone market, at 28.8 percent.[12]

3        **C.**    **AGENCY & CONCERT OF ACTION**

4        28.    At all times herein mentioned, **SAMSUNG**, and each of them, hereinabove, were

5  the agents, servants, employees, partners, aiders and abettors, and/or joint venturers of each of the

6  **SAMSUNG** entities named herein and were at all times operating and acting within the purpose

7  and scope of said agency, service, employment, partnership, enterprise, and/or joint venture, and

8  each Defendant has ratified and approved the acts of each of the remaining **SAMSUNG** entities.

9  Each of the **SAMSUNG** entities aided and abetted, encouraged, and rendered substantial

10  assistance to the other **SAMSUNG** entities in breaching their obligations to **PLAINTIFFS** and the

11  Class, as alleged herein. In taking action to aid and abet and substantially assist the commission of

12  these wrongful acts and other wrongdoings complained of, as alleged herein, each of the

13  **SAMSUNG** entities acted with an awareness of his/her/its primary wrongdoing and realized that

14  his/her/its conduct would substantially assist the accomplishment of the wrongful conduct,

15  wrongful goals, and wrongdoing.

16  **IV.**    **FACTUAL BACKGROUND**

17        **A.**    **SAMSUNG'S GALAXY S AND NOTE PRODUCTS**

18        29.    **SAMSUNG** makes Android-based mobile devices, including its popular "Galaxy"

19  line of smartphones, phablets, and tablets. New flagship smartphones are released each year and

20  are identified as part of the "Galaxy S" series. The first generation "Galaxy S" phone hit the

21  market in June 2010, and was followed in subsequent years by the SII, SIII, S4, S5, S6, and S7. In

22  between the roll-out of a new flagship model, **SAMSUNG** commonly releases one or more

23  iterations of the prior flagship model. These interim iterations are often followed by variants that

24  have the word "Edge," "Edge+," or "Active" added to the model name. *See* Table in ¶31.

25

26

---

[11] "Samsung Electronics Announces New Silicon Valley R&D Center," BusinessWire.com (Sept. 19, 2012 at 9:00AM) available at: http://www.businesswire.com/news/home/20120919005456/en/samsung-Electronics-Announces-Silicon-Valley-Center.

[12] Spence, Ewan "Samsung Topples Apple as Galaxy S7 Defeats iPhone" available at http://www.forbes.com/sites/ewanspence/2016/05/04/samsung-overtakes-apple-us-smartphone-sales/#dcc15d3289f9

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

30.    In late 2011, **SAMSUNG** began selling a high-end smartphone/tablet hybrid which it called the "Galaxy Note." Galaxy Note products were larger than regular smartphones and include a stylus for additional functionality.

31.    Since April 2015, **SAMSUNG** has released the following Galaxy S6, S7 and Note[13] models:

| GALAXY S SERIES | |
|---|---|
| **Model** | **Release Date** |
| S6 | April 2015 |
| S6 Edge | April 2015 |
| S6 Active | July 2015 |
| S6 Edge+ | August 2015 |
| S7 | March 2016 |
| S7 Edge | March 2016 |
| S7 Active | June 2016 |
| S8 | April 2017 |
| S8+ | April 2017 |
| GALAXY NOTE SERIES | |
| **Model** | **Release Date** |
| Note5 | August 2015 |
| Note7 | August 2016 |

32.    The "Galaxy S" and "Galaxy Note" phones are powered by lithium ion batteries. Lithium ion batteries power a host of consumer electronic devices, including computers and power tools. Prior to the Note5 and S6 models, the battery was removable. For the Note 5, S6 and S7 models at issue in this litigation, as well as the recalled Note7, the battery is encompassed in the product and is no longer removable.

33.    The batteries in **SAMSUNG'S** phones are measured in milli-ampere hours ("mAh"), which is a unit of electric charge that expresses the capacity of a battery – how much total energy a battery can discharge before needing to be recharged. A battery's discharge rate is the amount of current being drawn from the battery. The length of time a battery will run depends on both the battery's capacity and discharge rate.

---

[13] **SAMSUNG** did not release a "Note6."

34.     The Note7 and S6 Active use lithium ion batteries with the same capacity. The S6 Edge+, S7 and Note5 use lithium ion batteries with the same capacity. The S7 Edge and S7 Active both use lithium ion batteries with greater capacity than the Note7. When Samsung launched its S8 in 2017, after the Note7 recall, it scaled back.

35.     The following chart shows the battery capacity of **SAMSUNG'S** Note and Galaxy S devices:

| GALAXY S SERIES | |
|---|---|
| Model | Battery Capacity |
| S6 | 2,550 mAh |
| S6 Edge | 2,600 mAh |
| S6 Edge+ | 3,000 mAh |
| S7 | 3,000 mAh |
| S6 Active | 3,500 mAh |
| S7 Edge | 3,600 mAh |
| S7 Active | 3,900 mAh |
| S8 | 3,000 mAh |
| S8+ | 3,500 mAh |
| GALAXY NOTE SERIES | |
| Model | Battery Capacity |
| Note5 | 3,000 mAh |
| Note7 | 3,500 mAh |

36.     The Galaxy S6 Active, the Galaxy S7 Edge, and the Galaxy S7 Active all contain batteries with at least the capacity of the recalled Note7 battery.

37.     The S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (the "Subject Phones"), as well as the Note7, all pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially

similar manner to the Note7. While **SAMSUNG** has recalled the Note7, it has not done so with respect to the Subject Phones.

**B.    THE DANGERS OF THE LITHIUM ION BATTERIES IN SAMSUNG'S SMARTPHONES**

38.    The dangers posed by lithium ion batteries made headlines recently when numerous **SAMSUNG** Note7 devices exploded and burst into flames. This caused the Consumer Product Safety Commission ("CPSC") to order a formal recall of the Note7. The Note7 devices have also been banned from all commercial air travel. **SAMSUNG** initially offered an exchange program for the Note7.

39.    Lithium ion batteries are often used in consumer electronics. However, they present inherent risks which require software, hardware and design solutions and protections to operate safely. The electrolyte material in the batteries is highly volatile, flammable, and potentially explosive if it gets too hot. Dr. Donald Sadoway, a Materials Chemistry professor at MIT, described why lithium ion batteries explode in an interview with *Time Magazine*:[14]

> If the temperature gets high enough . . . at some point, if you get up to about 400-500 degrees Centigrade, the metal oxide in the negative electrode actually starts liberating oxygen. And that's really dangerous, because now, instead of having a fire . . . getting its oxygen from the air surrounding it, it's getting its oxygen from inside the battery itself. *The term of art is, this has now become a bomb*. You've got fuel and oxygen in the same place at the same time.

40.    This is often referred to as a "thermal runaway" event, after which the battery will catch fire or explode.  A thermal runaway event generates high temperatures exceeding 1100 degrees Fahrenheit. It can happen in a variety of circumstances, including when the battery is overcharged, when it is rapidly discharged, when there is a cell defect, when there is cell damage, and in heat.[15]  According to Scientific American:

> … *faulty batteries can be overcharged. Well-made batteries will stop charging automatically once they're full*, but that's not always the case for faulty batteries,

---

[14] "We Asked a Battery Expert Why Samsung's Phones Are Catching Fire, by Alex Fitzpatrick, published by Time Magazine on September 9, 2016 (emphasis added), available at: http://time.com/4485396/samsung-note-7-battery-fire-why/
[15] See, Federal Aviation Administration ("FAA"), Summary of Findings from Previous Tests – Lithium-ion, available at: http://www.icao.int/safety/DangerousGoods/pptfaa/Full scale ion and large format.pptx (last accessed October 13, 2016).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

… If left plugged in for too long, the lithium ions can collect in one spot and be deposited as metallic lithium within the battery…. Also, heat from the overcharging can cause oxygen bubbles within the gel, which are highly reactive with metallic lithium.[16]

41.    In cellular phones, both software and hardware regulate the temperature, charging and use of the battery.  If the software protocols are programmed or set incorrectly a thermal runaway event can occur. A careless manufacturing process that leaves unwanted material in the battery can also lead to thermal runaway. A poorly manufactured separator that breaks can also lead to thermal runaway. As can a defective thermal spreader can lead to a thermal runaway.

42.    **SAMSUNG** initially stated the Note7's problem was limited to only one (1) of its two (2) battery supply sources.  After the initial recall and exchange of the Note7 devices, more explosions of the devices were reported.  On October 13, 2016, **SAMSUNG** announced it was recalling all Note7 devices, original and exchanged. As reported by the Wall Street Journal[17]:

The X-ray and CT scans showed a pronounced bulge.

After reports of Galaxy Note7 smartphones catching fire spread in early September, Samsung Electronics Co. executives debated how to respond. Some were skeptical the incidents amounted to much, according to people familiar with the meetings, but others thought the company needed to act decisively.

A laboratory report said scans of some faulty devices showed a protrusion in Note7 batteries supplied by Samsung SDI Co., a company affiliate, while phones with batteries from another supplier didn't.

It wasn't a definitive answer, and there was no explanation for the bulges. But with consumers complaining and telecom operators demanding answers, newly appointed mobile chief D.J. Koh felt the company knew enough to recall 2.5 million phones. His suggestion was backed by Samsung's third-generation heir apparent, Lee Jae-yong, who has advocated for more openness at one of the world's most opaque conglomerates.

That decision in early September—to push a sweeping recall based on what turned out to be incomplete evidence—is now coming back to haunt the company.

Two weeks after Samsung began handing out millions of new phones, with batteries from the other supplier, the company was forced to all but acknowledge that its initial diagnosis was incorrect, following a spate of new incidents, some involving supposedly safe replacement devices. With regulators raising fresh

---

[16] https://www.scientificamerican.com/article/the-science-behind-samsung-phone-battery-fires/ (last accessed October 13, 2016) (emphasis added).
[17] Cheng, Jonathan and McKinnon, John, "The Fatal Mistake that Doomed Samsung's Galaxy Note," available at http://www.wsj.com/articles/the-fatal-mistake-that-doomed-Samsungs-galaxy-note-1477248978.

questions, Messrs. Lee and Koh decided to take the drastic step of killing the phone outright.

43.    **SAMSUNG** instructed consumers who had a Note7 device to "please power down immediately" and "contact the carrier or retail outlet where they purchased their device."[18] **SAMSUNG** stated that it was announcing the program "in cooperation with the U.S. Consumer Product Safety Commission and in partnership with carriers and retailers."[19]

44.    Consumers could turn in their Note7 devices (both the original and exchanged versions) for refunds, exchanges for **SAMSUNG** products or other smartphones and offered between $25 and $100 "bill credits." Consumers who exchanged their Note7 for other **SAMSUNG** devices were offered $100 bill credits.[20] Consumers who elected to receive a refund or purchase a different brand of smartphone, were offered $25 bill credits, "less any incentive credits already received."[21]

45.    Since the lead *Martin* case was filed in November 2016 Samsung has issued a root cause analysis of the Note7 thermal runaway events. Specifically, Samsung has claimed that there were multiple manufacturing defects in the batteries in the first batch of Note7s and in the replacement Note7s.

46.    Notably, when Samsung rolled out the S8 models in 2017 it focused its consumer advertising campaign on safety, claiming:

> We learned from the Galaxy Note7 issues and have made changes as a result. From re-assessing every step of our smartphone manufacturing process to redesigning our quality assurance program, we are committed to implementing every learning to ensure quality and safety going forward.

---

[18] See "Samsung Note7 Safety Recall" available at http://www.samsung.com/us/note7recall/, updated October 13, 2016.
[19] *Ibid.*
[20] For consumers who had already exchanged their phones, they were offered a $75 bill credit in addition to the $25 bill credit from the exchange program.  *Ibid.*
[21] *Ibid.*

http://www.samsung.com/us/explore/note7-press-conference-detail/, visited July 19, 2017.

Samsung's website contains the following explanation of "why it won't happen again":



http://www.samsung.com/us/explore/note7-press-conference-detail/, last visited July 19, 2017.

47.     Outside of the Note7 recall, **SAMSUNG** has taken no steps to recall or warn consumers about the risks of overheating, fire and explosion posed by its Subject Phones. It denies that the Subject Phones are dangerous or defective – however, the S8 campaign stands as an implicit admission that the safety standards and production processes at Samsung were not adequate before 2017.

**C.      SAMSUNG WAS AND IS AWARE OF OVERHEATING PROBLEMS WITH THE SUBJECT PHONES, FAILED TO FIX THE PROBLEM OR WARN ITS CUSTOMERS**

48.     **SAMSUNG** made the choice to increase the power of the battery in the Subject Phones despite knowing that older models and generations with less powerful batteries were experiencing problems with overheating, catching fire, and even exploding. The problem dates back several years; and well before the release of the Subject Phones. It is only with the Note7 that complaints of overheating, fire and explosion became so overwhelming that **SAMSUNG** could no longer ignore or mask the problem.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

49.    **SAMSUNG** had good reason to be concerned about overheating in its smartphones. The occurrence of similar incidents in other models of **SAMSUNG** phones and electronic devices has been reported through the media and consumer protection agencies for years. Despite knowledge and awareness, **SAMSUNG** failed to fix the root problem, notify or warn the public of the dangers its electronic devices presented, initiate a recall of all devices where overheating, explosion, and/or fire were foreseeable, or otherwise address the problem.

50.    The CPSC has recorded numerous consumer incident reports of **SAMSUNG** phones and accessories overheating, catching fire, and even exploding. The reports relate to a variety of devices—including the Galaxy S2, Galaxy Tab 2, Galaxy Tab 3, Galaxy S3, Galaxy S4 Active, Galaxy S5, Galaxy S6, Galaxy S6 Edge, and Galaxy S6 Active. The consumer complaints of such problems date back to August of 2011.

51.    Consumer reports to CPSC regarding unsafe Samsung Galaxy S and Samsung Galaxy Note products (not including complaints regarding the Note7) include the following:

- On <u>December 6, 2012</u>, a Health Care Professional reported that a Galaxy S3 got "warm" and caused a "partial thickness" burn on a consumer's right cheek. CPSC Report No. 20121206-FE67D-2147461269.

- On <u>February 28, 2013</u>, a consumer reported that he or she observed a Galaxy S2 "overheating" and "battery swelling."  The consumer expressed "[f]ear of battery fire." CPSC Report No. 20130228-0C612-2147458351.

- On <u>August 16, 2013</u>, a consumer reported that a Galaxy S2 began "hissing," made a loud "POP," and filled the room with a noxious smoke. The incident occurred while the device was charging at night.  CPSC Report No. 20130816-D0B19-2147453034.

- On <u>January 20, 2014</u>, a consumer reported that a Samsung Galaxy S3 and charging cord became "visibly burned and melted." The consumer reported "[i]t looks like it had been on fire momentarily." The incident occurred while the device was charging. CPSC Report No. 20140120-0DFDC-2147448018.

- On <u>April 17, 2014</u>, a consumer reported that a Galaxy S4 started to "smell" and "smoke," causing the charger to melt into the phone. The incident occurred while the device was charging.  CPSC Report No. 20140417-51573-2147445343.

- On <u>April 25, 2014</u>, a consumer reported that a Galaxy S3 made a "loud pop," and "the battery … shot the back cover and battery out of the phone spraying a black fluid out and pouring out black smoke … the battery pack was red in color and smoking hot …." The device was charging at the time. CPSC Report No. 20140425-7FBF6-2147445126.

- On <u>May 1, 2014</u>, a consumer reported that a Galaxy S4 became "extremely hot" and burned the consumer's son. The consumer contacted Samsung about the incident, but they had not called back at the time of the report. The consumer reported he felt the "phone is dangerous." CPSC Report No. 20140501-C2DA6-2147444903.

- On <u>May 12, 2014</u>, a consumer reported that a Galaxy S4 "became so hot it melted the cable. I'm not sure if there was fire but the device was certainly smoking." The device was charging at the time.  CPSC Report No. 20140512-5B5C8-2147444606.

- On <u>September 29, 2014</u>, a consumer reported that a Galaxy S4 began smoking and the "battery caught on fire," damaging the consumer's floor. The consumer reported the incident directly to Samsung.  CPSC Report No. 20140929-BD00A-1431381

- On <u>November 2, 2014</u>, a consumer reported that a Galaxy S4 began burning in the consumer's pocket. When the consumer pulled the phone out of his or her pocket, it seared the consumer's skin. The consumer further reported "[t]he temperature was equivalent to pulling something out of the oven after baking or boiling water and dunking your hand in it."  CPSC Report No. 20141102-D37FA-2147439274.

- On <u>November 13, 2014</u>, a consumer reported that a refurbished Galaxy S4 awoke the consumer with the smell of burning electronics, and burned the consumer's hand before the consumer realized "the phone was starting to catch fire." The consumer further reported that "[t]he charging port was burnt, the cord was melted, and [his or her] sheets and mattress pad were burnt." CPSC Report No. 20141113-0F420-2147438923.

- On <u>December 30, 2014</u>, a consumer reported that a Galaxy S4 "literally melted to [the consumer's] counter" while charging.  The consumer further reported that "[t]he area around the charging port was black and melted." CPSC Report No. 20141230-C86A9-2147437158.

- On <u>July 24, 2015</u>, a consumer reported that a Galaxy Note 2 "became hot," and emitted "large amounts of smoke" and "sparks." The consumer further reported that the battery "projected out of the back of the device … leaving burn marks and a hole in the carpet."  CPSC Report No. 20150724-ABD3B-2147429986.

- On <u>August 9, 2015</u>, a consumer reported that a Galaxy S5 began "smoking from the point at which the charge plugs into the phone." Both the phone and charger had "burn marks and were melted slightly." The consumer further reported that he or she feared the phone or charger would have started a fire if the consumer had not woken up. CPSC Report No. 20150809-FD1A7-2147429518.

- On <u>September 19, 2015</u>, a consumer reported that the Samsung charging device for a <u>Galaxy S6</u> was "overheating excessively under normal use."  "The consumer further reported that the heating was "severe" enough to burn the consumer.  CPSC Report No. 20150919-9088D-2147428266.

- On <u>December 29, 2015</u>, a consumer reported that a Samsung phone charger for a "Newer Samsung Galaxy" had "almost started on fire." The "phone was red hot," the tip of the

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

17

charger was black, and the phone was "completely toast."  The consumer further reported: "Totally unsafe! My house could have started on fire."  CPSC Report No. 20151229-96F83-2147425364.

- On January 14, 2016, a consumer reported that a charging device for a Galaxy S4 got "extremely hot and started to melt." CPSC Report No. 20160114-AC115-1545877.

- On January 18, 2016, a consumer reported that a Galaxy S6 Edge became "extremely hot to touch," and developed a crack in the screen. CPSC Report No. 20160118-B87EB-2147424570.

- On January 23, 2016, a consumer reported that a Galaxy S6 began emitting a "strange smell," and that the Samsung charger was "warped, melted, and discolored." The consumer further reported that the phone was "extremely hot" to the point it would have "burned a small child." The incident occurred while the phone was charging. CPSC Report No. 20160123-F8845-2147424397.

- On March 21, 2016, a consumer reported that a Samsung charging device for a Galaxy S6 "caught on fire and melted." CPSC Report No. 20160321-83C90-2147420788.

- On September 16, 2016, a consumer reported that a Galaxy S4 Active "melted" into the charging cable. The phone burned the consumer's finger. The consumer further reported that the phone "probably could have got a fire." CPSC Report No. 20160916-61984-2147414098.

- On September 16, 2016, a consumer reported that the battery of a Samsung Galaxy S5 is "bulging" and the phone is "warm to touch." The consumer further reported that Samsung refused to do anything other than sell the customer a new battery because the phone "had not yet exploded." CPSC Report No. 20160916-13A98-2147414102.

- On September 16, 2016, a consumer reported that a Samsung Galaxy S6 Active "burned up while charging via a Samsung charger."  The incident set off smoke alarms, filled the customer's bedroom with smoke, charred curtains and bedding, and burned through the hardcover of a book. The consumer reported that she contacted Samsung about the incident, and that Samsung gave her the "runaround." CPSC Report No. 20160916-1BB3F-2147414093.

52.    Numerous additional complaints have been submitted by consumers to saferproducts.gov. Reports at saferproducts.gov related to the Subject Phones include the following:

- On November 16, 2015, a consumer reported suffering "a first degree burn of my right ring finger due to excessive heat from the charger at the point of connection to the phone while on 'fast charge' mode."

- On January 18, 2016, a consumer reported that "during operation" of their Galaxy S6 Edge, it "became extremely hot to touch and the screen developed a crack."

- On June 21, 2016, a consumer reported that at "1230am on June 9, 2016 using the Samsung charger that is issued with the phone. The phone was sitting on the side of the bed, with nothing covering it, and around 4am [] it pretty much exploded and caught on fire. The sound was so loud it woke my child up in the next room. The fire burnt through my sheets, mattress . . ."

- On August 17, 2016, a consumer being burned and scarred as a result of repeated overheating of their Galaxy S6 Edge.On September 2, 2016, a consumer reported the battery in their Galaxy S6 Active caught fire and nearly caused a house fire.

- On September 10, 2016, a consumer reported he had placed his S7 Edge in his "right front pocket" and that "shortly thereafter he noticed his phone whistling, screeching, and vibrating, as well as smoke coming from his pocket." According to the report, the consumer suffered burns to his hand when he tried to remove the phone from his pocket and that, "without warning the S7 Edge exploded and caught fire" causing second and third degree burns.

- On September 16, 2016, a consumer reported their Galaxy S6 Active "burned up while charging via a Samsung charger. The smoke alarms went off and our bedroom was filled with smoke. There was char on the curtains about 2 feet away from the bed and charred marks on the headboard; the phone burned through the hardcover of a book." The consumer complained about receiving the "runaround" from Samsung customer service and suffering through substantial delays prior to receiving a replacement and check for the property damage.

- On September 16, 2016, a consumer reported her "two-month-old Samsung S7 Edge got so hot that it burned my hand and I could not hold onto it."

- On September 19, 2016, a consumer reported their five month old Galaxy S6 charger was overheating and had "melted plastic from the overheating of the charger." The consumer reported the "Heating is severe," and that the phone "gets very hot to the touch. . . enough to burn myself." The consumer also reported that the "chargers are original chargers, from the box . . . that came with the phone."

- On September 21, 2016, a consumer reported their Galaxy S6 "heats up to the point where it can't be used because it'll burn," and that Samsung had refused to address his serious concern about his own safety and risk of fire or explosion.

- On September 23, 2016, a consumer reported using a Samsung Galaxy S6 "when it started reporting it no longer had service. It then got very hot near the power button. I burnt my finger trying to get it to turn off." The consumer explained that "Despite getting hot enough that I got a burn that blistered, the phone has never reported itself as being overheated."

- On September 26, 2016, a consumer reported her phone charger cord was "hot, melted and smoking" while her Galaxy S7 was plugged in and charging.

- On September 30, 2016, a consumer reported the following about their Galaxy S6 Active: "9-26-2016 I woke up at 5:30 took phone off charger and did usual checking email and played games on phone until 6:30. Phone was not hot that I could tell. After taking kids to the bus about 20 minutes without using the phone I took it out of my pocket laid it on my bed and it

popped really loud and start spewing smoke and melted plastic out of the phone on both ends, screen shattered and the case melted. The smoke alarms went off and the phone was too hot to touch."

• On <u>October 1, 2016</u>, a consumer reported their <u>Galaxy S7</u> was having significant problems with the "phone getting extremely and dangerously hot." The consumer reported the problem to Samsung, but was told that the S7 was not affected by the recall of the Note7 and that Samsung would not replace it because it was outside the 30-day warranty period. According to the report, the problem worsened until the "phone got so hot that it melted into the [] case."

• On <u>December 2, 2016</u>, a consumer reported his Samsung Galaxy S5 battery swelled so much that the face of the phone was detached from the base.

• On <u>January 2, 20</u>17, a consumer reported the following regarding their Galaxy S7 Edge: "On Friday, December 30th at around 7:38 am, I left my phone charging and I woke up next to my phone bursting into sparks and flames."

• On <u>January 23, 2017</u>, a consumer reported that their S6 was overheating.

• On <u>January 31, 2017</u>, a consumer reported that their Galaxy Edge 7 Plus caused facial burns.

• On <u>February 2, 2017</u>, a consumer reported his Samsung Galaxy S7 was overheating excessively and he complained to Samsung and was told there was no refund policy.

• On <u>February 4, 2017</u>, a consumer reported the battery in their Galaxy S7 Edge overheated repeatedly causing burns.

• On <u>February 6, 2017</u>, a consumer reported their "Samsung Galaxy S7 phone was sitting on a countertop, not plugged in, when suddenly there was a popping sound, and smoke began spewing out of the phone."

• On <u>February 11, 2017</u>, a consumer reported "Samsung Galaxy S7 battery exploded and caught fire while charging on nightstand. Produced heavy smoke in home, sent spouse to hospital due to smoke inhalation."

• On <u>March 21, 2017</u>, a consumer reported that their S7 caught fire.

• On <u>April 17, 2017</u>, a consumer reported that their S7 started smoking and caught fire.

• On <u>February 11, 2017</u>, a consumer reported their Galaxy S7 "exploded and caught fire while charging on nightstand. Produced heavy smoke in home, sent spouse to hospital due to smoke inhalation."

• On <u>May 26, 2017</u>, a consumer reported their Galaxy S7 "over heated badly and melted apart." He reported that his carrier told him that it was the same battery issue as the

Samsung S7 Edge and Note and to contact Samsung. The person sent by Samsung to pick up the phone told the consumer that the consumers "S7 Galaxy isn't the only one doing this."

- On <u>May 30, 2017</u>, a consumer reported their Galaxy S7 Edge caught fire and Samsung demanded the phone be returned for "cause analysis."

- On <u>May 31, 2017</u>, a consumer reported: "On 5/29/17, I had my Samsung Galaxy S6 active phone charging on my bed as I was sleeping. It was not covered by any materials. At around 3am, I wake up to a hissing noise and a harsh, chemical smell. I then see a flash of bright light and start screaming fire. My partner was still awake in the other room and rushed in. He grabbed the phone and threw it on the outside patio. The phone spewed chemicals on my bed, a blanket, and two pillows."

- On <u>September 23, 2016</u>, a consumer reported using a <u>Samsung Galaxy S6</u> "when it started reporting it no longer had service. It then got very hot near the power button. I burnt my finger trying to get it to turn off."  The consumer explained that "Despite getting hot enough that I got a burn that blistered, the phone has never reported itself as being overheated."

53.    **SAMSUNG** is and was aware of these reports and the hazards posed by their phones because consumers report the incidents directly to **SAMSUNG**, and **SAMSUNG** has also acknowledged the reports by responding on the consumer agency's website with a boilerplate response.

54.    **SAMSUNG** even took specific steps to attempt to address the overheating issues in designing the hardware for the S7, relying on unconventional technology and unproven designs to attempt to provide a partial solution to the overheating problems in its smartphones hardware designs.

55.    **SAMSUNG'S** website describes the new hardware used to attempt to address these concerns, known as a "thermal spreader." According to **SAMSUNG**, the thermal spreader it designed was "unlike conventional thermal spread technology."[22]  **SAMSUNG'S** team responsible for designing the system further stated that "due to the spatial limits of smartphones, the cooling system's cooling capacity alone is not enough to cool the device. We need to calculate the amount of electric current and optimize the heat control algorithm to minimize occurring heat. In other

---

[22] See https://news.samsung.com/global/faces-of-innovation-galaxy-s7-s7-edge-how-we-created-the-cooling-system-in-the-galaxy-s7-and-s7-edge.

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1    words, the new thermal spreader hardware controls the heat more effectively but the software heat-

2    control algorithm must be made compatible to ensure best performance."[23]

3        **D.    SAMSUNG'S CONCEALED THE DANGERS POSED BY ITS PRODUCTS**

4        56.    Despite knowledge of the overheating problem existing across multiple models and

5    generations of **SAMSUNG** phones and despite choosing to put increasingly powerful batteries in

6    smaller spaces in the Subject Phones, **SAMSUNG** concealed from consumers the risks of fire,

7    explosion and overheating.

8        57.    **SAMSUNG** marketed the S6 Active as indestructible, innovative, and better than

9    ever.  According to **SAMSUNG**: "AT&T is bringing its customers the toughest and most advanced

10   member of the Galaxy S family. The Samsung Galaxy S6 Active . . . is designed with your active

11   lifestyle in mind. It gives you the durability you want while boasting a sleek, lightweight design

12   and all of the innovation the Galaxy S6 has to offer."[24]

13       58.    It is "[b]uilt to withstand whatever everyday life throws its way, the Samsung

14   Galaxy S6 active has IP68 certified casing that is water resistant up to 1.5 meters for up to 30

15   minutes, shock resistant, and dust proof."[25]

16       59.    According to Tim Baxter, President, Chief Operating Officer, and General Manager

17   of **SAMSUNG**: "With the Galaxy S6 active, we're delivering consumers with high durability

18   coupled with the powerful performance of Samsung's latest flagship smartphone. The result is a

19   smartphone that brings ruggedized capabilities and water resistance coupled with the camera,

20   battery and design features that empower our consumers and business users to do more."[26]

21       60.    According to Kwangjin Bae, the Principal Engineer at IT & Mobile

22   Communications, "the goal was to make Samsung's latest flagship smartphone as strong and

23   durable as possible," for which, "[t]he development team for the Galaxy S6 worked around the

24   clock. It was one of the most difficult times of my life and all the members of the group from

25

26   ---
     [23] *Ibid.*

27   [24] "Samsung Galaxy S6 active Available Exclusively at AT&T," Samsung Newsroom (June 9, 2015) available at: https://news.samsung.com/global/Samsung-galaxy-s6-active-available-exclusively-at-att.

28   [25] *Ibid.*
     [26] *Ibid.*

1    bottom to the top worked together as one in developing the new product. It was not an easy task

2    because it was uncharted territory for all of us."[27]

3        61.    **SAMSUNG** bragged: "[i]n introducing innovation, not only in design and

4    engineering, but also in manufacturing processes, Samsung adheres to its notoriously strict quality

5    control policy. Each product undergoes intense durability testing such as drop tests, bending test

6    and performance testing among many other steps. Samsung takes to ensure the highest quality

7    products. By fusing together innovation with durability, Samsung is able to provide the level of

8    quality consumers expect from Samsung."[28]

9        62.    **SAMSUNG** marketed the S6 Edge+ as being "More than a phone, it's the hub of

10   your life, always with you, always on…you do everything with your phone… shouldn't you expect

11   more from it?" And **SAMSUNG** also worked to decrease the charging time, advertising that, on

12   the S6, S7 and Note5 models that charging was faster than ever and the phone could be fully

13   charged in ninety minutes.

14       63.    **SAMSUNG** advertised the S6 as having "next level performance" and "next level

15   charging," including built in wireless charging.

16       64.    **SAMSUNG** advertised and marketed the S7 models by explaining that it was "not

17   just launching a new phone, we are launching a new way of thinking about what a phone can do."

18   **SAMSUNG** stated, "our phones go everywhere with us," and told consumers "Time is valuable. If

19   time is the most valuable thing, why would you waste time charging your phone" in advertising the

20   "fast charging" capabilities of the S7 models.

21       65.    **SAMSUNG** advertised the S7 Active as the "toughest Samsung ever" and touted its

22   battery performance and fast charging capability.

23       66.    Despite these descriptions and marketing efforts, **SAMSUNG** concealed from

24   consumers the risks of overheating, fire, and explosion posed by the Subject Phones.

25   **SAMSUNG'S** omissions were material to consumers' purchasing decisions in that had consumers

---

[27] "[Editorial] The Perfect Fusion: The Story Behind the Metal and Glass of the Galaxy S6," Samsung Newsroom (June 1, 2015) available at: https://news.Samsung.com/global/the-perfect-fusion-the-story-behind-the-metal-and-glass-of-the-galaxy-s6-ass-and-metal-was-not-without-its-challenges-the-story-behind-the-galaxy-s6-sound.

[28] "Forming Glass, Metal Frame – The Art of Craftsmanship in the Galaxy S6," Samsung Newsroom (March 2, 2015) available at: https://news.samsung.com/global/forming-glass-forging-metal-the-art-of-craftsmanship-in-the-galaxy-s6

been warned of the dangers of the products, they would not have purchased the Subject Phones or would have paid less for the Subject Phones than they paid.

67.   Even while **SAMSUNG** was performing its recalls of the Note7, it continued to attempt to conceal the scope of the problem. **SAMSUNG** reportedly offered to pay at least one consumer in China approximately $900 to replace his Note7 if he agreed not to publicize a video of his smartphone overheating and smoking.[29]  **SAMSUNG** has also issued copyright claims to YouTube in order to take down parody videos posted by the public of the Note7 bursting into flames or exploding.[30] And despite the well-publicized recall of the Note7, **SAMSUNG** continues to hide the risks of the Subject Phones, and has taken no steps to warn its customers or recall additional products subject to the same dangers.

68.   On October 12, 2016, in the midst of the Note7 recalls, **SAMSUNG** reportedly[31] sent push notifications directly to some of its consumers' smartphones:



69.   **SAMSUNG** knew the Subject Phones were defectively designed or manufactured, would fail without warning, posed a risk to the public, and were not suitable for their intended use. Until the problem became too widespread, publicized, and pervasive to ignore with the Note7,

---

[29] Wee, Sui-Lee, "Samsung's Uneven Handling of Galaxy Note7 Fires Angers Chinese," (available at http://www.nytimes.com/2016/10/19/business/Samsung-galaxy-note7-china-test.html?_r=0).
[30] BBC News, October 21, 2016, "Samsung 'blocks' exploding Note7 parody videos" (available at http://www.bbc.com/news/technology-37713939).
[31] Haselton, Todd "Samsung to Galaxy S7 Owners: Your Phone is NOT Recalled" (available at http://www.technobuffalo.com/2016/10/12/galaxy-s7-not-recalled/).

1    **SAMSUNG** failed to warn **PLAINTIFFS**, the Class and the public about the inherent dangers of

2    the Subject Phones, despite having a duty to do so. Additionally, **SAMSUNG** has continued to fail

3    to warn consumers of the dangers related to the Subject Phones, implying the Note7 is an outlier

4    and that **SAMSUNG'S** other products, including the Subject Phones, are safe.

5          70.   **SAMSUNG** owed **PLAINTIFFS** a duty to disclose the defective nature of Subject

6    Phones, including the dangerous risk of explosion, fire and overheating, because **SAMSUNG**:

7          a.    possessed exclusive knowledge of the defects rendering the Subject Phones

8    inherently more dangerous and unreliable than similar smartphone products; and,

9          b.    intentionally concealed the dangerous situation with the Subject Phones through

10   their marketing campaign and recall programs.

11         71.   **SAMSUNG**, and each of them, designed, engineered, developed, manufactured,

12   tested, produced, assembled, labeled, supplied, imported, distributed, and sold the Subject Phones

13   and their component parts and constituents, which were intended by **SAMSUNG**, and each of

14   them, to be used as a consumer smartphone.

15         72.   The Galaxy S6 is unsafe for its intended use by reason of defects in its design,

16   engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

17   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

18         73.   The Galaxy S6 Edge is unsafe for its intended use by reason of defects in its design,

19   engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot

20   safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

21         74.   The Galaxy S6 Edge+ is unsafe for its intended use by reason of defects in its

22   design, engineering, development, manufacturing, testing, production, and/or assembly, such that it

23   cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious

24   injury.

25         75.   The Galaxy S6 Active is unsafe for its intended use by reason of defects in its

26   design, engineering, development, manufacturing, testing, production, and/or assembly, such that it

27   cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious

28   injury.

76.     The Galaxy Note5 is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

77.     The Galaxy S7 is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

78.     The Galaxy S7 Edge is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public and **PLAINTIFFS** to serious injury.

79.     The Galaxy S7 Active is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but instead exposes the public and **PLAINTIFFS** to serious injury.

### E.      PLAINTIFFS' EXPERIENCES

#### 1.      Demetrius Martin's Experience

80.     While using his Samsung Galaxy S6 Edge+, **PLAINTIFF MARTIN**'s device consistently overheated and was the hot to the touch. Eventually, on or about December 30, 2015, **PLAINTIFF MARTIN**'s device caught fire while it was plugged in and, as a result of the fire, the battery expanded into an egg shape, and the front and back of the phone shattered.  This has impaired and impeded his use of the device.

#### 2.      Omar Atebar's Experience

81.     While using his Samsung Galaxy S7, **PLAINTIFF ATEBAR**, has experienced the phone overheating to the point where a "danger" screen appears. When the phone overheats, **PLAINTIFF ATEBAR** is forced to attempt to cool the phone with an air conditioner so that the phone can be used. This has impaired and impeded his use of the device.

#### 3.      Esther Vega's Experience

82.     While using her Samsung Galaxy S7, **PLAINTIFF E. VEGA** has experienced the device overheating while talking on the phone. This has impaired and impeded her use of the device.

#### 4.    Jesus Vega's Experience

83.    While using his Samsung Galaxy Note5, **PLAINTIFF J. VEGA** has experienced the device overheat while talking on the device and running social media applications. While using the device he has received numerous warnings regarding overheating, as well as encountered shortened battery life and phone sluggishness. This has impaired and impeded his use of the device.

#### 5.    Lizett Anguiano's Experience

84.    While using her Samsung Galaxy S6 Edge, **PLAINTIFF ANGUIANO** has experienced the device overheat. This has impaired and impeded her use of the device.

#### 6.    Tomas Hernandez's Experience

85.    While using his Samsung Galaxy S6, **PLAINTIFF HERNANDEZ** has experienced the device to become unusually warm to the touch.  He has since noticed the overheating has grown worse to the point where the device would become so hot that all of his applications would crash. He also noticed that the device is consistently sluggish and he has to charge the phone several times each day to maintain sufficient battery power. This has impaired and impeded his use of the device.

#### 7.    Greg Robison's Experience

86.    While using his Samsung Galaxy S6, **PLAINTIFF ROBISON** has experienced the device constantly overheat; the overheating was most pronounced when the device was running an application while charging. As **PLAINTIFF ROBISON** continued to use his device it began shutting down completely as a result of the overheating and, ultimately, stopped turning on at all. This has impaired and impeded his use of the device.

#### 8.    Dale Holzworth's Experience

87.    While using his Samsung Galaxy S7 Edge, **PLAINTIFF HOLZWORTH**, experienced the device constantly overheating while talking on the device and running social media applications.  Further, on or about November 12, 2016, the device caught on fire while charging. As a result of the fire, the device melted and was rendered unusable. This has impaired and impeded his use of the device.

### 9.  Eric Pirverdian's Experience

88.     While using his Samsung Galaxy S6 Edge, **PLAINTIFF PIRVERDIAN** experienced numerous problems including: overheating; the phone was sluggish; the phone had problems connecting to the internet; the phone had problems running applications; phone failed and/or dropped calls; the phone had warning signs appear randomly; he had to stop use of the phone because it became too hot; he noticed the phone was hot when in use; had problems with short battery life; the phone randomly opened applications; the phone randomly dimmed; the phone would go to random sites and say there was a virus and beeping until it had to be shut down. This has impaired and impeded his use of the device.

### 10.  Tomig Salmasian's Experience

89.     While using his Samsung Galaxy S6, **PLAINTIFF SALMASIAN** experienced numerous problems including: overheating; problems running applications; the phone has failed and/or dropped calls; the phone has had warning signs appear randomly; he had to stop use of the phone because it became too hot; he noticed the phone was hot when in use; and had problems with short battery life.  This has impaired and impeded his use of the device.

### 11.  Michael Kouyoumdjian's Experience

90.     While using his Samsung Galaxy S7 Edge, **PLAINTIFF KOUYOUMDJIAN** experienced numerous problems including: overheating; problems running applications; the phone has failed and/or dropped calls; the phone has had warning signs appear randomly; he had to stop use of the phone because it became too hot; he noticed the phone was hot when in use; and had problems with short battery life. This has impaired and impeded his use of the device.

### 12.  Dior Dee's Experience

91.     While using his Samsung Galaxy S7, **PLAINTIFF DEE** experienced that the device would consistently overheat while he was talking and would become hot to the touch, especially when the device was charging. Likewise, while operating certain applications the device would overheat and the screen would appear discolored or pixilated. He also noticed that the device experienced difficulties in connecting to the internet, would randomly open applications on

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

its own, would send text or SMS messages to incorrect numbers and would fail to charge. This has impaired and impeded his use of the device.

### 13.   Cory Raymond's Experience

92.   While using his Samsung Galaxy S7 Edge, **PLAINTIFF RAYMOND** experienced that the device would heat up and the screen appeared discolored or pixilated. While charging the phone, he noticed that the phone would get extremely hot and feel like it was burning when he removed it from the charger. Likewise, while he was talking on the phone it would overheat, had issues connecting to the internet, randomly opened applications on its own, randomly would dim, and failed to charge. This has impaired and impeded his use of the device.

### 14.   Jesus Sanchez's Experience

93.   While using his Samsung Galaxy S6, **PLAINTIFF SANCHEZ** has experienced the device overheat while talking on the device and running applications. This has impaired and impeded his use of the device.

### 15.   Francisco Soto Experience

94.   On or about January 11, 2017, **PLAINTIFF SOTO**'s Samsung Galaxy S5 overheated and caught on fire and began projecting flames several inches high and, when finally extinguished, left the device as a contorted piece of metal, plastic, and glass. This has impaired and impeded his use of the device.

## V.   CLASS ACTION ALLEGATIONS

### A.   CALIFORNIA CLASSES

95.   The following California Class and California CLRA Subclass may properly be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

California Class: All persons residing in the State of California who purchased, in the State of California, at least one (1) of the Subject Phones at any time beginning November 2, 2012 and continuing through the date of trial. The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶31).

California CLRA Subclass: All persons residing in the State of California who purchased, in the State of California, for personal, family, or household purposes, at least one (1) of the Subject Phones at any time

beginning November 2, 2013 and continuing through the date of trial.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶31).[32]

96.      Excluded from the California Class are **SAMSUNG**, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident. Further excluded is any individual who after purchase of a Subject Phone returned the Subject Phone and received a full refund of his or her purchase price.

97.      In the addition, the following California Injunction Class may properly be maintained as a class action pursuant to FRCP 23(b)(2) on behalf of the following individuals:

California Injunction Class: All persons residing in the State of California who, following trial, remain in possession of a Subject Phone.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶31).

98.      Excluded from the California Injunction Class are **SAMSUNG**, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.  Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident.

99.      Throughout discovery in this litigation, the **CALIFORNIA CLASS REPRESENTATIVES** may find it appropriate and/or necessary to amend the definition of the California Class, the California CLRA Subclass, and/or the California Injunction Class (the "**CALIFORNIA CLASSES**"). The **CALIFORNIA CLASS REPRESENTATIVES** will

---

[32] **PLAINTIFFS MARTIN, ATEBAR, E. VEGA, J. VEGA, ANGUIANO, HERNANDEZ, PIRVERDIAN, SALMASIAN, KOUYOUMDJIAN, DEE, RAYMOND, AND SANCHEZ** (the "**CALIFORNIA CLASS REPRESENTATIVES**") are each representatives and members of the California Class and the California CLRA Subclass. Because each of the **CALIFORNIA CLASS REPRESENTATIVES** are members of both the California Class and the California CLRA Subclass, the **CALIFORNIA CLASS REPRESENTATIVES** will refer to the California Class and the California CLRA Subclass collectively as the "**CALIFORNIA CLASS**" or "**CALIFORNIA CLASSES**" unless otherwise specified.

formally define and designate class definitions for the **CALIFORNIA CLASSES** when they seek to certify the **CALIFORNIA CLASSES**.

100.    Pursuant to Rule 23(a)(1), a class is so numerous that joinder of all members is impracticable. While the exact number of individuals in the **CALIFORNIA CLASSES** is unknown to the **CALIFORNIA CLASS REPRESENTATIVES** at this time, the **CALIFORNIA CLASS REPRESENTATIVES** believe there are hundreds of thousands, if not millions, of individual members in each of the **CALIFORNIA CLASSES**.

101.    Pursuant to Rule 23(a)(3), the **CALIFORNIA CLASS REPRESENTATIVES** claims are typical of the claims of the other members of the **CALIFORNIA CLASSES**. The **CALIFORNIA CLASS REPRESENTATIVES** and other members of the **CALIFORNIA CLASSES** received the same nondisclosures about the safety and quality of Subject Phones. The **CALIFORNIA CLASS REPRESENTATIVES** and members of the **CALIFORNIA CLASSES** purchased **SAMSUNG** Galaxy S and Note products that they would not have purchased at all, or for as much as they paid, had they known the truth regarding the overheating problems and fire hazards. The **CALIFORNIA CLASS REPRESENTATIVES** and members of the **CALIFORNIA CLASSES** have sustained injury in that they overpaid for the **SAMSUNG** smartphones due to **SAMSUNG'S** wrongful conduct.

102.    Pursuant to Rule 23(a)(4) and (g)(1), the **CALIFORNIA CLASS REPRESENTATIVES** will fairly and adequately protect the interests of the **CALIFORNIA CLASSES** and have retained counsel competent and experienced in class action and consumer fraud and protection litigation.

103.    Pursuant to FRCP Rule 23(b)(2), **SAMSUNG** has acted or refused to act on grounds generally applicable to the California Injunction Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the California Injunction Class as a whole. In particular, **SAMSUNG** has failed to properly repair, exchange, recall, or replace the Subject Phones. **SAMSUNG** also continues to sell the Subject Phones and has failed to properly warn consumers of the risks of overheating, fire and explosion with the Subject Phones.

104.    Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the **CALIFORNIA CLASSES** which predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are as follows:

a.    whether **SAMSUNG** had knowledge of the defects affecting the Subject Phones;

b.    whether **SAMSUNG** concealed defects affecting Subject Phones;

c.    whether **SAMSUNG** violated the unlawful prong of the UCL by its violation of the CLRA;

d.    whether **SAMSUNG**'s omissions regarding the risks of the Subject Phones were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

e.    whether **SAMSUNG'S** business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

f.    whether **SAMSUNG'S** omissions regarding the risks of the Subject Phones were likely to deceive a reasonable person in violation of the False Advertising Law;

g.    whether **SAMSUNG** was unjustly enriched at the expense of **PLAINTIFFS** and the Class;

h.    whether **PLAINTIFFS** and the Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

i.    the amount and nature of such relief to be awarded to **PLAINTIFFS** and the Class.

105.    Pursuant to Rules 23(b)(3), adjudicating the claims of the **CALIFORNIA CLASSES** collectively is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the **CALIFORNIA CLASSES** is impracticable. The prosecution of separate actions by individual members of the **CALIFORNIA CLASSES** would impose heavy burdens upon the courts and **SAMSUNG**, and would create a risk

of inconsistent or varying adjudications of the questions of law and fact common to the

**CALIFORNIA CLASSES**. Therefore, proceeding as a class action would achieve substantial

economies of time, effort and expense, and would assure uniformity of decision as to persons

similarly situated without sacrificing procedural fairness.

106.     As a direct and legal result of the wrongful conduct and/or omissions of

**SAMSUNG**, and each of them, the **CALIFORNIA CLASS REPRESENTATIVES** and

members of the **CALIFORNIA CLASSES** have been harmed.

**B.     MARYLAND CLASSES**

107.     In addition, the following Maryland Class may properly be maintained as a class

action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> Maryland Class: All persons residing in the State of Maryland who purchased, in
> the State of Maryland, at least one (1) of the Subject Phones at any time beginning
> May 7, 2014 and continuing through the date of trial.  The Subject Phones are the
> S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶31).

108.     Excluded from the Maryland Class are **SAMSUNG**, their employees, co-

conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned

subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers

and their immediate family members and associated court staff assigned to this case. Also

excluded are any individuals claiming damages from personal injuries arising from an overheating,

fire, explosion or other incident. Further excluded is any individual who after purchase of a Subject

Phone returned the Subject Phone and received a full refund of his or her purchase price.

109.     In the addition, the following Maryland Class may properly be maintained as a class

action pursuant to FRCP 23(b)(2) on behalf of the following individuals:

> Maryland Injunction Class: All persons residing in the State of Maryland who,
> following trial, remain in possession of a Subject Phone.  The Subject Phones are
> the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see
> ¶31).

110.     Excluded from the Maryland Injunction Class are **SAMSUNG**, its employees, co-

conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned

subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers

1   and their immediate family members and associated court staff assigned to this case. Also

2   excluded are any individuals claiming damages from personal injuries arising from an overheating,

3   fire, explosion or other incident.

4       111.    Throughout discovery in this litigation, **PLAINTIFFS** may find it appropriate

5   and/or necessary to amend the definition of the Maryland Class, and/or the Maryland Injunction

6   Class. **PLAINTIFFS** will formally define and designate Maryland Class and the Maryland

7   Injunction Class definitions when they seek to certify the Classes alleged herein.

8       112.    Pursuant to Rule 23(a)(1), the Maryland Class and the Maryland Injunction Class

9   are so numerous that joinder of all members is impracticable. While the exact number of Maryland

10  Class members and Maryland Injunction Class members are unknown to **PLAINTIFFS** at this

11  time, **PLAINTIFFS** believe there are millions of members of the Maryland Class and the

12  Maryland Injunction Class.

13      113.    Pursuant to Rule 23(a)(3), **PLAINTIFF ROBISON**'s claims are typical of the

14  claims of the other members of the Maryland Class and the Maryland Injunction Class.

15  **PLAINTIFF ROBISON** and other members of the Maryland Class and Maryland Injunction

16  Class received the same nondisclosures about the safety and quality of Subject Phones.

17  **PLAINTIFF ROBISON** and the Maryland Class and the Maryland Injunction Class purchased

18  **SAMSUNG** Galaxy S and Note products that they would not have purchased at all, or for as much

19  as they paid, had they known the truth regarding the overheating problems and fire hazards.

20  **PLAINTIFF ROBISON** and the members of the Maryland Class and the Maryland Injunction

21  Class have sustained injury in that they overpaid for the **SAMSUNG** smartphones due to

22  **SAMSUNG'S** wrongful conduct.

23      114.    Pursuant to Rule 23(a)(4) and (g)(1), **PLAINTIFF ROBISON** will fairly and

24  adequately protect the interests of the members of the Maryland Class and the Maryland Injunction

25  Class and has retained counsel competent and experienced in class action and consumer fraud and

26  protection litigation.

27      115.    Pursuant to Rules 23(b)(2), **SAMSUNG** has acted or refused to act on grounds

28  generally applicable to the Maryland Injunction Class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the Maryland Injunction Class as a whole. In particular, **SAMSUNG** has failed to properly repair, exchange, recall or replace the Subject Phones. **SAMSUNG** also continues to sell the Subject Phones and has failed to properly warn consumers of the risks of overheating, fire and explosion with the Subject Phones.

116.   Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the Maryland Class and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are as follows:

a.   whether **SAMSUNG** had knowledge of the defects affecting the Subject Phones;

b.   whether **SAMSUNG** concealed defects affecting Subject Phones;

c.   whether **SAMSUNG** violated the Maryland Consumer Protection Act;

d.   whether **SAMSUNG** utilized false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers regarding the Subject Phones;

e.   whether **SAMSUNG** represented the Subject Phones as having sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they did not have;

f.   whether **SAMSUNG** represented the Subject Phones as being of a particular standard, quality, grade, style, or model which they were not;

g.   whether **SAMSUNG** failed to state a material fact as to the Subject Phones and whether such failure deceived or had a tendency to deceive the Maryland Class;

h.   **SAMSUNG** utilized deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the Subject Phones;

i.   whether **PLAINTIFF ROBISON** and the Maryland Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

j.   the amount and nature of such relief to be awarded to **PLAINTIFF ROBISON** and the Maryland Class.

/ / /

**FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

117.    Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Maryland Class members is impracticable. The prosecution of separate actions by individual members of the Maryland Class would impose heavy burdens upon the courts and **SAMSUNG**, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Maryland Class.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

118.    As a direct and legal result of the wrongful conduct and/or omissions of **SAMSUNG**, and each of them, **PLAINTIFF ROBISON** and the Maryland Class have been harmed.

## C.    MASSACHUSETTS CLASSES

119.    In addition, the following Massachusetts Class may properly be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

Massachusetts Class: All persons residing in the Commonwealth of Massachusetts who purchased, in the Commonwealth of Massachusetts, at least one (1) of the Subject Phones at any time beginning May 1, 2017 and continuing through the date of trial.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶31).

120.    Excluded from the Massachusetts Class are **SAMSUNG**, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident. Further excluded is any individual who after purchase of a Subject Phone returned the Subject Phone and received a full refund of his or her purchase price.

121.    In the addition, the following Massachusetts Class may properly be maintained as a class action pursuant to FRCP 23(b)(2) on behalf of the following individuals:

Massachusetts Injunction Class: All persons residing in the Commonwealth of Massachusetts who, following trial, remain in possession of a Subject Phone.  The

1   Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active,
2   and Note5 (see ¶31).

3   122.   Excluded from the Massachusetts Injunction Class are **SAMSUNG**, its employees,

4   co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly

5   owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial

6   officers and their immediate family members and associated court staff assigned to this case. Also

7   excluded are any individuals claiming damages from personal injuries arising from an overheating,

8   fire, explosion or other incident.

9   123.   Throughout discovery in this litigation, **PLAINTIFFS** may find it appropriate

10   and/or necessary to amend the definition of the Massachusetts Class, and/or the Massachusetts

11   Injunction Class. **PLAINTIFFS** will formally define and designate the Massachusetts Class and

12   Massachusetts Injunction Class definitions when they seek to certify the Classes alleged herein.

13   124.   Pursuant to Rule 23(a)(1), the Massachusetts Class and the Massachusetts

14   Injunction Class are so numerous that joinder of all members is impracticable. While the exact

15   number of Massachusetts Class members and Massachusetts Injunction Class members are

16   unknown to **PLAINTIFFS** at this time, **PLAINTIFFS** believe there are millions of members of

17   the Massachusetts Class and the Massachusetts Injunction Class.

18   125.   Pursuant to Rule 23(a)(3), **PLAINTIFF HOLZWORTH**'s claims are typical of the

19   claims of the other members of the Massachusetts Class and the Massachusetts Injunction Class.

20   **PLAINTIFF HOLZWORTH** and other members of the Massachusetts Class and the

21   Massachusetts Injunction Class received the same nondisclosures about the safety and quality of

22   Subject Phones. **PLAINTIFF HOLZWORTH** and the Massachusetts Class and the

23   Massachusetts Injunction Class purchased **SAMSUNG** Galaxy S and Note products that they

24   would not have purchased at all, or for as much as they paid, had they known the truth regarding

25   the overheating problems and fire hazards. **PLAINTIFF HOLZWORTH** and the members of the

26   Massachusetts Class and Massachusetts Injunction Class have sustained injury in that they

27   overpaid for the **SAMSUNG** smartphones due to **SAMSUNG'S** wrongful conduct.

28   / / /

126.     Pursuant to Rule 23(a)(4) and (g)(1), **PLAINTIFF HOLZWORTH** will fairly and adequately protect the interests of the members of the Massachusetts Class and Massachusetts Injunction Class and have retained counsel competent and experienced in class action and consumer fraud and protection litigation.

127.     Pursuant to Rules 23(b)(2), **SAMSUNG** has acted or refused to act on grounds generally applicable to the Massachusetts Injunction Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Massachusetts Injunction Class as a whole. In particular, **SAMSUNG** has failed to properly repair, exchange, recall or replace the Subject Phones. **SAMSUNG** also continues to sell the Subject Phones and has failed to properly warn consumers of the risks of overheating, fire and explosion with the Subject Phones.

128.     Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the Massachusetts Class and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are as follows:

a.     whether **SAMSUNG** had knowledge of the defects affecting the Subject Phones;

b.     whether **SAMSUNG** concealed defects affecting Subject Phones;

c.     whether **SAMSUNG** violated the Massachusetts Regulation of Business Practices for Consumers;

d.     whether **SAMSUNG** utilized "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" false in connection with the Subject Phones;

e.     whether **SAMSUNG'S** business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

f.     whether **SAMSUNG'S** omissions regarding the risks of the Subject Phones were likely to deceive a reasonable person;

/ / /

g.   whether **SAMSUNG** was unjustly enriched at the expense of **PLAINTIFF HOLZWORTH** and the Massachusetts Class;

h.   whether **PLAINTIFF HOLZWORTH** and the Massachusetts Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and;

i.   the amount and nature of such relief to be awarded to **PLAINTIFFS** and the Class.

129.   Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Massachusetts Class members is impracticable. The prosecution of separate actions by individual members of the Massachusetts Class would impose heavy burdens upon the courts and **SAMSUNG**, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Massachusetts Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

130.   As a direct and legal result of the wrongful conduct and/or omissions of **SAMSUNG**, and each of them, **PLAINTIFF HOLZWORTH** and the Massachusetts Class have been harmed.

**D.   COLORADO CLASSES**

131.   In addition, the following Colorado Class may properly be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

Colorado Class: All persons residing in the State of Colorado who purchased, in the State of Maryland, at least one (1) of the Subject Phones at any time beginning March 23, 2014 and continuing through the date of trial. The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶ 31).

132.   Excluded from the Class are **SAMSUNG**, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any

individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident. Further excluded is any individual who after purchase of a Subject Phone returned the Subject Phone and received a full refund of his or her purchase price.

133.    In the addition, the following Colorado Class may properly be maintained as a class action pursuant to FRCP 23(b)(2) on behalf of the following individuals:

> Colorado Injunction Class: All persons residing in the State of Colorado who, following trial, remain in possession of a Subject Phone.  The Subject Phones are the S6, S6 Edge, S6 Edge+, S6 Active, S7, S7 Edge, S7 Active, and Note5 (see ¶ 31).

134.    Excluded from the Injunction Class are **SAMSUNG**, its employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case. Also excluded are any individuals claiming damages from personal injuries arising from an overheating, fire, explosion or other incident.

135.    Throughout discovery in this litigation, **PLAINTIFFS** may find it appropriate and/or necessary to amend the definition of the Colorado Class, and/or the Colorado Injunction Class. **PLAINTIFFS** will formally define and designate the Colorado Class and the Colorado Injunction Class definitions when they seek to certify the Classes alleged herein.

136.    Pursuant to Rule 23(a)(1), the Colorado Class and the Colorado Injunction Class are so numerous that joinder of all members is impracticable.  While the exact number of Colorado Class and Colorado Injunction Class members are unknown to **PLAINTIFFS** at this time, **PLAINTIFFS** believe there are millions of members of the Colorado Class and Colorado Injunction Class.

137.    Pursuant to Rule 23(a)(3), **PLAINTIFF SOTO**'s claims are typical of the claims of the other members of the Colorado Class and the Colorado Injunction Class.  **PLAINTIFF SOTO** and members of the Colorado Class and Colorado Injunction Class received the same nondisclosures about the safety and quality of Subject Phones. **PLAINTIFF SOTO** and the Colorado Class members and Colorado Injunction Class members purchased **SAMSUNG** Galaxy

S and Note products that they would not have purchased at all, or for as much as they paid, had they known the truth regarding the overheating problems and fire hazards. **PLAINTIFF SOTO** and the members of the Colorado Class and Colorado Injunction Class have sustained injury in that they overpaid for the **SAMSUNG** smartphones due to **SAMSUNG'S** wrongful conduct.

138.   Pursuant to Rule 23(a)(4) and (g)(1), **PLAINTIFF SOTO** will fairly and adequately protect the interests of the members of the Colorado Class and Colorado Injunction Class and have retained counsel competent and experienced in class action and consumer fraud and protection litigation.

139.   Pursuant to Rules 23(b)(2), **SAMSUNG** has acted or refused to act on grounds generally applicable to the Colorado Injunction Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Colorado Injunction Class as a whole. In particular, **SAMSUNG** has failed to properly repair, exchange, recall or replace the Subject Phones.  **SAMSUNG** also continues to sell the Subject Phones and has failed to properly warn consumers of the risks of overheating, fire and explosion with the Subject Phones.

140.   Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of the Colorado Class and predominate over any questions solely affecting individual members thereof.  Among the common questions of law and fact are as follows:

a.   whether **SAMSUNG** had knowledge of the defects affecting the Subject Phones;

b.   whether **SAMSUNG** concealed defects affecting Subject Phones;

c.   whether **SAMSUNG**'s business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

d.   whether **SAMSUNG**'s omissions regarding the risks of the Subject Phones were likely to deceive a reasonable person in violation of the Consumer Fraud Act;

e.   whether **SAMSUNG** was unjustly enriched at the expense of **PLAINTIFF SOTO** and the Class;

1    f.    whether **PLAINTIFF SOTO** and the Class are entitled to damages,

2    restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

3    g.    the amount and nature of such relief to be awarded to **PLAINTIFF SOTO**

4    and the Class.

5    141.    Pursuant to Rules 23(b)(3), a class action is superior to other available methods for

6    the fair and efficient adjudication of this controversy because joinder of all Colorado Class and

7    Colorado Injunction Class members is impracticable. The prosecution of separate actions by

8    individual members of the Colorado Class and the Colorado Injunction Class would impose heavy

9    burdens upon the courts and **SAMSUNG**, and would create a risk of inconsistent or varying

10   adjudications of the questions of law and fact common to the Colorado Class and the Colorado

11   Injunction Class. A class action would achieve substantial economies of time, effort and expense,

12   and would assure uniformity of decision as to persons similarly situated without sacrificing

13   procedural fairness.

14   142.    As a direct and legal result of the wrongful conduct and/or omissions of

15   **SAMSUNG**, and each of them, **PLAINTIFF SOTO**, the Colorado Class, and Colorado Injunction

16   Class have been harmed.

17   **VI.    CAUSES OF ACTION**

18   **FIRST CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
19   **CAL. BUS. & PROF. CODE §§ 17200 ET SEQ.**
**(THE CALIFORNIA CLASS AGAINST ALL DEFENDANTS)**
20

21   143.    **CALIFORNIA CLASS REPRESENTATIVES** hereby reallege and incorporate

22   by reference each and every allegation set forth above, as if fully set forth in detail herein.

23   144.    **CALIFORNIA CLASS REPRESENTATIVES** have standing to bring this action

24   under the UCL because they have suffered injury in fact as a result of **SAMSUNG'S** conduct and

25   have lost money through their purchase or payment for one or more of the Subject Phones, which

26   **PLAINTIFFS** would not have purchased, or made a payment towards, if had **SAMSUNG** not

27   concealed the risks of overheating, fire and explosion described herein.

28   / / /

145.   **SAMSUNG'S** omissions, non-disclosures, concealments, and half-truths, constitute unfair, unlawful and/or fraudulent conduct under the UCL.

146.   **SAMSUNG'S** business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that **SAMSUNG** has failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices, violating the unfair prong of the UCL.

147.   **SAMSUNG'S** omissions regarding risks associated with the Subject Phones were likely to deceive a reasonable person, violating the fraudulent prong of the UCL.

148.   **SAMSUNG'S** violations of the CLRA and FAL alleged herein violate the unlawful prong of the UCL.

149.   **PLAINTIFFS** and the **CALIFORNIA CLASS** are entitled to full restitution and/or disgorgement of **SAMSUNG'S** revenues and profits resulting from the sale of the Subject Phones, and any other relief provided for under the UCL.

WHEREFORE, the **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLASS** pray for relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING LAW**
**CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.***
**(THE CALIFORNIA CLASS AGAINST ALL DEFENDANTS)**

150.   **CALIFORNIA CLASS REPRESENTATIVES** hereby reallege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

151.   **SAMSUNG**, acting with intent to induce consumers to purchase the Subject Phones, in violation of Cal. Bus. & Prof. Code Section 17500, made or disseminated or caused to be made or disseminated the misleading statements alleged herein based upon their concealment of the risk of overheating, fire and explosion associated with the Subject Phones.

152.   The facts omitted by **SAMSUNG** were misleading to consumers, and the truth was and is known to **SAMSUNG**, or by the exercise of reasonable care should have been known to **SAMSUNG**.

153.    **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLASS** relied upon **SAMSUNG** advertising in their decisions to purchase the Subject Phones.

154.    As a direct and legal result of the wrongful conduct and/or omissions of **SAMSUNG**, and each of them, **CALIFORNIA CLASS** have been harmed.

WHEREFORE, **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLASS** pray for relief as set forth below.

<u>**THIRD CAUSE OF ACTION**</u>
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**CAL. CIV. CODE §§ 1750 *ET SEQ.***
**(THE CALIFORNIA CLRA CLASS AGAINST ALL DEFENDANTS)**

155.    **CALIFORNIA CLASS REPRESENTATIVES** hereby reallege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

156.    California Civil Code section 1770(a) provides that it is unlawful to use unfair methods of competition and unfair or deceptive acts or practices in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.  California Civil Code section 1770(a) is specifically violated by, among other things:  "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Cal. Civ. Code § 1770(a)(5).

157.    The acts and practices on the part of **SAMSUNG**, as alleged herein, constituted and constitute unlawful methods of competition, unfair, or deceptive acts undertaken in a transaction which resulted in the sale of goods to consumers including, but in no way limited to, **SAMSUNG** failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion.

158.    **CALIFORNIA CLASS REPRESENTATIVES** seek an order awarding restitution or disgorgement of **SAMSUNG'S** revenues and profits from the sale of the Subject Phones.

159.    As a direct and proximate result of **SAMSUNG'S** violations of the CLRA as alleged herein, **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLRA CLASS** have been injured by, including but not limited to, the following: (a) the infringement of their legal rights as a result of being subjected to the common course of fraudulent conduct alleged herein; (b) being induced to purchase the Subject Phones, which they would not have done had

they been fully informed of **SAMSUNG'S** acts, omissions, practices, and nondisclosures as alleged herein, in violation of, *inter alia*, the CLRA, the FAL, and the UCL; (c) being induced to rely on **SAMSUNG'S** deceptive, fraudulent, and intentional omissions to their detriment as a result of **SAMSUNG'S** conduct as alleged in this Complaint, in violation of, *inter alia*, the CLRA, the FAL, and the UCL; and (d) unknowingly being subjected to fraudulent concealment and deceit as a result of **SAMSUNG'S** conduct. Accordingly, **SAMSUNG** engaged in acts of fraud, malice, or oppression and in conscious disregard of the rights and well-being of **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLRA CLASS**.

160.    As a direct and proximate result of **SAMSUNG** conduct in violation of the CLRA, **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLRA CLASS** have been harmed.

161.    On November 10, 2017, **PLAINTIFFS MARTIN, ATEBAR, E. VEGA, AND J. VEGA** timely served **SAMSUNG** with notice of its violation of the CLRA by certified mail, return receipt requested.  **SAMSUNG** failed to provide appropriate relief for its violations of the CLRA. As such, **PLAINTIFFS MARTIN, ATEBAR, E. VEGA, AND J. VEGA** have therefore complied with the 30-day notice period required by California Civil Code section 1782(a).

162.    As of the date of Complaint, **PLAINTIFFS MARTIN, ATEBAR, E. VEGA, AND J. VEGA** have not received responses from **SAMSUNG** that agreed to provide for the relief requested in their letter. As a result, **SAMSUNG** has failed to provide appropriate relief for its violations of the CLRA, and **PLAINTIFFS MARTIN, ATEBAR, E. VEGA, AND J. VEGA** and the CLRA Subclass are entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

WHEREFORE, the **CALIFORNIA CLASS REPRESENTATIVES** and the **CALIFORNIA CLRA CLASS** pray for relief as set forth below.

/ / /

/ / /

/ / /

/ / /

**FOURTH CAUSE OF ACTION**
**(PLAINTIFF ROBISON AND THE MARYLAND CLASS AGAINST SAMSUNG)**
**VIOLATION OF THE CONSUMER PROTECTION ACT**
**(MD. CODE COM. LAW § 13-101, *ET SEQ.*)**

163.    **PLAINTIFF ROBISON** hereby re-alleges and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

164.    **PLAINTIFF ROBISON**, **SAMSUNG**, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h). The Subject Phones are "consumer goods" within the meaning of Md. Code Com. Law § 13-101(d); and **PLAINTIFF ROBISON** and the Maryland Class are "consumers" within the meaning of Md. Code Com. Law § 13-101(c).

165.    The Maryland Consumer Protection Act ("MCPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Unfair or deceptive trade practices under the MCPA include, but are not limited to:

(1) False, falsely disparaging, or misleading oral or written statement, visual

description, or other representation of any kind which has the capacity, tendency,

or effect of deceiving or misleading consumers;

(2) Representation that:

(i) Consumer goods, consumer realty, or consumer services have a

sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or

quantity which they do not have;

[ . . . ]

(iv) Consumer goods, consumer realty, or consumer services are of a

particular standard, quality, grade, style, or model which they are not;

(3) Failure to state a material fact if the failure deceives or tends to deceive;

[ . . . ]

(9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing

concealment, suppression, or omission of any material fact with the intent that a

consumer rely on the same in connection with:

/ / /

1            (i) The promotion or sale of any consumer goods, consumer realty, or

2            consumer service;

3      [ . . . ]

4   Md. Code Com. Law § 13-301.

5      166.    As described herein, **SAMSUNG** participated in misleading, false, or deceptive acts

6   that violated the MCPA.

7      167.    In the course of its business, **SAMSUNG** willfully failed to disclose and actively

8   concealed the defects in the Subject Phones discussed herein and otherwise engaged in activities

9   with a tendency or capacity to deceive.

10      168.    **SAMSUNG** also engaged in unlawful trade practices by employing deception,

11   deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of

12   any material fact – including specifically facts pertaining to the safety, performance, and battery

13   life of the Subject Phones – with the intent that others rely upon such concealment, suppression, or

14   omission, in connection with the sale of the Subject Phones.

15      169.    **SAMSUNG** knew since at least 2012 that its Galaxy product line was prone to

16   overheating and catching fire, but concealed this information from consumers.

17      170.    By misrepresenting the safety and performance of the Subject Phones, **SAMSUNG**

18   violated the MCPA. **SAMSUNG** had exclusive knowledge of undisclosed material facts, namely,

19   that their Galaxy series was defective and/or dangerous, and withheld that knowledge from

20   **PLAINTIFF ROBISON** and the other members of the Maryland Class.

21      171.    **SAMSUNG'S** unfair and deceptive business practices described herein have

22   directly, foreseeably, and proximately caused **PLAINTIFF ROBISON** and the other members of

23   the Maryland Class.

24      172.    As a result of **SAMSUNG'S** violation of the MCPA, **PLAINTIFF ROBISON** and

25   the other members of the Maryland Class are entitled to damages and declaratory relief.

26      WHEREFORE, **PLAINTIFF ROBISON** and the Maryland Class pray for relief as set

27   forth below.

28   / / /

**FIFTH CAUSE OF ACTION**
**(PLAINTIFF HOLZWORTH AND THE MASS. CLASS AGAINST SAMSUNG)**
**VIOLATION OF MASSACHUSETTS**
**REGULATION OF BUSINESS PRACTICES FOR CONSUMERS PROTECTION**
**(MASS. GEN. LAW CH 93A)**

173.   **PLAINTIFF HOLZWORTH** and the Massachusetts Class hereby re-alleges and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

174.   Mass. Gen. Laws ch. 93A § 2(a) makes unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

175.   **SAMSUNG**, through its advertising and marketing of the Subject Phones, concealed and failed to disclose that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion despite knowing that such specific information was material to **PLAINTIFF HOLZWORTH** and the Massachusetts Class.

176.   **SAMSUNG** fraudulently depicted the Subject Phones as safe. These depictions failed to paint a true portrayal of the Subject Phones because **SAMSUNG** concealed, and failed to disclose, that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion, despite sole and exclusive knowledge of those defects.

177.   Samsung did not disclose to **PLAINTIFF HOLZWORTH** and the Massachusetts Class that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion. Indeed, despite direct knowledge to the contrary, **SAMSUNG** continually failed to disclose to consumers that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion.

178.   **PLAINTIFF HOLZWORTH** and the Massachusetts Class interpreted **SAMSUNG**'s failure to disclose and omissions as a representation that the Subject Phones did not pose the threat of danger by and through, among others, overheating, fire, and/or explosion.

179.   The facts concealed by **SAMSUNG** are material facts because any reasonable consumer would have considered important the Subject Phones' propensity to overheat, catch fire,

and explode in deciding whether to purchase the Subject Phones as opposed to another smartphone.

180.    At all times mentioned herein, **SAMSUNG** was, and remain, in a superior position to know the truth about the Subject Phones and their propensity to overheat, catch fire, and explode.

181.    Mass. Gen. Laws. Ch. 93A § 9(1) provides:

> Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two . . . may bring an action in the superior court . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

Mass. Gen. Laws. Ch. 93A § 9(2) provides:

> Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons[.]

182.    As a direct result of **SAMSUNG**'s failure to disclose that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion, **PLAINTIFF HOLZWORTH** and the Massachusetts Class purchased or otherwise paid money for the Subject Phones. **PLAINTIFF HOLZWORTH** and the Massachusetts Class would not have done so had **SAMSUNG** disclosed that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion. When purchasing the Subject Phones, **PLAINTIFF HOLZWORTH** and the Massachusetts Class reasonably and justifiably relied on **SAMSUNG**'s failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion. **PLAINTIFF HOLZWORTH** and the Massachusetts Class were injured by **SAMSUNG**'s failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion.

183.    More than 30 days prior to filing suit, **PLAINTIFF HOLZWORTH** made a pre-suit demand pursuant to Mass. Gen. Laws ch. 93A § 9(3) (the "93A Demand"), in which **PLAINTIFF HOLZWORTH** sought: class-wide relief equal to **SAMSUNG**'s suggested retail price at the time of release of each respective Subject Phone; associated costs of switching smartphones; injunctive relief; reasonable attorneys' fees and costs; and a reasonable incentive

award for **PLAINTIFF HOLZWORTH** for his service as the proposed Class representative. **SAMSUNG** has not accepted the terms of this demand.

184.    **PLAINTIFF HOLZWORTH** and the Massachusetts Class are entitled to damages as a result of **SAMSUNG**'s violation of Mass. Gen. Laws ch. 93A § 2.

185.    **SAMSUNG**'s conduct showed willful, knowing, and reckless disregard for the rights and well-being of **PLAINTIFF HOLZWORTH** and the Massachusetts Class, such that an award of punitive damages is appropriate.

WHEREFORE, **PLAINTIFF HOLZWORTH** and the Massachusetts Class pray for relief as set forth below.

### SIXTH CAUSE OF ACTION
### (PLAINTIFF SOTO AND THE COLORADO CLASS AGAINST SAMSUNG)
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
### (C.R.S. §6-1-105)

186.    **PLAINTIFF SOTO** and the Colorado Class hereby realleges and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

187.    **PLAINTIFF SOTO** has standing to bring this action under the Colorado Consumer Protection Act because he suffered injury in fact as result of **SAMSUNG**'s conduct and lost money through his purchase, or payment for one or more of the Subject Phones, which **PLAINTIFF SOTO** would not have purchased, or made payment toward if **SAMSUNG** had not concealed the risks of overheating, fire and explosion described herein.

188.    **SAMSUNG**, through its advertising and marketing of the Subject Phones, concealed, and failed to disclose, material information regarding the fact that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion despite knowing that such specific and material information to **PLAINTIFF SOTO** and the Colorado Class.

189.    **SAMSUNG** sought to fraudulently represent the Subject Phones as safe. But these depictions failed to paint a true portrayal of the Subject Phones as **SAMSUNG** concealed, and failed to disclose, material information regarding the fact that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion, despite sole and exclusive knowledge.

190.    At no time did **SAMSUNG** disclose to **PLAINTIFF SOTO** and the Colorado Class that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion. Indeed, despite direct knowledge to the contrary, **SAMSUNG** continually failed to disclose to consumers that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion.

191.    **PLAINTIFF SOTO** and the Colorado Class interpreted **SAMSUNG**'s failure to disclose and omissions as a representation that the Subject Phones did not pose the threat of danger by and through, among others, overheating, fire, and/or explosion.

192.    As a direct result of **SAMSUNG**'s failure to disclose that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion, **PLAINTIFF SOTO** and the Colorado Class purchased or otherwise paid money for the Subject Phones which they otherwise would not have done had **SAMSUNG** disclosed the fact that the Subject Phones were defectively designed and prone to overheating, catching fire, and explosion.

193.    At all times mentioned herein, **SAMSUNG** was, and remained, in a superior position to know the truth about the Subject Phones and their propensity to overheat, catch fire, and explode.

194.    The facts concealed by **SAMSUNG** are material facts because any reasonable consumer would have considered the fact that the Subject Phones' propensity to overheat, catch fire, and explode to be important in deciding whether to purchase the Subject Phones as opposed to another smartphone.

195.    **PLAINTIFF SOTO** and the Colorado Class reasonably and justifiably relied on **SAMSUNG**'s failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion when purchasing the Subject Phones. **PLAINTIFF SOTO** and the Colorado Class would not have purchased the Subject Phones were it not for the material omissions by **SAMSUNG**.

196.    The intentional omissions by **SAMSUNG** were a substantial factor in causing harm to **PLAINTIFF SOTO** and the Colorado Class, and said harm would not have occurred absent the intentional omissions made by the **SAMSUNG**.

197.   **SAMSUNG** has deliberately caused and has intended to cause great harm to **PLAINTIFF SOTO** and the Colorado Class with full knowledge of the wrongfulness of their conduct.  **PLAINTIFF SOTO** and the Colorado Class further allege **SAMSUNG**'s conduct as alleged above was despicable, was carried on with a willful and conscious disregard of the rights and well-being of **PLAINTIFF SOTO** and the Colorado Class, and subjected **PLAINTIFF SOTO** and the Colorado Class to undue hardship. Therefore, **PLAINTIFF SOTO** and the Colorado Class should be awarded punitive and exemplary damages sufficient to punish **SAMSUNG** for engaging in this conduct and to deter similar conduct on its part in the future.

WHEREFORE, **PLAINTIFF SOTO** and the Colorado Class pray for relief as set forth below.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(ALL PLAINTIFFS AND ALL CLASSES AGAINST SAMSUNG)**

198.   **PLAINTIFFS** hereby re-allege and incorporate by reference each and every allegation set forth above, as if fully set forth in detail herein.

199.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Subject Phones, **SAMSUNG** charged a higher price for the Subject Phones than the Subject Phones' true value and **SAMSUNG** obtained monies which rightfully belong to **PLAINTIFFS** and the Classes set forth herein.

200.   **SAMSUNG** enjoyed the benefit of increased financial gains, to the detriment of **PLAINTIFFS** and the **CLASS**, who paid a higher price for Subject Phones which actually had lower values. It would be inequitable and unjust for **SAMSUNG** to retain these wrongfully obtained profits.

201.   **PLAINTIFFS**, therefore, seek an order establishing **SAMSUNG** as constructive trustee of the profits unjustly obtained, plus interest.

## VII.   PRAYER FOR RELIEF

WHEREFORE, **PLAINTIFFS** pray that this Court enter judgment in their favor on every claim for relief set forth above and award them relief including, but not limited to, the following:

1.     An Order appointing **PLAINTIFFS** to represent the Classes defined above pursuant to FRCP 23(a) and designating **PLAINTIFFS**' counsel as Class Counsel;

2.     An order enjoining **SAMSUNG** from any future violations of the law;

3.     An order enjoining **SAMSUNG** from selling the Subject Phones;

4.     For economic losses, in an amount according to proof at trial;

5.     For restitution in an amount according to proof at trial;

6.     For punitive damages;

7.     An award for **PLAINTIFFS** for the costs of suit and reasonable attorneys' fees as provided by law;

8.     For interest upon any judgment entered as provided by law; and,

9.     For such other and further relief as the Court may deem just and proper.

Dated: August 3, 2017        **COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Anne Marie Murphy*
    Niall P. McCarthy
    Anne Marie Murphy
    Eric J. Buescher

**STONEBARGER LAW, APC**

By: */s/ Gene J. Stonebarger*
    Gene J. Stonebarger
    Richard D. Lambert
    Crystal L. Matter

## VIII.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: August 3, 2017        **COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Anne Marie Murphy*
    Niall P. McCarthy
    Anne Marie Murphy
    Eric J. Buescher

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STONEBARGER LAW, APC**

By: _/s/ Gene J. Stonebarger_
    Gene J. Stonebarger
    Richard D. Lambert
    Crystal L. Matter