# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE SAMSUNG GALAXY SMARTPHONE MARKETING AND SALES PRACTICES LITIGATION | Case No. 16-cv-06391-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' CLASS ACTION CLAIMS AND STAYING PROCEEDINGS PENDING COMPLETION OF ARBITRATION**<br><br>[Re: ECF 67] |

In this putative class action, consumers contend that certain models of the Samsung Galaxy smartphone have the propensity to overheat, often to volatile levels. Specifically, Plaintiffs Demetrius Martin, Omar Atebar, Esther Vega, Jesus Vega, Lizett Anguiano, Tomas Hernandez, Greg Robison, Dale Holzworth, Eric Pirverdian, Tomig Salmasian, Michael Kouyoumdjian, Dior Dee, Cory Raymond, and Jesus Sanchez (collectively, "Plaintiffs") allege that their smartphones are prone to explode or burst into flames. They assert claims for violations of state consumer-protection laws and unjust enrichment against Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung").

Presently before the Court is Samsung's Motion to Compel Arbitration, Dismiss Plaintiffs' Class Claims, and Stay All Proceedings. Mot., ECF 67. The Court held a hearing on Samsung's motion on March 1, 2018. The Court has considered the arguments presented at oral argument and in the briefing, as well as the submitted evidence and applicable law. For the reasons that follow, the Court concludes that certain Plaintiffs formed a valid arbitration agreement with Samsung, and therefore GRANTS Samsung's motion as to those Plaintiffs, DENIES Samsung's motion as to the remaining Plaintiffs, and STAYS the case pending the outcome of arbitration.

# I.    BACKGROUND

The following facts are drawn from the First Amended Consolidated Class Action Complaint ("FAC"), ECF 65.  In October 2016, Samsung recalled the Samsung Galaxy Note7 ("Note7") after reports that numerous devices had exploded and burst into flames.  FAC ¶¶ 38, 42.  Plaintiffs own at least one of six other models of Samsung phones—the Galaxy S7 ("S7"), the Galaxy S7 Edge ("S7 Edge"), the Galaxy S6 ("S6"), the Galaxy S6 Edge ("S6 Edge"), the Galaxy S6 Edge+ ("S6 Edge+"), and the Galaxy Note5 ("Note5").  *Id.* ¶ 37.  Plaintiffs plead that these models, like the Note7, "pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the Note7."  *Id.*

Plaintiffs commenced this putative class action on November 2, 2016 and filed the operative FAC on August 3, 2017.  ECF 1, 65.  Plaintiffs hail from California, Massachusetts, or Maryland and seek to represent three statewide classes, which encompass all consumers who reside in and purchased one of the relevant Samsung phones in California, Massachusetts, and Maryland, respectively.  FAC ¶¶ 95, 107, 119.[1]  Plaintiffs bring six causes of action: (1) violation of California's Unfair Competition Law on behalf of the California class, (2) violation of California's False Advertising Law on behalf of the California class, (3) violation of California's Consumers Legal Remedies Act on behalf of the California class, (4) violation of Maryland's Consumer Protection Act on behalf of the Maryland class, (5) violation of Massachusetts Regulation of Business Practices for Consumers Protection on behalf of the Massachusetts class, and (6) unjust enrichment on behalf of all classes.  *Id.* ¶¶ 143–85, 198–201.

In September 2017, Samsung moved to compel arbitration on the ground that Plaintiffs assented to, and did not opt out of, an arbitration clause that appeared either in a guidebook included in the box with their phones or on Samsung's website.  Mot. 8–23.  As discussed in more detail below, the analysis of assent hinges on what information was presented and how that information was presented to each individual Plaintiff—including the box, guidebook, and

[1] Although the FAC proposes a Colorado class, FAC ¶ 131, Colorado Plaintiff Soto voluntarily dismissed his claims without prejudice after Samsung filed its motion to compel, ECF 73.

website.  Samsung also requests that the Court dismiss the class-action claims of all Plaintiffs compelled to arbitrate and stay all proceedings in the litigation pending arbitration.  Mot. 23–25.  Plaintiffs filed an opposition, Opp., ECF 74, and Samsung filed a reply, Reply, ECF 76.

## II.      LEGAL STANDARD

Enforceability of an arbitration clause, and the determination of the scope of that clause, is governed by the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 1 *et seq.*  Under the FAA, arbitration agreements are a matter of contract, and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Such generally applicable contract defenses include "fraud, duress, or unconscionability," but not "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).  A party seeking to invoke an arbitration agreement may petition the district court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4; *see also Trompeter v. Ally Fin., Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012).

A district court faced with a petition to enforce an arbitration clause engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue.  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  A district court does not consider challenges to the contract as a whole, but rather only specific challenges to the validity of the arbitration clause itself.  *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (noting the "two types of validity challenges" but holding that only challenges to the validity of the agreement to arbitrate are "relevant to a court's determination whether the arbitration agreement at issue is enforceable").

## III.     DISCUSSION

### A.      Motion to Compel Arbitration

The issue before the Court is a focused one.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting

3

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  Plaintiffs'

sole contention is that they did not form an agreement to arbitrate with Samsung, an argument

which the Court resolves under "ordinary state-law principles that govern the formation of

contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Because the parties

agree that the law of each Plaintiff's home state controls, the Court proceeds to analyze Plaintiffs'

claims by state.

### 1.    Massachusetts

Plaintiff Holzworth is a resident of Massachusetts who purchased an S7 Edge in

Massachusetts.  FAC ¶ 17.  The parties agree that Massachusetts law governs the question whether

he formed an agreement to arbitrate with Samsung.

The parties also agree on the universe of applicable cases.  In *1-A Equipment Co. v. Icode, Inc.*, the Massachusetts District Court Appellate Division held that a buyer was bound by a

contractual forum selection clause sent with the purchased software program even though the

buyer did not receive the agreement until after the purchase was made.  No. 1460, 2003 WL

549913, at *2 (Mass. App. Div. 2003).  The court emphasized that an inside-the-box setup can be

an efficient way to do business, especially when the alternative of orally reciting terms is costly

and ineffective.  *Id.*  Likewise, in *Feeney v. Dell Inc.*, the Appeals Court of Massachusetts

enforced an arbitration agreement, which was enclosed with the shipped product and provided that

the customers would be bound by accepting delivery.  2015 WL 4460182, at *2, *4–5 (Mass. App.

Ct. 2015).  The court concluded that "a purchaser of a computer, upon placing an order, would

expect additional terms, such as a warranty and a period of time to return the goods, given the

nature of the product involved."  *Id.* at *4.

Both Massachusetts cases rely on two Seventh Circuit cases that approve of inside-the-box

agreements; indeed, the court in *1-A Equipment* explicitly "adopt[ed] the rationale of these cases."

2003 WL 549913, at *2.  The Seventh Circuit considered similar facts to those in the

Massachusetts cases and held that terms inside the box of a product bind consumers who keep the

product beyond a specified window if the consumer has an opportunity to review the terms and

reject them by returning the product.  *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir.

1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996) ("Notice on the outside, terms on the inside, and a right to return the software for a refund if the terms are unacceptable (a right that the license expressly extends), may be a means of doing business valuable to buyers and sellers alike.").  The Seventh Circuit explained that practicality favors this conclusion because "[c]ustomers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device."  *Hill*, 105 F.3d at 1149. Moreover, the Uniform Commercial Code allows acceptance by conduct, for example by using software after having a chance to read the accompanying license.  *ProCD*, 86 F.3d at 1452.

Under these cases, Plaintiff Holzworth is clearly bound by Samsung's arbitration agreement.  The outside of the box states that purchase is "subject to additional Samsung terms and conditions."  Blackard Decl., ECF 68, Ex. D.  Inside the box, there is a guidebook titled "Important Information" and subtitled "Health and Safety Information" and "Warranty Legal Information" with those topics' respective page numbers.  *Id.*, Ex. I, at 2.  On the page immediately following the cover, the user is instructed in bold that the guidebook contains "important terms and conditions" that the user accepts by using the phone.  *Id.* at 3.  Further down the page, under the bold and larger-text heading "Legal Information," the guidebook provides:

> This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE and your right to opt out of arbitration within 30 calendar days of the first consumer purchase.  You may opt out by either sending an email to optout@sea.samsung.com with the subject line "Arbitration Opt-Out" or by calling 1-800-SAMSUNG (726-7864).**

*Id.*  Finally, the Table of Contents lists the page for "Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy," *id.* at 9, and the guidebook sets forth the arbitration agreement in capital letters on the indicated page, *id.* at 30.  These circumstances neatly fit within the Seventh Circuit's approval of "[n]otice on the outside [and] terms on the inside."  *ProCD*, 86 F.3d at 1451.

Plaintiffs' sole challenge is to the remaining element—namely, "a right to return the [product] for a refund if the terms are unacceptable."  *Id.*  Specifically, Plaintiffs contend that Samsung fails to specify "how a consumer may *reject* the terms and conditions."  Opp. 18.  As a preliminary matter, Plaintiff Holzworth does not allege or argue that he was unable to return his

phone for a refund if he disagreed with the terms.  It is not clear that anything more is required—the cases reference "an opportunity . . . to reject [the terms] by returning the product."  *Hill*, 105 F.3d at 1148 (citing *ProCD*, 86 F.3d at 1451).  In any event, the first page of the guidebook and the arbitration section both inform users exactly how to opt out of the arbitration provision: users can send an email or call the toll-free number.  As the guidebook explains, a user does not forfeit anything by opting out.  *See* Blackard Decl., Ex. I, at 33 ("**Opting out of this dispute resolution procedure will not affect the coverage of the Limited Warranty in any way, and you will continue to enjoy the benefits of the Limited Warranty.**").  In this way, the opt-out provision is even more favorable than a return policy because the user may keep the phone and avoid arbitration.

In light of these circumstances, Plaintiff Holzworth agreed to arbitrate under Massachusetts law.  Accordingly, the Court GRANTS Samsung's motion to compel arbitration as to Plaintiff Holzworth.

### 2.    California

Plaintiffs Martin, Atebar, Esther Vega, Jesus Vega, Anguiano, Hernandez, Pirverdian, Salmasian, Kouyoumdjian, Dee, Raymond, and Sanchez are residents of California who acquired their Samsung phones in California.  FAC ¶¶ 10–15, 18–23.  The parties agree that California law governs the question whether they formed an agreement to arbitrate with Samsung.

The parties dispute the importance of the Ninth Circuit's recent decision in *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir.), *cert. denied*, 138 S. Ct. 203 (2017).  The Court begins with an overview of *Norcia*, then examines the circumstances of the California Plaintiffs in the instant case.

### a.    Description of *Norcia*

In *Norcia*, the Ninth Circuit confronted the question whether the brochure in Samsung's Galaxy S4 box created a binding arbitration contract between Samsung and the consumer.  845 F.3d at 1284.  The back of the S4 box stated that the package contained a "Product Safety & Warranty Brochure."  *Id.* at 1282.  That brochure, titled "Product Safety & Warranty Information," was 101 pages long with two sections: (1) health and safety information and (2) Samsung's

limited warranty and the user's software license agreement. *Id.* Within the warranty section, the brochure contained an arbitration provision that applied beyond warranty disputes: "All disputes with Samsung arising in any way from this limited warranty or the sale, condition or performance of the products shall be resolved exclusively through final and binding arbitration, and not by a court or jury." *Id.* A subsequent paragraph explained the procedures for arbitration and stated that, without losing the benefits of the warranty, consumers could opt out of arbitration within 30 days of purchase by phone or email. *Id.*

The Ninth Circuit first laid out the principles of assent under California law. The court started with the indisputable premise that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." *Id.* at 1284 (quoting Cal. Com. Code § 2204(1)). The court recognized the corollary that silence or inaction usually is not enough because acceptance is measured by whether an offeree's outward manifestations of consent would indicate to a reasonable person that the offeree has assented to the agreement. *Id.* Finally, the court noted that "regardless of apparent manifestation of his consent, [an offeree] is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Id.* at 1285 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Ct. App. 1972)).

Applying those principles, the Ninth Circuit concluded that, "[u]nder the circumstances in [the] case," the arbitration provision was unenforceable. *Id.* at 1290. The court held that the consumer had not assented to the arbitration agreement expressly nor shown an intent that his inaction could be understood as acceptance. *Id.* at 1285. Nor did either of the two recognized exceptions to the bar on acceptance by silence apply. *Id.* at 1286. Samsung did not establish that the consumer, either by operation of law or prior course of dealing, had a duty to act in response to the brochure. *Id.* Similarly, Samsung could not claim that the consumer retained the benefit of the agreement when the consumer was entitled to the benefits of the warranty even if he opted out of arbitration. *Id.* Accordingly, the court chose to follow the no-acceptance-by-silence rule. *Id.*

The court also addressed Samsung's arguments that analogies to shrink-wrap agreements and inside-the-box contracts displaced the no-acceptance-by-silence rule. *Id.* With a shrink-wrap agreement, the packaging on the outside of a product states that the consumer agrees to the terms of the agreement by opening the packaging. *Id.* The court noted that California law could be read to support the proposition that a consumer has a duty to act to negate the conclusion that he accepted the terms by opening the wrapper. *Id.* at 1287. But that scenario was different than Samsung's case. *Id.* The court reasoned that even if a shrink-wrap agreement "could be analogized to a brochure that contains contractual terms, the outside of the Galaxy S4 box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure." *Id.* at 1287. Thus, the court fell back on "California's general rule that silence or inaction does not constitute acceptance." *Id.*

As to inside-the-box contracts, the court could identify no California case that had adopted the rationale in the Seventh Circuit's decision in *Hill* that buyers can be bound by an arbitration clause in a brochure enclosed in a product box merely because the buyer kept the product beyond the specified return window. *Id.* at 1287–88. In the court's view, *Hill*'s holding is difficult to square with California's clear rule that silence alone does not constitute assent. *Id.* at 1290. The court also explained that even in cases that recognize the propriety of enforcing inside-the-box provisions in certain instances, the consumer must have adequate notice of the contractual terms. *Id.* at 1289. That notice was lacking with regard to the S4. In particular, the arbitration provision appeared in a brochure titled "Product Safety & Warranty Information," so a reasonable person "would not be on notice that the brochure contained a freestanding obligation outside the scope of the warranty." *Id.* at 1289–90. Further undermining the notice was that a reasonable person would not expect that failing to opt out of an arbitration provision within the seller's warranty would subject even non-warranty claims to arbitration. *Id.* at 1290. Thus, the court "reject[ed] Samsung's argument that [the consumer] reasonably assented to the arbitration provision because he failed to opt out of the arbitration provision contained in the product box." *Id.*

In sum, the court determined that "Samsung's inclusion of a brochure in the Galaxy S4 box, and [the consumer]'s failure to opt out, does not make the arbitration provision enforceable

against [the consumer]." *Id.* Armed with that analysis and conclusion, the Court turns to the facts of the instant case.

### b.      Application of *Norcia* to the Facts of this Case

Before scrutinizing the individual circumstances present here, the Court notes a simple, but important, distinction that applies to all Plaintiffs in the instant case. Unlike in *Norcia*, Samsung does not rest its argument for assent entirely on Plaintiffs' "fail[ure] to opt out of the arbitration provision contained in the product box." *Id.* Rather, because most of the guidebooks premise acceptance on a consumer's use of the device, Samsung relies on each Plaintiff's use of the device. While that difference may seem practically insignificant, it takes this case outside the silence-by-acceptance rubric utilized in *Norcia*. Indeed, in contrast to silence or inaction, each Plaintiff's use of his or her phone can signify an outward manifestation of consent. *See* Restatement (Second) of Contracts § 19(2) (1981) (noting that a party's conduct may manifest assent where the party "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents"). The court in *Norcia* recognized that acceptance by conduct is a valid means of assent under California law. 845 F.3d at 1284–85. And the relevant California statute, as well as case law interpreting that statute, provides that a contract can be formed where "conduct by both parties . . . recognizes the existence of such a contract." Cal. Com. Code § 2204(1); *Windsor Mills*, 101 Cal. Rptr. at 350 ("[A]n offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.").

Thus, because each Plaintiff's use of his or her phone can demonstrate acceptance, the critical issue here is whether Plaintiffs were on notice of the arbitration clause. As *Norcia* recognized, "regardless of apparent manifestation of his consent, [an offeree] is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." 845 F.3d at 1285 (quoting *Windsor Mills*, 101 Cal. Rptr. at 351). Courts look to "the mutual intention of the parties at the time the contract is formed." *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990) (citing Cal. Civ. Code § 1636). This Court therefore must determine whether a reasonable person in each Plaintiff's position would

9

have known about the arbitration provision and known that using the phone constituted acceptance of that provision. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014); *see also Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012) (interpreting California law and characterizing the ultimate question as "whether reasonable people in the position of the parties would have known about the terms and the conduct that would be required to assent to them.").

Because this inquiry is extremely fact-bound, the Court proceeds by grouping together Plaintiffs with similar or identical circumstances. First, the Court addresses Plaintiffs with S7s or S7 Edges. Next, the Court addresses the one Plaintiff with an S6 Edge+ and Plaintiffs with S6s or S6 Edges. Finally, the Court addresses Plaintiffs with Note5s.

### i. S7 and S7 Edge Plaintiffs

Plaintiffs Atebar, Esther Vega, Kouyoumdjian, Dee, and Raymond acquired an S7 or an S7 Edge. FAC ¶¶ 11–12, 20–22. Apart from Plaintiff Dee, who is analyzed separately below, the remaining Plaintiffs' S7 and S7 Edge materials follow a natural progression from the outside of the box to the guidebook's arbitration provision such that a reasonable person would have been on notice that using the phone constitutes acceptance of binding arbitration.

### (1) Plaintiffs Atebar, Esther Vega, Kouyoumdjian, and Raymond

The exterior of every S7 and S7 Edge box alerts the consumer that there are additional terms and conditions. The back of two of the boxes states: "Device purchase subject to additional Samsung terms and conditions." Blackard Decl., Exs. C, E. Although these references appear in the middle of a short paragraph of information, they are written in the same font type and size as the surrounding text and are not buried in a way that makes them difficult to see. The third box is even more explicit, instructing buyers to "[s]ee brochures and **Terms and Conditions (including arbitration provision)** at T-Mobile.com." *Id.*, Ex. B. These notices stand in sharp contrast to what appeared on the box in *Norcia*. There, the box stated only that the package contained a "Product Safety & Warranty Brochure." *Norcia*, 845 F.3d at 1282. As the court emphasized, a reasonable person would not understand that there are bilateral contract obligations when the language is couched in terms of warranties, which run from the seller to the buyer. *Id.* at 1289–90.

Here, the text on the boxes uses classic contractual language by giving users notice of additional *terms* and *conditions*. Such language also places this case closer to cases involving shrink-wrap agreements than *Norcia*. Thus, the boxes would make a reasonable person aware of the existence of other binding conditions as part of the purchase.

The guidebooks within the boxes make clear on the cover that the terms and conditions are contained inside. Although the guidebooks are titled either "Health & Safety and Warranty Guide" or "Product Safety and Warranty Information," all of the guidebooks include the following language in bold on the front: "**Please read this manual before operating your device and keep it for future reference. This document contains important terms and conditions with respect to your device. By using this device, you accept those terms and conditions.**" Blackard Decl., Exs. G, H, J. Thus, even for Plaintiffs whose boxes do not indicate where to find the terms and conditions, their location is prominently displayed on the front of the guidebook in the box. What is more, the guidebook expressly provides the manner in which the consumer would bind himself or herself to the terms—"[b]y using th[e] device." Plainly, this setup is much more likely to notify consumers than *Norcia*'s "Product Safety & Warranty Information" brochure, which made no mention of the buyer's obligations but instead referred only to the seller's warranties. 845 F.3d at 1282. Here, Plaintiffs have a much weaker argument that Samsung's arbitration provision is "contained in a document whose contractual nature is not obvious." *Id.* at 1285 (quoting *Windsor Mills*, 101 Cal. Rptr. at 351). The language "[b]y using this device, you accept" prompts consumers to read the guidebook and indicates that using the device would subject the consumer to contractual terms.

Once the consumer knows to look within the guidebook to find the terms, there is sufficient information to direct the consumer to the arbitration provision. Immediately following the cover, on a page titled "Legal Information," the consumer is informed that important legal information is available on the phone or on samsung.com and instructed to "**READ THIS**

**INFORMATION BEFORE USING YOUR MOBILE DEVICE**.”  Blackard Decl., Ex. G, at 1; Ex. H, at 1; Ex. J, at 1.[2]  Below those statements is the key passage:

> **Samsung Limited Warranty** - This product is covered under the applicable Samsung Limited Warranty **INCLUDING ITS DISPUTE RESOLUTION PROCEDURE and your right to opt out of arbitration within 30 calendar days of the first consumer purchase.  You may opt out by either sending an email to optout@sea.samsung.com with the subject line “Arbitration Opt-Out” or by calling 1-800-SAMSUNG (726-7864).**  For more detailed procedures, please refer to the “Dispute Resolution Procedures and Arbitration and Opt-Out” section of the Limited Warranty.

*Id.*, Ex. G, at 1; Ex. H, at 1; Ex. J, at 1.  Although that language is helpful to Samsung, Samsung is not home free.  In particular, the entire passage is framed as a description of Samsung’s warranty and does not point out that arbitration also applies to non-warranty claims.  However, the language is not actively misleading—it conspicuously mentions arbitration and the 30-day opt out procedures, and does not state or imply that only warranty claims are covered by arbitration.  Even presuming that consumers are savvy enough to parse the language this closely, the passage would still give the consumer an indication that certain disputes are subject to arbitration.

From there, it would not take much for the consumer to discover the scope of the arbitration provision.  The language cited above tells the consumer exactly where to look: the section dealing with dispute resolution and arbitration.  That section, aptly labeled “Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy,” appears in the Table of Contents as the third item in “Section 2: Online Legal Information.”  *Id.*, Ex. G, at 8; Ex. H, at 9; Ex. J, at 9.  That the overarching header does not make any reference to Samsung’s warranty further dispels the possibility that a consumer would understand that arbitration is limited to warranty disputes.  *See Norcia*, 845 F.3d at 1290 (“Nor would a reasonable person understand that receiving the seller’s warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty.”).  Indeed, the consumer’s eye would be drawn to the correct

---

[2] Depending on the time of visitation, the website either closely mirrored the physical guidebook or was structured in question-and-answer format, where users could find the arbitration provision under the “What is the procedure for resolving disputes?” heading in the “Standard Limited Warranty Information” section.  *Id.*, Exs. L, M.

12

section both because of its descriptive title—"Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy"—and because the preceding section includes the phrase "Terms and Conditions." *Id.*, Ex. G, at 8; Ex. H, at 9; Ex. J, at 9. By contrast, *Norcia* does not even mention a table of contents, let alone one that explicitly singles out arbitration and opt out. Thus, the consumer in *Norcia* would have had to root through the 101-page page brochure to discover the arbitration clause, whereas the consumer here is directed to the exact page—either page 19 or 20, depending on the guidebook. *Id.*, Ex. G, at 8; Ex. H, at 9; Ex. J, at 9.

The arbitration clause appears conspicuously at the top of the first page of the "Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy" section. In capitalized font, the provision reads: "ALL DISPUTES WITH SAMSUNG ARISING IN ANY WAY FROM THIS LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCTS SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY." *Id.*, Ex. G, at 26; Ex. H, at 28; Ex. J, at 27. Finally, a couple pages later, the guidebook repeats and elaborates on the opt-out procedures identified on the first page:

> **You may opt out of this dispute resolution procedure by providing notice to SAMSUNG <u>no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product</u>. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "Arbitration Opt Out." . . . Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product . . . .**

*Id.*, Ex. G, at 28; Ex. H, at 30; Ex. J, at 29. A consumer's choice to opt out does not "affect the coverage of the Limited Warranty in any way," as the consumer "continue[s] to enjoy the benefits of the Limited Warranty." *Id.*, Ex. G, at 28; Ex. H, at 30; Ex. J, at 29. That added ability to avoid arbitration without penalty, which no Plaintiff took advantage of, further confirms that Plaintiffs Atebar, Esther Vega, Kouyoumdjian, and Raymond agreed to arbitrate under California law.

The Second Circuit reached the same conclusion under California law on very similar facts in *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d Cir. 2017). In that case, the plaintiff registered for the ride-sharing Uber service on his smartphone. *Id.* at 70. When he signed up, the

text "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY" appeared below the register button and included a hyperlink to the terms of service, which contained a mandatory arbitration clause. *Id.* at 71. The Second Circuit concluded that this setup provided reasonable notice of the arbitration clause. *Id.* at 78. In particular, the court noted that "the language '[b]y creating an Uber account, you agree' is a clear prompt directing users to read the Terms and Conditions and signaling that their acceptance of the benefit of registration would be subject to contractual terms." *Id.* at 79. The court was not bothered by the fact that the contractual terms were "lengthy and [had to] be reached by a hyperlink"; once the user navigated to the Terms of Service, the "Dispute Resolution" heading and the sentence waiving the right to jury were both in bold. *Id.* The same basic circumstances are present here: the front of the guidebook's "[b]y using this device, you accept" language matches the "[b]y creating an Uber account, you agree" language; the guidebook's table of contents directed users to the arbitration procedures; and the arbitration heading, arbitration clause, and opt-out description all appeared in contrasting type or font to the surrounding text. Plaintiffs are wrong to try to distinguish *Meyer* on the ground that it involved pre-transaction disclosures. Opp. 14. Just as the user in *Meyer* was exposed to the Terms of Service before creating his account, Plaintiffs here were exposed to the guidebook before using their phones.

Moreover, the current trend of California cases has been to enforce contracts even when consumers later receive the terms. Two unpublished, post-*Norcia* decisions from the California Court of Appeal are informative. *See Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (noting that courts "may consider unpublished state decisions, even though such opinions have no precedential value").[3] In *Chau v. Pre-Paid Legal Services, Inc.*, the

___

[3] Plaintiffs improperly cite a footnote in a dissent, which states that "[unpublished] decisions cannot inform our analysis of California law because unpublished decisions of the California intermediate appellate courts are not precedential." *Loftis v. Almager*, 704 F.3d 645, 657 n.4 (9th Cir. 2012) (Tashima, J., dissenting). However, Plaintiffs do not counter the long line of authority permitting consideration of unpublished state court decisions as indicative of the proper understanding of state law. *See, e.g., Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 n.3 (9th Cir. 2015); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 n.6 (9th Cir. 2011); *Emp'rs Ins. of Wausau*, 330 F.3d at 1220 n.8; *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997); *McSherry v. Block*, 880 F.2d 1049, 1053 n.2 (9th Cir. 1989).

Court of Appeal held that where the plaintiff signed a contract acknowledging that another contract with additional terms would be mailed to him within two weeks, the plaintiff was bound to arbitration based on a "Settlement of Disputes" clause in the second contract. No. B270277, 2017 WL 604721, at *1, *3 (Cal. Ct. App. Feb. 15, 2017). Analogizing to the Seventh Circuit's inside-the-box decision in *Hill*, the court explained that it did not matter that "the terms of the agreement were provided subsequent to the transaction" because the plaintiff's use of the defendant's services "signal[ed] his implicit acceptance of the terms." *Id.* at *3. Relatedly, in *Schuldner v. ITC Financial Licenses, Inc.*, the Court of Appeal dismissed a breach of contract claim predicated on the theory that the cardholder agreement was not available at the time of sale. No. A150522, 2018 WL 416839, at *7 (Cal. Ct. App. Jan. 16, 2018). The court credited the "string of cases," including the Seventh Circuit's inside-the-box opinions in *Hill* and *ProCD*, "recognizing that a cardholder agreement not disclosed at the time of purchase may nevertheless be enforceable." *Id.* These cases further bolster the conclusion that Plaintiffs agreed to arbitration here. Accordingly, the Court GRANTS Samsung's motion to compel arbitration as to Plaintiffs Atebar (as to the S7),[4] Esther Vega, Kouyoumdjian, and Raymond.

### (2) Plaintiff Dee

This leaves Plaintiff Dee, the final S7 Plaintiff whose facts are somewhat different than the others. Like with the other Plaintiffs, Plaintiff Dee's box provides: "Device purchase subject to additional Samsung terms and conditions." Blackard Decl., Ex. A. However, whereas the front of the guidebook informed the other Plaintiffs that the terms and conditions were contained therein, Plaintiff Dee's does not. Instead, his guidebook follows a nearly identical presentation to the brochure at issue in *Norcia*—namely, the guidebook was titled "Important Information" and had page numbers for a "Health and Safety Information" section and a "Warranty Legal Information" section. *Compare id.*, Ex. F, *with Norcia*, 845 F.3d at 1282; *see also Dang v. Samsung Elecs. Co.*, 673 F. App'x 779 (9th Cir.) (declining to compel arbitration for a brochure entitled "Important Information for the Samsung SPH-L710"), *cert. denied sub nom. Samsung Telecommunications*

---

[4] This S7 limitation is necessary for Plaintiff Atebar because, as described below, he also purchased a Note5 for which he is not subject to arbitration.

United States District Court
Northern District of California

*Am., LLC v. Norcia*, 138 S. Ct. 203 (2017).  As the court explained in *Norcia*, the warranty label is ineffective to put a reasonable person "on notice that the brochure contain[s] a freestanding obligation outside the scope of the warranty."  845 F.3d at 1289–90.  Although opening the guidebook would have revealed the language that the consumer accepts the guidebook's terms by using the device, a reasonable person had no fair notice that he should read the "Important Information" guidebook for binding terms and conditions before using the phone.

What fortifies that conclusion is that the exterior of Plaintiff Dee's box counseled against looking inside for the terms and conditions.  Specifically, Plaintiff Dee's box provides: "Device purchase subject to additional Samsung terms and conditions.  For more information on your device, please visit www.samsung.com."  Blackard Decl., Ex. A.  Thus, a consumer would likely consult the Internet to search for Samsung's terms and conditions.  But the website would not put a reasonable person on notice that he binds himself to arbitration by using his phone.  While consumers are instructed in bold, capitalized letters to read the important legal information before using the phone, the website nowhere provides that use of the phone constitutes acceptance of the terms.  *Id.*, Ex. M.  Moreover, as in the guidebook, the passage noting the consumer's "right to opt out of arbitration" is made in the context of Samsung's warranty.  *Id.*, Ex. M at 2, 11–12.  In order to uncover the arbitration provision, the consumer has to scroll almost to the end of the webpage to the "Procedures for Dispute Resolution/30-day Arbitration and Opt-Out Policy" subsection.  *Id.*, Ex. M at 12.  Because that subsection appears within a section called "Standard Limited Warranty Information," the consumer can understand that arbitration also applies to non-warranty claims only by reading the provision.  *Id.*, Ex. M at 12.  On these facts, the Court concludes that a reasonable person would not be on notice that assenting to an arbitration provision within the warranty meant submitting all claims against the seller to arbitration.  *Norcia*, 845 F.3d at 1290.

Another district court in this circuit similarly concluded that no valid arbitration agreement had been formed in a case involving an S7 with facts virtually identical to Plaintiff Dee's.  *See Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-CV-01953-DMG, 2017 WL 4082419, at *7

(C.D. Cal. Sept. 13, 2017).[5]  Looking at the external packaging, the court explained that the reference to "additional terms and conditions" on the box was insufficient because it did not notify the consumer where to find those additional terms and conditions or provide that taking certain actions (such as opening the box or using the phone) constituted assent. *Id.* at *6.  Turning to the warranty guidebook, the court observed that "the mere inclusion of the Warranty Guide in the Galaxy S7's box cannot bind [the consumer] to an arbitration provision appearing toward the end of the Guide because the Guide's cover page indicates only that it contains health, safety, and warranty information." *Id.* at 7.  Despite the first page's reference to arbitration, the court held that "Samsung's external packaging disclosure and in-the-box Warranty Guide are insufficient to put a reasonable consumer on notice of the arbitration provision or the contractual nature of the purchase-and-usage transaction." *Id.*  For the reasons stated above, this Court agrees and therefore DENIES Samsung's motion to compel arbitration as to Plaintiff Dee.

### ii.    S6 Edge+ Plaintiff

Plaintiff Martin purchased an S6 Edge+.  FAC ¶ 10.  The critical difference between Plaintiff Martin and the foregoing Plaintiffs is that Samsung does not submit an exhibit or argue that the outside of Plaintiff Martin's box said anything about terms and conditions.

The Court does not read *Norcia* to mandate that notice appear on the exterior of the box to form an agreement.  In one passage, the court in *Norcia* rejected Samsung's analogy to a shrink-wrap agreement by stating "the outside of the Galaxy S4 box did not notify the consumer that opening the box would be considered agreement to the terms set forth in the brochure."  845 F.3d at 1287.  But that statement is not properly understood as a general rule applicable in all scenarios.  Rather, the Ninth Circuit refuted a particular argument raised by Samsung and noted that the analogy failed because of the absence of language on the box.  The Ninth Circuit did not purport to hold that language on the box is always necessary.  As Plaintiffs acknowledge, the court went

---

[5] In contrast, the District Court for the Western District of Washington enforced an arbitration agreement in connection with a Note7 under similar circumstances. *See Schmidt v. Samsung Elecs. Am., Inc.*, No. 16-CV-01725-JCC, 2017 WL 2289035, at *4 (W.D. Wash. May 25, 2017). Although this Court agrees that Plaintiffs "have more notice of an arbitration agreement here than in . . . *Norcia*," the Court respectfully disagrees that "a 'reasonable person' was on notice of the arbitration agreement." *Id.*

on to discuss the title and contents of the brochure when it later held that the consumer did not receive adequate notice of the arbitration provision in the brochure.  *See id.* at 1289.  In other words, *Norcia* does not preclude consideration of material inside the box.

More fundamentally, Plaintiff Martin's case is different than *Norcia* because acceptance here is tied to the consumer's use of the phone.  Thus, in asking what a reasonable person in Plaintiff Martin's shoes would have known at the time the contract was formed, *see AIU Ins. Co.*, 799 P.2d at 1264, the Court may consider anything that the consumer would have seen before using the phone—including materials inside the box and (potentially) the contents of the guidebook.  Plaintiffs' arguments and cited authority support this approach.  For example, Plaintiffs point to *Cory v. Golden State Bank*, 157 Cal. Rptr. 538, 541 (Ct. App. 1979), and *India Paint & Lacquer Co. v. United Steel Products Corp.*, 267 P.2d 408, 416 (Cal. Ct. App. 1954), for the proposition that "California courts have regularly refused to enforce terms that were not expressed or disclosed at the time of contracting."  Opp. 6–7.  Again, Plaintiff Martin's guidebook keyed contract formation to his use of the phone.  Therefore, the analysis focuses on the materials that would be seen before the consumer began using the device.

Here, the Court concludes that a reasonable person in Plaintiff Martin's position would have been aware of arbitration and that using the phone constituted acceptance.  It is true that the outside of the box provided no notification of arbitration or additional contractual terms.  But when the consumer dumped out the contents of the box to retrieve the phone, he or she would be confronted with the guidebook.  Right on the cover, the guidebook states in bold lettering: "**Please read this manual before operating your device and keep it for future reference.  This document contains important terms and conditions with respect to your device.  By using this device, you accept those terms and conditions.**"  Blackard Decl., Ex. K at 2.  Although that text is written in smaller font below the title "Health & Safety and Warranty Guide"—which is similar to the brochure title at issue in *Norcia*—the inclusion of the additional language would put the reasonable person on notice that the guidebook contains a freestanding obligation that the consumer agrees to by using the phone.  Unlike *Norcia*, where the brochure did not appear to be a contract because the cover did not go beyond mentioning warranties, 845 F.3d at 1289–90, the

18

cover here unequivocally alerts the consumer to the presence of terms and the conduct required to assent to those terms. At a minimum, it is reasonable to conclude that the consumer must take some affirmative action (such as returning the phone or opting out of arbitration) to negate the conclusion that he or she accepts the terms. *See id.* at 1287.

Similarly, in contrast to *Norcia*, the arbitration clause is not inconspicuous inside the guidebook. The guidebook contents are the same as the S7 and S7 Edge Plaintiffs' guidebook, so the consumer would follow the same course to reach the arbitration clause. In short, the first page directs the consumer to read the important legal information and notes in bold that arbitration applies (at least to warranty claims), the table of contents lists a section for dispute resolution and 30-day opt out of arbitration, and the guidebook includes the capitalized arbitration provision and the bolded procedure describing how to opt out. Blackard Decl., Ex. K at 3, 8, 22–24. The brochure in *Norcia* did not reference either legal information or arbitration at the front and had no table of contents listing arbitration and the option to opt out. As the Court has already concluded above, the directions at issue here are sufficient to put a reasonable person on notice about the arbitration provision. Accordingly, the Court GRANTS Samsung's motion to compel arbitration as to Plaintiff Martin.

### iii. S6 and S6 Edge Plaintiffs

Plaintiffs Anguiano, Hernandez, Pirverdian, Salmasian, and Sanchez purchased either an S6 or an S6 Edge. FAC ¶¶ 14–15, 18–19, 23. As to these remaining Plaintiffs, the Court need not do any analytical heavy lifting. Samsung concedes that, under *Norcia*, these Plaintiffs did not form an agreement to arbitrate; Samsung "move[s] to compel arbitration with respect to these five Plaintiffs for preservation purposes only." Mot. 21. In light of that concession, the Court DENIES Samsung's motion to compel arbitration as to Plaintiffs Anguiano, Hernandez, Pirverdian, Salmasian, and Sanchez.

### iv. Note5 Plaintiffs

Plaintiff Atebar purchased a Note5 and Plaintiff Jesus Vega came into possession of a Note5. FAC ¶¶ 11, 13. The cryptic clues and tortuous path that these Plaintiffs would have to

follow to arrive at the arbitration clause do not sufficiently place a reasonable person on notice that using the phone constitutes acceptance of arbitration.

The outside of the box mentions terms and conditions (and even arbitration), but the presentation is somewhat obscuring and misleading. Specifically, the box states: "See enclosed materials for manufacturer's Limited Warranty and important user guide information. See brochures and Terms and Conditions (including arbitration provision) at T-Mobile.com, for rate plan information, features and services, coverage maps and additional details." Blackard Decl., Ex. T. That language is sandwiched in the middle of a long paragraph of information and does nothing to set off this information as important. In contrast, earlier in the paragraph, there is bold language stating that "**[y]our device may not work if you alter its original software**." *Id.*, Ex. T. Nor does the language give the consumer the full range of details about arbitration; the consumer must look beyond the box.

The Note5 guidebook fares no better. The guidebook's title—"Health & Safety and Warranty Guide"—is unhelpful. *Id.*, Ex. U at 2. Although the cover asks the consumer to read the guidebook before using the device, no reference is made to contractual promises on behalf of the consumer. *Id.*, Ex. U at 2. As in *Norcia*, the contractual nature of the guidebook is unapparent. 845 F.3d at 1285. The inside of the guidebook is to the same effect. Unlike some of the iterations described above, the first page does not even indicate that use of the phone constitutes acceptance of the terms contained therein. Blackard Decl., Ex. U at 3. Nor does that page mention arbitration. It simply provides, in language relating only to Samsung's warranty, that the phone is "covered under the applicable Samsung Limited Warranty including its dispute resolution procedure" and that the terms of the warranty can be accessed on the device or online. *Id.*, Ex. U at 3. Even the overzealous consumer who decided to read the entire guidebook would come away with no knowledge that arbitration is on the table because the word "arbitration" does not appear in the guidebook at all.

Supposing that the Court accepted the dubious proposition that the reasonable consumer would make it to Samsung's website, notice still remains lacking. The webpage that Plaintiffs Atebar and Vega would have viewed has the same uninformative title as the guidebook—"Health

20

& Safety and Warranty Guide." *Id.*, Ex. L at 2. Notice of binding arbitration does not appear front and center; the first mention of arbitration is in the "**What is the procedure for resolving disputes?**" section, nearly at the bottom of the webpage. *Id.*, Ex. L at 12–13. Moreover, the clause appears in the "Standard Limited Warranty Information" section, *id.*, Ex. L at 11, thereby hampering the consumer from knowing that arbitration covers both warranty and non-warranty claims without reading the provision. *See Norcia*, 845 F.3d at 1290 ("Nor would a reasonable person understand that receiving the seller's warranty and failing to opt out of an arbitration provision contained within the warranty constituted assent to a provision requiring arbitration of all claims against the seller, including claims not involving the warranty."). Although the arbitration provision appears in capital lettering and the opt-out procedures appear in bold, they do not stand out because multiple other provisions are written in the same formatting. These circumstances are a far cry from providing notice to a reasonable person that using the phone constituted assent to arbitration. Accordingly, the Court DENIES Samsung's motion to compel arbitration as to Plaintiffs Atebar (as to the Note5) and Jesus Vega.

### 3. Maryland

Plaintiff Robison is a resident of Maryland who purchased a Samsung Galaxy S6 in Maryland. FAC ¶ 16. The parties agree that Maryland law governs the question whether he formed an agreement to arbitrate with Samsung.

Maryland's law on assent appears to parallel California's in important ways. Under Maryland law, "[a]cceptance may be manifested by acts as well as by words." *Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007). Although a party may sometimes manifest acceptance by silence or inaction, that form of acceptance is considered "the exception and not the general rule." *Id.* A party's conduct may also signal assent. *Porter v. Gen. Boiler Casing Co.*, 396 A.2d 1090, 1095 (Md. 1979).

Significant here, an offeree may be bound to terms that were unknown to him so long as the offeree was on notice of the terms. *Id.*; *cf. Mattingly v. Hughes Elecs. Corp.*, 810 A.2d 498, 508 (Md. Ct. Spec. App. 2002) ("[Cases] inherently recognize as a minimum threshold to enforcing the arbitration clause that there must be adequate notice alerting the consumer to its

presence."), *aff'd sub nom. DIRECTV, Inc. v. Mattingly*, 829 A.2d 626 (Md. 2003). Plaintiffs'

cited authority is instructive. In *Shaffer v. ACS Government Services, Inc.*, the court, applying

Maryland law, concluded that the plaintiff did not accept the defendant's arbitration clause when

he signed an acknowledgement that he had read and accepted the terms of an employee handbook.

321 F. Supp. 2d 682, 687 (D. Md. 2004). The court explained that "the acknowledgment form

[the plaintiff] signed clearly did not include a direct acknowledgment and acceptance of an

arbitration policy," or even mention arbitration at all. *Id.* Moreover, the provision at issue

occupied seven lines on page 56 of a 71-page handbook and did not explicitly state that employees

were required to submit employment-related matters to arbitration. *Id.* Thus, the court was

"unwilling to bind [the plaintiff] to arbitration merely because he acknowledged receiving [the]

employee handbook." *Id. Shaffer* has been cited and discussed in multiple decisions of the

Maryland Court of Special Appeals. *Harby ex rel. Brooks v. Wachovia Bank, N.A.*, 915 A.2d 462,

468 (Md. Ct. Spec. App. 2007); *Holloman v. Circuit City Stores, Inc.*, 873 A.2d 1261, 1266 (Md.

Ct. Spec. App. 2005), *aff'd*, 894 A.2d 547 (Md. 2006).

Like the plaintiff in *Shaffer*, Plaintiff Robison was not on notice of arbitration. The

exterior of his phone box does not mention arbitration and, indeed, says nothing about contractual

promises at all. Blackard Decl., Ex. W. His guidebook also is unilluminating. The front includes

the title "Product Safety & Warranty Information" and the subscript tells the user to "**read this

manual before operating your device and keep it for future reference**." *Id.*, Ex. X at 2. It is

not until the fifth page of the guidebook that any relevant information appears and even that

information is unclear. Under the bold "Legal Information" heading, the guidebook states that

"[i]mportant legal information can be accessed in writing on the mobile device or on

samsung.com" and warns users to "**[r]ead this information before using your mobile device**."

*Id.*, Ex. X at 7. Directly below that language, the guidebook further states that "[t]his product is

covered under the applicable Samsung Limited Warranty" and that "[f]ull written terms" can be

accessed on the device or at a specific link. *Id.*, Ex. X at 7. Nowhere on the page is there any

indication that the consumer is agreeing to particular terms or submitting to arbitration; in fact, the

word "arbitration" does not appear anywhere in the guidebook.

Even if these frustratingly oblique references were sufficient to lead the consumer to Samsung's website, the Internet page still does not conspicuously provide the arbitration provision or otherwise inform the user that an arbitration clause exists. The page is titled "**Warranty Information**" and the first section is called "**Standard Limited Warranty**." *Id.*, Ex. Y at 2. The webpage is structured in a question-and-answer format, including questions such as "**What is covered and for how long?**" and "**What must you do to obtain warranty service?**" *Id.*, Ex. Y at 2–3. If the consumer somehow intuits that he should scroll down the page to the "**What is the procedure for resolving disputes?**" section, then he is greeted with the familiar arbitration provision in capital letters. *Id.*, Ex. Y at 4. Unless the consumer reaches this point, he has no way of knowing that the arbitration provision applies to warranty and non-warranty claims alike and that Samsung provides an opportunity for the consumer to opt out. *Id.*, Ex. Y at 4–5. This labyrinthine series of instructions cannot fairly be said to have put Plaintiff Robison on notice that he would be bound by arbitration if he failed to opt out within 30 days, especially when, unlike the plaintiff in *Shaffer*, he did not even provide an acknowledgement of the document containing the arbitration provision or the documents purportedly leading him to the arbitration provision.

Samsung's arguments to the contrary are unpersuasive. Samsung argues that the arbitration clause was incorporated into the guidebook by reference. Mot. 21. Even if the incorporation by reference doctrine could be invoked here, the Court has already concluded that neither the guidebook nor the website gives adequate notice of the arbitration provision. Next, Samsung analogizes to cases where Maryland courts enforced arbitration agreements based on a consumer's use of a credit card. *Id.* at 20; Reply 13–14. However, in those cases, the plaintiffs acknowledged or received agreements from their credit card companies that alerted the plaintiff to arbitration and described the actions that would bind the plaintiff. *See Bey v. Midland Credit Mgmt., Inc.*, No. 15-CV-01329-GJH, 2016 WL 1226648, at *4 (D. Md. Mar. 23, 2016) ("[T]he Card Agreement that governed [the plaintiff's] use of his credit card and the terms and conditions that governed [his] use of the T-Mobile cellular services both provided that those agreements would bind each Plaintiff upon their use of the respective services . . . ."); *Whitman v. Capital One Bank (USA), N.A.*, No. 09-CV-01737-WMN, 2009 WL 4018523, at *2 (D. Md. Nov. 19, 2009)

(noting that the plaintiff used his credit card after signing an application indicating that he had read and agreed to the Terms of Offer, which included an arbitration provision).  The maze of instructions in Plaintiff Robison's guidebook provides nowhere near the same level of clarity.  Accordingly, the Court DENIES Samsung's motion to compel arbitration as to Plaintiff Robison.

### B.  Motion to Dismiss Class Claims

For Plaintiffs whose phones are subject to arbitration, Samsung also moves to dismiss their class-action claims.  Mot. 23–24.  The relevant Plaintiffs' guidebooks included a clause waiving class treatment immediately below the arbitration clause.  Specifically, that clause provided that "ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION."  Blackard Decl., Ex. G at 26; Ex. H, at 28; Ex. I at 30; Ex. J, at 27; Ex. K at 22.  The Supreme Court has enforced class waivers in arbitration agreements in functionally identical circumstances.  *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–39 (2013).  Plaintiffs do not contest that the Plaintiffs whose phones are subject to arbitration cannot sustain their class-action claims.  Accordingly, the Court GRANTS Samsung's motion to dismiss the class-action claims of Plaintiffs Martin, Atebar (as to the S7), Esther Vega, Holzworth, Kouyoumdjian, and Raymond.

### C.  Motion to Stay the Litigation Pending Arbitration

Finally, Samsung requests that if the Court orders arbitration as to any Plaintiff, it should stay all proceedings in this litigation pending arbitration.  Mot. 24–25.  Under the FAA, the court is authorized to stay proceedings pending arbitration.  9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in [the] suit or proceeding is referable to arbitration under [the pertinent] agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").  This Court and other courts have stayed all claims in an action even if only some of the claims will be arbitrated.  *See Marchand v. Northrop Grumman Corp.*, No. 16-CV-06825-BLF, 2017 WL 2633132, at *13 (N.D. Cal. June 19, 2017); *Trinchitella v. Am. Realty Partners, LLC*, No. 15-CV-

02365-KJM, 2016 WL 4041319, at *13 (E.D. Cal. July 27, 2016); *Mohebbi v. Khazen*, No. 13-CV-03044-BLF, 2014 WL 6845477, at *12 (N.D. Cal. Dec. 4, 2014); *Gunawan v. Randstad Gen. Partner (US) LLC*, No. 13-CV-01464-CJC, 2013 WL 12142565, at *3 (C.D. Cal. Dec. 16, 2013). A stay of all claims is particularly warranted in the class-action context because the complaint admits that common questions of fact and law predominate. *See Morales v. Lexxiom, Inc.*, No. 09-CV-06549-SVW, 2010 WL 11507515, at *11 (C.D. Cal. Jan. 29, 2010); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002). In the instant case, Plaintiffs do not dispute that the Court should stay all proceedings if it orders arbitration as to any Plaintiff. Accordingly, the Court STAYS this action pending the completion of arbitration.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Samsung's motion to compel arbitration and to dismiss class-action claims is GRANTED as to Plaintiffs Martin, Atebar (as to the S7), Esther Vega, Holzworth, Kouyoumdjian, and Raymond. Samsung's motion to compel arbitration and to dismiss class-action claims is DENIED as to Plaintiffs Atebar (as to the Note5), Jesus Vega, Anguiano, Hernandez, Robison, Pirverdian, Salmasian, Dee, and Sanchez. Samsung's motion to stay all proceedings pending the outcome of arbitration is GRANTED. Within seven days of the resolution of the arbitration, the parties shall file a joint status report advising the Court of the resolution of the matter and any further action required by the Court.


Dated: March 30, 2018

BETH LABSON FREEMAN
United States District Judge