1  Robert J. Katerberg (admitted *pro hac vice*)
   Elisabeth S. Theodore (admitted *pro hac vice*)
2  ARNOLD & PORTER KAYE SCHOLER LLP
   601 Massachusetts Avenue, NW
3  Washington, DC 20001-3743
   Telephone: 202.942.5000
4  Facsimile: 202.942.5999
   robert.katerberg@arnoldporter.com
5  elisabeth.theodore@arnoldporter.com

6  *Attorneys for Defendants*

7

8

9

10                 UNITED STATES DISTRICT COURT

11        FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

| | |
|---|---|
| **IN RE SAMSUNG GALAXY SMARTPHONE MARKETING AND SALES PRACTICES LITIGATION** ——————————————————— **This Document Relates To: All Actions** | Master Docket No. 5:16-cv-06391-BLF CLASS ACTION **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** Hearing Date:    September 10, 2020 Time:            9:00 a.m. Courtroom:       3, 5th Floor Judge:           Hon. Beth Labson Freeman |

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on September 10, 2020 at 9:00 a.m., or as soon thereafter as

4  the matter may be heard by the Court, in Courtroom 3, 5th Floor, of this Court at 280 South 1st Street,

5  San Jose, California 95113, before the Honorable Beth Labson Freeman, Defendants Samsung

6  Electronics America, Inc. ("SEA") and Samsung Electronics Co., Ltd. ("SEC," and collectively,

7  "Samsung" or "Defendants") will and hereby do move the Court for an order, dismissing Plaintiffs'

8  Second Amended Consolidated Class Action Complaint ("SAC") with prejudice pursuant to Federal

9  Rules of Civil Procedure 12(b) and 9(b).

10      This motion is based on the following memorandum of points and authorities, materials that

11  Defendants have requested the Court consider or take judicial notice of pursuant to the request filed

12  contemporaneously with this motion, the arguments of counsel, and all other material which may

13  properly come before the Court at or before the hearing on this motion.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF THE ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' SAC cures their prior failure to plausibly allege, with the particularity required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), that their phones had a defect that Samsung failed to disclose.

2.      Whether Plaintiffs' SAC cures their prior failure to plausibly allege, with the particularity required by Rule 9(b), that Samsung had knowledge of a defect in Plaintiffs' phones at the time Plaintiffs purchased those phones.

3.      Whether Plaintiffs' statutory claims fail because the False Advertising Law is inapplicable to omissions, because none of the limited circumstances that make an omission potentially actionable under the other California statutes are present here, and because Plaintiffs fail to plead reliance with particularity.

4.      Whether Plaintiffs' claim for unjust enrichment must be dismissed.

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................... i

STATEMENT OF THE ISSUES TO BE DECIDED .............................................................. ii

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

      A.    Smartphones, Lithium Ion Batteries, and Thermal Runaway
           Events ...................................................................................................................2

      B.    The Relevant Samsung Smartphones ..............................................................4

      C.    The Galaxy Note7 Recall ..................................................................................5

      D.    This Litigation and the Prior Dismissal Order ...............................................6

      E.    Plaintiffs' Second Amended Complaint ..........................................................7

ARGUMENT .................................................................................................................................8

I.      PLAINTIFFS STILL FAIL TO PLAUSIBLY PLEAD THAT THEIR
          PHONES ARE DEFECTIVE ............................................................................8

      A.    Plaintiffs' Shared-Characteristics Theory Remains Conclusory
           and Implausible ...................................................................................................9

      B.    Plaintiffs' Other Attempts to Establish a Common Defect Are
           Equally Baseless ...............................................................................................12

      C.    The Contrasting Histories of the Note7 and Subject Phones
           Further Confirm the Implausibility of Plaintiffs' Claims .............................13

II.     PLAINTIFFS STILL FAIL TO PLAUSIBLY PLEAD PRE-SALE
          KNOWLEDGE OF ANY DEFECT..................................................................15

III.    PLAINTIFFS DO NOT SATISFY ADDITIONAL PREREQUISITES
          FOR OMISSIONS CLAIMS UNDER CALIFORNIA LAW .................................19

      A.    Plaintiffs Do Not Allege Affirmative Statements Actionable
           Under the False Advertising Law ...................................................................19

      B.    Plaintiffs Do Not Plead Any of the Four Circumstances Creating a
           Duty to Disclose Under the CLRA or UCL ..................................................19

      C.    Plaintiffs Do Not Plausibly Plead Reliance..................................................20

IV.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT ALSO FAILS .................22

CONCLUSION ...........................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) ............................................................................. 20

*Azulai v. BMW of N. Am. LLC*,
   2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ..................................................................... 9

*Baba v. Hewlett-Packard Co.*,
   2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ...................................................................... 18

*Blissard v. FCA US LLC*,
   2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) ..................................................................... 18

*Collins v. eMachines, Inc.*,
   134 Cal. Rptr. 3d 588 (Cal. Ct. App. 2011) ...................................................................... 19

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) .................................................................... 22

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ......................................................................... 20, 21

*Espineli v. Toyota Motor Sales, U.S.A., Inc.*,
   2019 WL 2249605 (E.D. Cal. May 24, 2019) .................................................................... 18

*Glenn v. Hyundai Motor Am.*,
   2016 WL 3621280 (C.D. Cal. June 24, 2016) .................................................................... 20

*Grodzitsky v. Am. Honda Motor Co.*,
   2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ...................................................................... 18

*Hadley v. Kellogg Sales Co.*,
   2017 WL 1065293 (N.D. Cal. Mar. 21, 2017) ................................................................... 21

*Harris v. R.J. Reynolds Vapor Co.*,
   2017 WL 3617061 (N.D. Cal. Aug. 23, 2017) ................................................................... 20

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd on other grounds*, 891 F.3d 857
   (9th Cir. 2018) ............................................................................................................... 19, 21

*In re Actimmune Mktg. Litig.*,
   2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ..................................................................... 22

*In re Nexus 6P Prods. Liab. Litig.*,
   2018 WL 1156861 (N.D. Cal. Mar. 5, 2018) ............................................................... 15, 18

*In re Sony PS3 Other OS Litig.*,
   551 F. App'x 916 (9th Cir. 2014) ...................................................................................... 22

*Ivie v. Kraft Foods Global, Inc.*,
   2015 WL 183910 (N.D. Cal. Jan. 14, 2015) ...................................................................... 23

iv

*Kahn v. FCA US LLC*,
    2019 WL 3955386 (C.D. Cal. Aug. 2, 2019) ........................................................... 19, 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................... 9

*Kerkorian v. Samsung Elecs. Am., Inc.*,
    2019 WL 6918293 (E.D. Cal. Dec. 19, 2019) ............................................................ 22

*LiMandri v. Judkins*,
    60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997) ............................................................ 18, 19

*Mandani v. Volkswagen Group of Am., Inc.*,
    2019 WL 652867 (N.D. Cal. Feb. 15, 2019) .............................................................. 16

*McVicar v. Goodman Global Inc.*,
    2014 WL 12573992 (C.D. Cal. Nov. 13, 2014) ....................................................... 18, 20

*Milman v. FCA U.S., LLC*,
    2019 WL 3334612 (C.D. Cal. Apr. 15, 2019) ............................................................ 20

*Munch v. Sears, Roebuck and Co.*,
    2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) ............................................................ 14

*Norcia v. Samsung Telecomms. Am., LLC*,
    2015 WL 4967247 (N.D. Cal. Aug. 20, 2015) ........................................................... 19

*Olmos v. Harbor Freight Tools USA, Inc.*,
    2018 WL 8804820 (N.D. Cal. Dec. 24, 2018) ........................................................... 18

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ..................................................................................... 22

*Pugh v. Tribune Co.*
    521 F.3d 686 (7th Cir. 2008) ..................................................................................... 13

*Punian v. Gillette Co.*,
    2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ................................................ 9, 14, 19, 20

*Puri v. Khalsa*,
    674 F. App'x 679 (9th Cir. 2017) ............................................................................. 22

*Sciacca v. Apple, Inc.*,
    362 F. Supp. 3d 717 (N.D. Cal. 2019) .......................................................... 9, 15, 16, 22

*Seldin v. HSN, Inc.*,
    2018 WL 3570308 (S.D. Cal. July 25, 2018) ............................................................ 20

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ............................................................. 13

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018).............. 19

*Tietsworth v. Sears, Roebuck and Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................... 13

*Wallace v. SharkNinja Operating, LLC*,
     2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) .................................................15, 16, 19, 21

*Williams v. Yamaha Motor Co.*,
     851 F.3d 1015 (9th Cir. 2017) ........................................................................................ 15

*Wilson v. Hewlett-Packard Co.*,
     668 F.3d 1136 (9th Cir. 2012) ...........................................................................7, 15, 17, 21

*Yordy v. Plimus, Inc.*,
     2012 WL 2196128 (N.D. Cal. June 14, 2012) ................................................................ 23

## **Statutes**

Cal. Bus. & Prof. Code § 17500 ................................................................................................ 19

Fed. R. Civ. P. 9(b) ...........................................................................................ii, 2, 9, 12, 22

Fed. R. Civ. P. 12 ........................................................................................................................ 6

Fed. R. Evid. 407 ..................................................................................................................... 13

1

**INTRODUCTION**

2
      This Court dismissed Plaintiffs' First Amended Complaint ("FAC") in 2018 on two separate

3
and independent grounds:  Plaintiffs did not adequately plead that each Samsung phone model at issue

4
suffers from a defect, and Plaintiffs did not sufficiently allege that Samsung had knowledge of any

5
such defect at the time of the relevant sales.  Plaintiffs' SAC does not cure either issue.

6
      This case always was, and continues to be, a spurious attempt to piggyback on Samsung's

7
2016 recall of a phone known as the Galaxy Note7.  Within days of the Note7's launch, a number of

8
those phones experienced "thermal runaway events," a term for rare instances when the lithium ion

9
batteries that are ubiquitous in consumer electronics overheat and can catch on fire.  The problem was

10
later determined to be manufacturing defects limited to batteries specially designed and made for the

11
Note7.  In a cynical attempt to exploit this incident and parlay it into a class action recovery, Plaintiffs

12
concocted out of thin air claims that a host of *other* Samsung phones universally had the same defect.

13
      The Court properly rejected these claims as alleged in the FAC and should do so again.  There

14
is no substance to Plaintiffs' claims that *their* phones have a systemic defect making them prone to

15
thermal runaway.  Indeed, none of the seven Plaintiffs claims ever to have experienced this issue in

16
five years of owning their phones.

17
      To gloss over the deficiencies the Court found in the FAC, Plaintiffs now insist that all of their

18
phones have the exact same physical battery defect as the Note7.  Without any basis, they

19
misrepresent technical information and graphics from Samsung's root cause analysis of the *Note7*

20
battery defect as somehow descriptive of *all* batteries made by one of the Note7 battery suppliers for

21
*any* Samsung phone.  But the source documents belie their claims:  the underlying analysis found that

22
the defect in the Note7 batteries was unique to those batteries.  Moreover, the SAC acknowledges

23
that the batteries for each phone model were manufactured at different times according to different

24
specifications.  A defect in one component customized for one particular product does not plausibly

25
indicate every other product that contains a component made by that same supplier is tainted.  Even

26
more absurd is Plaintiffs' fantasy that Samsung "pushed the envelope" by making the battery

27
nonremovable:  virtually *all* smartphones on the market today have built-in batteries.  Indeed, batteries

28
in Samsung phones that Plaintiffs concede are *not* defective are *also* made by the same battery

1

1    supplier and non-removable.

2            The dramatic difference in the phones' respective histories further confirms the implausibility

3    of Plaintiffs' same-defect theory.  Within weeks after the Note7's launch, nearly a hundred reports of

4    thermal runaway events accumulated, leading to the prompt recall.  In contrast, by Plaintiffs' own

5    allegations, no such report about their phone models was made for six months or more after launch,

6    and the total number of thermal runaway event reports for these phones today, after many years on

7    the market, is a tiny fraction of those reported for the Note7 in just a few weeks.  In fact, for one of

8    their phone models, Plaintiffs could not locate a single report of a thermal runaway event in five years

9    since launch.  Plaintiffs' theory that their phones have precisely the same battery defect as the Note7

10   makes no sense in light of these wildly varying results.

11           But even if the SAC plausibly alleged a uniform defect (it does not), Plaintiffs have not cured

12   their failure to plausibly allege that Samsung had pre-sale knowledge of this supposed defect—an

13   independent basis for the Court's prior dismissal. The Court previously observed that "Plaintiffs rely

14   on a scattered series of online reports, but many of those reports post-date individual Plaintiffs'

15   purchases, concern phones other than those at issue here, or involve overheating of phone chargers."

16   ECF No. 88, at 5-6.  That remains true.  The SAC recycles the identical list the Court previously

17   found insufficient, supplemented only by reports of two incidents in phones outside the United

18   States—one of which involved a phone that no Plaintiff owned and they do not allege was defective.

19   Under Rule 9(b) or any other pleading standard, Plaintiffs' allegations remain much too flimsy to

20   support a claim that Samsung willfully tricked them into buying their phones by concealing a known

21   defect.  For these and the other reasons set forth below, the Court should dismiss Plaintiffs' claims

22   and this action with prejudice.

23                                      **STATEMENT OF FACTS**

24       **A.    Smartphones, Lithium Ion Batteries, and Thermal Runaway Events**

25           Like myriad other consumer electronic products ranging from computers to power tools,

26   smartphones are powered by lithium ion batteries.  SAC (ECF No. 108) ¶¶ 24, 30.  Because of their

27   chemical composition, the potential exists for lithium ion batteries to overheat and catch on fire.  *Id.*

28   ¶ 30.  This phenomenon, which is not limited to smartphones and has long been public knowledge, is

sometimes called a "thermal runaway event."  *Id.* ¶ 31; *see also id.* ¶ 50 (thermal runaway events in electronic devices generally have "been reported through the media and consumer protection agencies for years").  Thermal runaway events "can happen in a variety of circumstances, including when the battery is overcharged, when it is rapidly discharged, when there is a cell defect, when there is cell damage, and in heat."  *Id.* ¶ 31.  Plaintiffs' complaint catalogues some among the diverse array of potential theoretical causes, including the failure of heat-regulating software, manufacturing errors that leave extraneous material in the battery, or defectively manufactured battery components.  *Id.* ¶ 32.  As one of Plaintiffs' sources puts it, thermal runaway events may result from a "statistical fluke in the manufacturing process."  Req. for Judicial Notice ("RJN"), Ex. C.

Consumer misuse or abuse of electronic products or batteries can cause thermal runaway events as well.  As the U.S. Consumer Product Safety Commission ("CPSC") advised the public over a decade ago, lithium ion batteries "have a lot of energy in a small package," "are more sensitive to physical stress than alkaline batteries," and "need to be treated with more care."  RJN, Ex. F.  The CPSC recommends:

- "Do not use incompatible cell phone batteries and chargers.  Some Web sites and second-hand dealers, not associated with reputable manufacturers and carriers, might be selling incompatible or even counterfeit batteries and chargers.  Consumers should purchase manufacturer or carrier recommended products and accessories."

- "Do not crush, puncture or put a high degree of pressure on the battery as this can cause an internal short-circuit, resulting in overheating."

- "Do not place the phone in areas that may get very hot, such as on or near a cooking surface, cooking appliance, iron, or radiator."

- "Do not get your phone or battery wet.  Even though they will dry and appear to operate normally, the circuitry could slowly corrode and pose a safety hazard."

*Id.*

Samsung provides similar cautionary statements and user instructions regarding overheating risks in product documentation provided with its phones and available online:

- "Misuse or use of incompatible devices, batteries, and charging devices could result in

damage to the equipment and a possible risk of fire, explosion, or leakage."

- "Do not place your battery in or near a heat source.  Excessive heating can damage the device or the battery and could cause the device or the battery to explode.  Do not dry a wet or damp battery with an appliance or heat source such as a microwave oven, hair dryer, iron, or radiator.  Avoid leaving your device in your car in high temperatures."

- "Caution: Some applications or prolonged usage may increase device temperature. . . . If the device feels hot to the touch, discontinue use and close all applications or turn off the device until it cools.  Always ensure that the device has adequate ventilation and air flow. Covering the device with bedding, your body, thick clothing or any other materials that significantly affect air flow may affect the performance of the device and poses a possible risk of fire or explosion."

- "Never use any charger or battery that is damaged in any way."

- "WARNING!  Use of a non-Samsung-approved battery or charger may present a risk of fire, explosion, leakage, or other hazard."

RJN, Ex. B at 3-4, 11-12, 21.

### B.      The Relevant Samsung Smartphones

This case focuses on four Samsung smartphone models, known as the Galaxy S6, S6 Edge, S7, and Note5, launched in the United States between April 2015 and March 2016 (collectively, the "Subject Phones").  SAC ¶¶ 1, 23.

Each model phone is technologically, physically, and functionally distinct.  In particular, and as relevant here, each phone is powered by a unique and customized lithium ion battery manufactured by an outside supplier.  *Id.* ¶ 27 (chart showing "Compatible Battery" specifications for each phone). While all the batteries in the Galaxy and Note lines since the S6 and Note5 have been built-in and not intended for removal by consumers, *id.* ¶ 24, the batteries otherwise vary in their physical and technological characteristics, *id.* ¶ 27.

For example, Plaintiffs allege that the Galaxy S6 battery is manufactured by Samsung SDI ("SDI"),[1] the part number is EB-BG920ABA/E, and has a battery capacity of 2,550 milli-ampere

---

[1] SDI is a publicly traded third-party company that is independent from SEC and SEA.  *See*   Stock

hours, or "mAh."  *Id.*  But the Note5 battery, denominated EB-BN920ABA/E, allegedly was made by two alternate suppliers—Amperex Technology and SDI—and its capacity is 3000 mAh.  Neither of those batteries, in turn, would be compatible with the Galaxy S6 Edge, which only works with 2600-mAh battery EB-BG925ABA/E.  *See generally id.* ¶¶ 26, 27.

> **C.**     **The Galaxy Note7 Recall**

In August 2016, Samsung released a new smartphone called the Note7 in the United States. SAC ¶ 23.  Plaintiffs allege that the Note7 was powered by battery EB-BN930ABA/E, manufactured alternately by Amperex Technology and SDI, with a capacity of 3500 mAh.  *Id.* ¶ 27.

In just the first few weeks following the product launch, nearly 100 thermal runaway events involving the Note7 were reported in the United States alone.  SAC ¶¶ 29, 33-35; RJN, Ex. G.  Samsung promptly recalled the Note7 and commenced a wide-ranging investigation to determine the source of the problem.  SAC ¶¶ 29, 33-35.  For a short time, Note7 phones could be exchanged for replacement Note7 devices with different batteries, but Samsung quickly discontinued that program and recalled the Note7 altogether after the replacement Note7 devices also had a high rate of thermal runaway events.  *Id.* ¶¶ 33, 36.

In January 2017, Samsung announced the results of the root cause investigation, conducted over several months by 700 engineers working in a dedicated facility, and assisted by independent organizations such as Underwriters Laboratories.  *Id.* ¶¶ 36, 37, 45; *see also* RJN, Ex. H (statement by Chairman of U.S. CSPC commending Samsung for its responsible handling of the Note7 recall and thorough root cause investigation).  The analysis ultimately confirmed that the Note7 thermal runaway events were the result of multiple battery manufacturing defects "unique to the Note7 devices."  RJN, Ex. A (FAQ 1).  The investigation found that there was a specific flaw in the lithium ion batteries sourced by SDI for the Note7 that could cause the negative electrode to deflect and damage the battery's separator, leading to a short circuit and then a thermal runaway event.  SAC ¶ 47; RJN, Ex. E.  The complaint reproduces "a CT scan of a Note7" depicting this issue, which

---

Information, Samsung SDI, https://www.samsungsdi.com/ir/stock-information/stock-index.html (last visited June 8, 2020).

Samsung provided when announcing the investigation results.  *See* RJN, Ex. E.  Samsung further determined that batteries in the replacement Note7s manufactured by Amperex Technology had a separate and distinct manufacturing defect.  RJN, Ex. E; *see* SAC ¶ 36.

### D.     This Litigation and the Prior Dismissal Order

These consolidated cases were filed in late 2016 on the heels of the Note7 recall.  None of the Plaintiffs, however, had bought the Note7.  Rather, they purchased an assortment of other Samsung phones, which they claimed were equally defective and at risk of thermal runaway events, making the Note7 recall what they called "a Band-Aid to a pervasive problem for which major surgery was required."  SAC ¶ 1.

After Plaintiffs filed a consolidated amended complaint, Defendants moved to compel arbitration, ECF No. 67, and in the alternative, to dismiss under Fed. R. Civ. P. 12, ECF No. 69.  After hearing oral argument, the Court issued a pair of orders on Defendants' motions in March 2018.  In the first March 2018 order, the Court compelled several of the original plaintiffs to arbitration and stayed the entire case.  ECF No. 87.

In its second March 2018 order, the Court granted Defendants' motion to dismiss as to the remaining seven plaintiffs, but with leave to amend after the conclusion of the arbitrations.  ECF No. 88.  The Court dismissed Plaintiffs' claims for two separate and independent reasons.  First, "Plaintiffs have not adequately pled that each model of Samsung phone at issue suffers from a defect."  *Id*. at 5.  The Court described Plaintiffs' pleading as "vague," "conclusory" and "leav[ing] unclear whether Plaintiffs allege a single universal defect across all phones, or multiple distinct defects in each model, and whether all of the overheating incidents were due to a common defect, or some independent cause specific to the phone at issue."  *Id.*  After all, it was undisputed that "the models have manufacturing differences, such as batteries with different capacities."  *Id.*  And only two of the plaintiffs in the original complaint alleged that they had "personally experienced a 'thermal runaway event' as that term is defined in the FAC."  *Id.* at 6.

The Court elaborated on its reasoning at the motion to dismiss hearing, which it said should be deemed incorporated into its written order.  ECF No 89 at 16-17; ECF No. 88 at 1.  The Court emphasized that it was *not* "enough to say, this is the known admitted defect in the Note 7, therefore

it's the same defect in the others."  ECF No. 89 at 5.  It was "not enough of a link," and was "purely conclusory," to allege that the Note7 "admittedly had a number of events, and therefore because they share certain characteristics, there is a defect in the Subject Phones as well."  *Id.* at 14.  Plaintiffs needed "factual allegation[s] to support" such a conclusion, and the FAC came up empty.  *Id.* at 5.

The Court also dismissed Plaintiffs' claims on the independent ground that they "fail[ed] to sufficiently allege that Samsung had knowledge of the defect at the time of sale to Plaintiffs."  ECF No. 88 at 5.  The Court observed that the "scattered series of online reports" upon which Plaintiffs relied mostly "post-date individual Plaintiff's purchases, concern phones other than those at issue here, or involve overheating of phone chargers."  *Id.* at 5-6.  "In these circumstances," the Court held, "Plaintiffs have not sufficiently alleged that Samsung 'was aware of a defect at the time of sale to survive [the] motion to dismiss.'"  *Id.* at 6 (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012)).

The Court also dismissed Plaintiffs' claims for injunctive relief, ECF No. 88 at 4-5, and for unjust enrichment, *id.* at 6, and made several rulings on issues that are no longer part of the case, *id.* at 2-4.  Finally, the Court observed that Samsung had raised additional arguments in support of dismissal that the Court did not reach, and admonished Plaintiffs that "in any amended pleading, Plaintiffs should be mindful of any potential deficiencies identified by Samsung."  *Id.* at 5 n.4.

### E.      Plaintiffs' Second Amended Complaint

As the Court may recall, the plaintiffs compelled to arbitration failed to commence arbitration or otherwise pursue their claims, except that one plaintiff who, unlike the others, purported to have actually experienced a thermal runaway event, resolved his claim informally outside arbitration. Nearly two years after the Court's March 2018 orders, Plaintiffs advised the Court and Samsung that the compelled plaintiffs were withdrawing their claims, and moved to reopen the case for the remaining plaintiffs to file a second amended complaint.  Samsung cross-moved to dismiss for failure to prosecute.  While not condoning Plaintiffs' delay, the Court allowed Plaintiffs to reopen the case. ECF No. 107.  At the hearing on the cross-motions, the Court warned Plaintiffs that the forthcoming amended complaint would be their last because they were "on clear notice and ha[d] ample time to conduct whatever further investigation [was] necessary and to evaluate the defects that [the Court]

1   identified two years ago." ECF No. 106 at 18:12-15.

2           The seven remaining Plaintiffs (Atebar, Anguiano, Hernandez, Pirverdian, Salmasian, Dee,

3   and Sanchez) filed the SAC on May 11, 2020. Plaintiffs assert claims relating to the Samsung Galaxy

4   Note5, S6, S6 Edge, and S7, which they call the "Subject Phones." SAC ¶ 28. Atebar purchased a

5   Note5 in April 2016. *Id.* ¶ 10. Anguiano purchased an S6 Edge in April 2015. *Id.* ¶ 11. Hernandez

6   purchased an S6 in August 2015. *Id.* ¶ 12. Pirverdian purchased an S6 Edge in July 2015. *Id.* ¶ 13.

7   Salmasian purchased an S6 Edge in January 2016. *Id.* ¶ 14. Dee purchased an S7 in October 2016.

8   *Id.* ¶ 15. Sanchez bought an S6 in April 2015. *Id.* ¶ 16. All Plaintiffs are California residents and

9   assert claims solely under California law.

10          None of the Plaintiffs alleges that, in four or five years of owning the device, he or she has

11  ever experienced a thermal runaway event, defined as "high temperatures exceeding 1100 degrees

12  Fahrenheit" leading the battery to "catch fire or explode." *Id.* ¶ 31. Instead, Plaintiffs report widely

13  varying issues with their phones, ranging from their devices becoming "hot" or "warm to the touch,"

14  to "sluggishness," "shortened battery life," dropped calls, sending text messages to wrong numbers,

15  random screen dimming, pixilation issues, problems running applications, and difficulty connecting

16  to the internet. *Id.* ¶¶ 76-82. Plaintiffs conclusorily allege, however, that all of their phones suffer

17  from the same battery defect as the Note7, making them prone to thermal runaway events, and that

18  "had consumers been warned of the dangers of the products, they would not have purchased the

19  Subject Phones or would have paid less for the Subject Phones than they paid." *Id.* ¶ 65. Plaintiffs

20  therefore assert claims under California's Unfair Competition Law ("UCL"), False Advertising Law

21  ("FAL"), and Consumer Legal Remedies Act ("CLRA"), and for unjust enrichment, on behalf of

22  putative classes of all California purchasers of the Note5, S6, S6 Edge, and S7.

23                                          **ARGUMENT**

24  **I.      Plaintiffs Still Fail to Plausibly Plead that Their Phones Are Defective**

25          This Court previously held that Plaintiffs did not adequately plead that "each model of

26  Samsung phone at issue suffers from a defect." ECF No. 88 at 5; *see*, *e.g.*, *Azulai v. BMW of N. Am.*

27  *LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (dismissing for failure to allege "the

28  existence of a defect"); *Punian v. Gillette Co.*, 2016 WL 1029607, at *13 (N.D. Cal. Mar. 15, 2016)

(dismissing for failure to plausibly allege "any systematic design, technical, manufacturing, or other flaw present in all Duralock Batteries"); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 717, 797-80 (N.D. Cal. 2019) (dismissing for failure to plead with particularity a systemic defect causing smartwatch faces to tend to crack).[2]  Plaintiffs' theory amounted to a conclusory "piggyback on the Note7," resting on the notion that because the Note7 and the Subject Phones "share certain characteristics, there is a defect in the Subject Phones as well."  ECF No. 89 at 14.  As the Court explained, "[t]hat's not enough of a link" and is "purely conclusory."  *Id.*

        After two years and more than ample opportunity to refine their claims, Plaintiffs still have not plausibly pleaded a defect in *their* phone models.  Far from heeding the Court's guidance to stop "piggyback[ing]" on the Note7 and instead plead facts specific to their phones, Plaintiffs have doubled down on the specious proposition that the Note7 battery defect is common to all of their phones.  But the SAC contains no well-pleaded facts plausibly supporting that claim.

**A.      Plaintiffs' Shared-Characteristics Theory Remains Conclusory and Implausible**

        Plaintiffs contend that the batteries in their phones must be deemed to have the same defect as the Note7 batteries because they have two attributes in common:  they are "self-enclosed" and they are allegedly "manufactured by the same company (Samsung SDI)."  SAC ¶ 40.  But this is *exactly* the same logic that this Court rejected when it dismissed the FAC.  ECF No. 89 at 14.  The Court held that allegations that the Note7 and Plaintiffs' phones "share certain characteristics" were insufficient to support a claim that the Note7 and Plaintiffs' phones had the same battery defect.  *Id.*

        And even putting aside the Court's prior rejection of Plaintiffs' reasoning, the two particular "shared characteristics" that Plaintiffs identify do not remotely support their theory of a universal battery defect.  As for self-enclosed batteries, Plaintiffs' phones share this feature not just with the Note7, but with virtually all smartphones.  Plaintiffs' own sources incorporated by reference in the

---

[2] Plaintiffs must plead this and the other aspects of their claims with the particularity required by Fed. R. Civ. P. 9(b) because those claims sound in fraud.  *Sciacca*, 362 F. Supp. 3d at 797-98; *see generally Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-26 (9th Cir. 2009).  The allegations are insufficient, however, regardless of which pleading standard is applied.

complaint confirm that as of 2018, "[a]ll smartphones from Samsung, Sony, Apple, Huawei, and Nokia have non-removable batteries."  RJN, Ex. D at 5.  Plaintiffs of course do not contend that smartphones are universally defective, much less that every battery in every smartphone contains the exact same separator-related defect as the Note7.  On the contrary, they go out of their way to stress that Samsung's smartphones beginning with the 2017 "Galaxy S8 and onward" are *not* defective, even though they likewise have self-enclosed batteries.  *See*, *e.g.*, SAC ¶ 59, *see also id.* ¶ 2.  The Note7 root cause analysis upon which Plaintiffs rely did not draw any link between the battery defect in the Note7 and non-removability.

And Plaintiffs' non-removable battery theory is riddled with internal inconsistencies on its face.  On one hand, Plaintiffs concede that many phones with built-in batteries are *not* defective; but on the other, Plaintiffs assert that older phones with *removable* batteries have a similar propensity to go into thermal runaway.  Specifically, Plaintiffs insist that "[t]he problem dates back before the release of the Note5, the earliest model at issue in this litigation." *Id.* ¶ 49.  But "[p]rior to the Note5 and S6 models, the battery was removable." *Id.* ¶ 24.  Plaintiffs cannot simultaneously characterize the defect as (a) relating to *non-removability* of batteries yet (b) exemplified by phones with *removable* batteries.

Plaintiffs' common-battery-supplier theory fares no better.  It starts with an inaccurate premise and then leaps to a conclusion that would be untenable even if the premise were sound.  In articulating their defect hypothesis, Plaintiffs assert that the batteries in the S6, S6 Edge, S7, and Note5 and the "batteries utilized in the original Note7 production" were all "manufactured by the same company (Samsung SDI)." *Id.* ¶ 40.  As Plaintiffs concede elsewhere, however, the Note7 originally had two battery suppliers, SDI and Amperex Technology. *Id.* ¶ 27, 33.[3]  Nor can Plaintiffs' allegations that the Subject Phones had a universal defect because they all had SDI batteries be squared with their earlier allegation that the Note5, owned by Plaintiff Atebar, also had two battery suppliers, Amperex

---

[3] Samsung does not concede that Plaintiffs' allegations about the identities of battery suppliers are accurate as to the Subject Phones or any phone,  but assumes the truth of those allegations for purposes of this motion to dismiss.

1   Technology and SDI.  *Id.* ¶ 26.[4]

2          More importantly, even if SDI *had* supplied all of the batteries in all of the Note7s and Subject

3   Phones alike, that would not plausibly support an inference that all phones with SDI batteries have

4   the same physical defect as found in the Note7.  Regardless of the supplier, it is undisputed that the

5   batteries for the Subject Phones were all manufactured at different times to different specifications

6   unique to a given phone model.  SAC ¶¶ 26-27.  For example, Plaintiff Sanchez bought the Galaxy

7   S6 in April 2015, the same month it was launched—nearly a year and a half before Samsung launched

8   the Note7 with its own distinctive, higher-capacity battery.  *Id.* ¶¶ 16, 23, 27.  Indeed, Plaintiffs

9   concede (as they must) that batteries supplied by SDI are not defective merely because SDI supplied

10  them:  they allege both that SDI was the exclusive battery supplier for the Galaxy S8 and S8+, *id.*

11  ¶ 27, and that the S8/S8+ are *not* defective, *id.* ¶¶ 2, 59.  Simply put, that one component one supplier

12  custom-develops to fit a particular finished product is defective does not plausibly imply that *all*

13  components that same supplier has *ever* supplied for *other* finished products are similarly defective.

14         Plaintiffs provide an extended description of the defect that the root cause analysis found in

15  the Note7 batteries, and mischaracterize those findings as applying to *all* batteries manufactured by

16  SDI.  SAC ¶¶ 41-47.  But Plaintiffs omit the analysis's conclusion that the battery defects were, in

17  fact, "unique to the Note7 devices."  RJN, Ex. A (FAQ 1).  Plaintiffs cannot plausibly allege a defect

18  simply by taking information applicable only to the Note7 and misrepresenting it as pertaining to all

19  Samsung phones with SDI batteries.

20         For example, Plaintiffs posit that "[t]he batteries manufactured by Samsung SDI for the

21  Subject Phones" were defective because "[t]he defect, as admitted by SAMSUNG, is that a short

22  circuit within the battery may occur when there is damage to the separator that allows the positive

23  and negative electrodes to meet."  *Id.* ¶ 41.  But Samsung has never remotely "admitted" that the

24  batteries for the Subject Phones are defective or have compromised separators.  Even more misleading

25

26  _____

    [4] Compounding the deficiencies in the SAC, despite alleging that only SDI batteries are defective,

27  Atebar does not allege which of the two suppliers, SDI or Amperex Technology, supplied the battery

28  in his Note5.

is paragraph 47, where Plaintiffs state that a pouch in "*the batteries manufactured by Samsung SDI*" caused the negative electrodes to bend and damage the separator, and provide a graphic image purporting to illustrate this phenomenon in the Subject Phones.  What Plaintiffs fail to mention is that this image is from a CT scan of a *Note7*, published as part of the Note7 root cause investigation.[5]  The image and corresponding information were never about all batteries manufactured by SDI as a general category; they were about the specific SDI-manufactured batteries in the Note7.  Rule 9(b) does not allow Plaintiffs to build a fraud case on such sleights of hand.

**B.      Plaintiffs' Other Attempts to Establish a Common Defect Are Equally Baseless**

Plaintiffs also grasp at straws by suggesting that battery capacity may play some role in the supposed defect.  *See*, *e.g.*, *id.* ¶ 49 ("SAMSUNG made the choice to increase the power of the battery in the Subject Phones despite knowing" of risks); *id.* ¶ 26 ("When Samsung launched its S8 in 2017, after the Note7 recall, it scaled back the battery capacity.").  This suggestion once again does not mesh with Plaintiffs' own pleaded facts.  The Subject Phones' battery capacities themselves varied widely (2550 to 3000 mAh) and none matched the Note7's battery capacity of 3500 mAh.  *Id.* ¶ 27. And the Galaxy S8—which, again, Plaintiffs concede is *not* defective—itself had a 3000 mAh battery capacity, higher than or the same as the capacities of the Subject Phones.  *Id.*  The Galaxy S8+, which Samsung released simultaneously with the S8, has a capacity of 3500 mAh, the same as the Note7 and higher than any of the Subject Phones.  *Id.* ¶¶ 23, 27.  And the Galaxy S7 Active has a capacity of 4000 mAh, yet Plaintiffs do not contend it is defective either.  *Id.* ¶ 27.  In short, Plaintiffs' own allegations refute any notion that battery capacity establishes a cross-cutting defect common to the Note7 and the Subject Phones.

Desperate for anything to rehabilitate their infirm claims, Plaintiffs contend that actions

---

[5] Plaintiffs' reproduction of the image in paragraph 47 lacks any citation.  However, the image is prominently featured in a *Consumer Reports* article about the Note7 investigation that Plaintiffs cite in paragraph 45 of the SAC, accompanied by a caption that Plaintiffs disingenuously omit:  "This CT scan shows how a battery pouch deformed electrodes, leading to short circuits.  Phones using this type of battery were recalled on Sept. 15[, 2016]."  RJN, Ex. E.

Samsung took relating to its launch of the S8 constitute "an implicit admission that the safety standards and production processes at Samsung were not adequate before 2017." *Id.* ¶ 48; *see also id.* ¶¶ 37, 57-59.  Not so; taking additional precautions to help guard against a risk of defects in the future does not mean past products were defective.  Indeed, Federal Rule of Evidence 407 precludes inferring "a defect in a product or its design" from "subsequent remedial measures."  Fed. R. Evid. 407.  Courts therefore reject the use of such information to support an inference of a defect at the pleadings stage.  *See, e.g.*, *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1135 n.7 (N.D. Cal. 2010); *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009); *see also Pugh v. Tribune Co.* 521 F.3d 686, 695 (7th Cir. 2008) (applying subsequent remedial measures bar at pleadings stage in securities case).

### C.    The Contrasting Histories of the Note7 and Subject Phones Further Confirm the Implausibility of Plaintiffs' Claims

Not only have Plaintiffs failed to plausibly allege that the Subject Phones had the same battery defect as the Note7, the stark contrast between the histories of the Subject Phones and the Note7 further demonstrates the absurdity of that theory.  When the Note7 launched in the United States in August 2016, U.S. consumers within weeks reported approximately 100 thermal runaway events involving that device.  *See* RJN, Ex. G (96 incidents as of October 13, 2016).  In contrast, after having had years to exhaustively canvass CPSC databases and media outlets, Plaintiffs offer the following data about reports of overheating incidents with their phone models:

- The Note5 launched in August 2015.  SAC ¶ 23.  Plaintiffs have not identified a single report of a thermal runaway event involving a Note5 over the nearly five years since its launch.  *See id.* ¶ 51 (listing models referenced in CPSC reports—not including the Note5).

- The S6 launched in April 2015.  *Id.* ¶ 23.  The first S6 report Plaintiffs identify was on November 13, 2015, seven months later.  *Id.* ¶ 52.

- The S6 Edge also launched in April 2015.  *Id.* ¶ 23.  The first S6 Edge report Plaintiffs identify was on January 18, 2016, nine months later.  *Id.* ¶ 52.

- The S7 launched in March 2016.  *Id.* ¶ 23.  The first S7 report Plaintiffs identify was

on September 14, 2016, six months later.  *Id.* ¶ 68.

These are Plaintiffs' own pleaded facts:  "numerous" thermal runaway events were reported swiftly after the Note7 came on the market, *id.* ¶ 1; with the Subject Phones, the first incident was reported six, seven, or nine months later—or never.  Moreover, some of the reports listed in the CPSC database would not even qualify as "thermal runaway events" under the Plaintiffs' own definition, which requires the battery to "catch fire or explode."  *Id.* ¶ 31; *compare id.* ¶¶52-53 (describing events including phones "overheating").  As to their own experiences, none of the Plaintiffs alleges that, after more than 10,000 collective days of usage (4-5 years, 365 days/year, 7 Plaintiffs), the defect has manifested in a thermal runaway event affecting his or her phone.  And Plaintiffs' canvassing efforts located a grand total of two purported thermal runaway events and other incidents reported for the S6 Edge, six for the S6, and eight for the S7 over the entire four- to five-year periods since their respective launches:  small fractions of the number reported for the Note7 in less than one-twentieth of that time.[6]  *See id.* ¶¶ 52, 53, 68.

Courts have found that a few reports of product failures, out of millions of units of the product sold, do not plausibly suggest a systemic defect.  *See, e.g.*, *Punian*, 2016 WL 1029607, at *13 (dismissing for failure to plausibly plead leaking defect in batteries because "three consumer complaints over a two-year period, along with undisclosed other complaints, do not indicate any particular rate or magnitude or Duralock Batteries' potential to leak"); *Munch v. Sears, Roebuck and Co.*, 2008 WL 4450307, at *3, *6 (N.D. Ill. Sept. 30, 2008) (dismissing claims alleging defects in washing machines because plaintiffs did not provide "any standard by which to measure the alleged failure rate" and "the numbers of repairs are alleged . . . are a small portion of the 1.5 million machines sold").  The low numbers of reported incidents here—and lack of *any* such report for the Note5—likewise render a systemic defect in the Subject Phones implausible, even without comparing them

---

[6] These counts do not include a duplicate report for the S6 Edge (the same incident dated January 18, 2016 is listed in both paragraphs 52 and 53).  These counts also do not include incidents involving phone chargers or cords, as opposed to the phones themselves, as the Court previously recognized the irrelevance of such incidents.  ECF No. 88 at 5-6.

to the Note7.  But the problem with Plaintiffs' theory becomes even more glaring against the backdrop of the Note7 history.  It is inconceivable that if, as Plaintiffs theorize, the batteries and defect were all physically identical across the Note7 and the Subject Phones, the manifestation rate would differ by several orders of magnitude.

For all of these reasons, Plaintiffs have not come close to curing their failure to plausibly allege a defect in the Subject Phones, and the Court should dismiss the SAC with prejudice.

**II.     Plaintiffs Still Fail to Plausibly Plead Pre-Sale Knowledge of Any Defect**

Even if Plaintiffs had properly alleged the existence of a cross-cutting defect affecting all of their phones, they do not plausibly allege that Samsung had pre-sale knowledge of such a defect.  It is well-established that, under the applicable California statutes, Plaintiffs must allege that Samsung "was aware of the defect at the time of sale" to survive a motion to dismiss.  *Wilson*, 668 F.3d at 1147; *accord Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017); *Sciacca*, 362 F. Supp. 3d at 799-800; *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *7-9 (N.D. Cal. Mar. 9, 2020).

This Court previously held that Plaintiffs' prior complaint came up short on this requirement as well.  "Plaintiffs fail[ed] to sufficiently allege that Samsung had knowledge of the defect at the time of sale to Plaintiffs."  ECF No. 88 at 5.  The Court observed that "Plaintiffs rely on a scattered series of online reports, but many of those reports post-date individual Plaintiff's purchases, concern[ed] phones other than those at issue here, or involve overheating of phone chargers."  *Id.* at 5-6 (citing FAC ¶¶ 51-52).  Moreover, "a handful of complaints do not, by themselves, plausibly show that the defendant had knowledge of the defects and concealed the defects from customers."  *Id.* at 6 (quoting *In re Nexus 6P Prods. Liab. Litig.*, 2018 WL 1156861, at *5 (N.D. Cal. Mar. 5, 2018) (alterations omitted)).  This Court made clear that it "need[ed] more pleading on [Samsung's] knowledge, pre-purchase, for each of the Plaintiffs."  ECF No. 89 at 5.

Plaintiffs' SAC fails to cure this deficiency.  It primarily reuses the same "scattered series of online reports" as last time.  *Compare* SAC ¶¶ 53-54, *with* FAC ¶¶ 52-53.  In briefing Samsung's motion to dismiss the FAC, Plaintiffs represented "that there are many more consumer complaints that [they] could have included."  ECF No. 89 at 5.  Yet, despite more than ample time for further

1    research in the two years since the FAC was dismissed, and despite the Court's admonition that this

2    would be their last chance, ECF No. 106 at 18, the SAC does not identify a single additional report

3    of a thermal runaway event involving a Subject Phone in the United States.  Nor did Plaintiffs make

4    any effort to strip out reports "post-dat[ing] individual Plaintiffs' purchases, concern[ing] phones

5    other than those at issue here, or involv[ing] overheating of phone chargers."  ECF No. 88 at 6.

6         As the Court held in dismissing the FAC, consumer reports about phone models Plaintiffs did

7    not purchase cannot be used to establish that Samsung had pre-sale knowledge of a defect in the

8    phones Plaintiffs did purchase.  *See*, *e.g.*, *Wallace*, 2020 WL 1139649, at \*9 (holding that

9    manufacturer's "knowledge of a defect in the BL660 [blender] that [plaintiff] purchased" could not

10   be inferred from a pre-sale consumer report about a different model blender, the "Ninja Master Prep");

11   *Mandani v. Volkswagen Group of Am., Inc.*, 2019 WL 652867, at \*8 (N.D. Cal. Feb. 15, 2019)

12   (rejecting relevance of consumer report that "involved a different year and model vehicle" than the

13   one the plaintiff purchased); *Sciacca*, 362 F. Supp. 3d at 800 (reported incidents about prior model

14   watches did "not show Apple's knowledge of the defect . . . because the First Generation Watches are

15   distinct from and preceded the Series 1, 2, and 3 Watches" purchased by plaintiffs).  Plaintiffs cannot

16   recycle the same unverified consumer reports that this Court held failed to establish pre-sale

17   knowledge but expect a different result.  In fact, these lists are an even flimsier basis for establishing

18   pre-sale knowledge than they were before.  There are now only four "Subject Phones," compared to

19   eight in the FAC.  Consequently, an even greater proportion of the listed reports now "concern phones

20   other than [the Subject Phones]."  ECF No. 88 at 6.  And many of the phones that are the subject of

21   the reports do *not* have non-removable, SDI-made batteries, which Plaintiffs now hold out as the

22   essential features of the supposed defect.  *See* SAC ¶ 24 ("[p]rior to the Note5 and S6 models, the

23   battery was removable"); *id.* ¶ 52 (listing numerous reports involving the S2, S3, S4, S5, and Note2);

24   *id.* ¶ 27 (alleging that certain phones had Amperex Technology batteries).  The recycled lists thus

25   only undercut Plaintiffs' theory that Samsung should have known that the Subject Phones were prone

26   to thermal runaway events because they had non-removable, SDI-made batteries.

27        In a futile attempt to shore up pre-sale knowledge, Plaintiffs supplement the recycled lists with

28   two September 2016 news stories about reported thermal runaway events in the United Kingdom and

16

Philippines "before PLAINTIFF DEE purchased his Samsung Galaxy S7 smartphone." SAC ¶ 68. These irrelevant and insufficient reports cannot salvage Plaintiffs' claims. The Philippines report involved an S7 *Edge*—not a model that Plaintiff Dee (or any other Plaintiff) purchased. The other report involved an S7 sold in the U.K., but Plaintiffs do not plead that S7s sold in other countries necessarily have the same specifications and batteries as S7s sold in the United States. In any event, the list that the Court previously found insufficient already contained one reported S7 incident predating Plaintiff Dee's October 2016 purchase. ECF No. 88 at 6 (finding "handful of complaints" insufficient). Even if it could be credited, the U.K. report would simply add one more. As explained below, this remains far short of the number that would be necessary to support an inference of pre-sale knowledge of a systemic defect afflicting all S7s.

The same is true for all of the Subject Phones: the SAC does not come close to identifying enough consumer reports predating each Plaintiff's purchase to adequately allege that Samsung had pre-sale knowledge of a defect. All told, the SAC alleges zero reports of any thermal runaway events or other incidents associated with five of the Plaintiffs' phone models prior to their respective purchases. The other two Plaintiffs allege either one or two pre-purchase reports. In sum:

- As to Plaintiff Atebar, who bought a Note5, there are no reports of Note5 thermal runaway events ever—either before or after his purchase in April 2016.

- As to Plaintiffs Sanchez and Hernandez, there are no reports of S6 thermal runaway events before they purchased S6s in April and August 2015 respectively. The first S6 report is dated November 13, 2015.

- As to Plaintiffs Anguiano and Pirverdian, there are no reports of S6 Edge thermal runaway events before they purchased S6 Edges in April and July 2015 respectively. The first S6 Edge report is dated January 18, 2016.

- As to Plaintiff Salmasian, who bought an S6 Edge on January 29, 2016, the aforementioned January 18, 2016 report of an S6 Edge thermal runaway event predates his purchase by eleven days. There are no other pre-purchase reports.

- As to Plaintiff Dee, who bought an S7 in October 2016, Plaintiffs allege a grand total of two pre-purchase reports of S7 thermal events: the October 1, 2016 report

17

listed in paragraph 53, and the September 2016 U.K. media report discussed above.[7]

It is well-established in this Circuit that three reports of an issue with a product are insufficient to put a manufacturer on notice to support a consumer fraud claim under *Wilson*.  This Court already held—addressing virtually identical facts (save for the new, irrelevant allegation about an incident involving an S7 sold in the U.K.)—that "a handful of complaints do not, by themselves, plausibly show that the defendant had knowledge of the defects and concealed the defects from customers." ECF No. 88 at 6 (quoting *In re Nexus 6P Prods. Liab. Litig.*, 2018 WL 1156861, at *5 (alterations omitted)).  Other courts in this Circuit have overwhelmingly agreed.  *See*, *e.g.*, *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 2249605, at *7 (E.D. Cal. May 24, 2019) (finding three alleged pre-purchase reports to be "an insufficiently small number of complaints to show defendants' knowledge of the alleged defect" (internal quotation marks omitted)); *Olmos v. Harbor Freight Tools USA, Inc.*, 2018 WL 8804820, at *7 (N.D. Cal. Dec. 24, 2018) (holding that 10 pre-purchase reports were "an inadequate basis for . . . asserting pre-sale knowledge"); *Blissard v. FCA US LLC*, 2018 WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (finding 12 pre-purchase reports insufficient); *McVicar v. Goodman Global Inc.*, 2014 WL 12573992, at *8 (C.D. Cal. Nov. 13, 2014) (finding "one published customer complaint" prior to purchase "insufficient to show that [defendant] was aware of the defect"); *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (dismissing despite six online reports before certain plaintiffs' purchases); *Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (rejecting reliance on 3 to 12 pre-purchase reports because "[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect").  It necessarily follows that *zero* pre-purchase reports—the situation for five of the Plaintiffs—refutes pre-sale knowledge.  Thus, Plaintiffs have once again failed to adequately plead pre-sale knowledge, and the Court should dismiss the SAC with prejudice.

---

[7] Plaintiffs also allege a report dated September 26, 2016 related to an S7.  But that report concerns a "phone *charger* cord [that] was 'hot, melted and smoking,'" FAC ¶ 53 (emphasis added), and this Court already found reports related to chargers irrelevant to Plaintiffs' claims in its prior order, *see* ECF No. 88, at 5-6.

III.    **Plaintiffs Do Not Satisfy Additional Prerequisites for Omissions Claims Under California Law**

Even if Plaintiffs had adequately and plausibly pleaded the existence of a defect and pre-sale knowledge by Samsung of that defect, they do not meet several other requirements under California law:  (1) FAL claims cannot be based on omissions at all; (2) Plaintiffs do not plead facts satisfying any of the four *LiMandri* factors necessary for omissions to be actionable under the CLRA; and (3) Plaintiffs do not allege reliance.

A.    **Plaintiffs Do Not Allege Affirmative Statements Actionable Under the False Advertising Law**

Because the False *Advertising* Law by design regulates only affirmative "statements" by companies, Cal. Bus. & Prof. Code § 17500, a plaintiff who merely alleges, as here, "that a business omitted a material fact in its advertisements, labels, or literature has not stated a claim under the FAL." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), *aff'd on other grounds*, 891 F.3d 857 (9th Cir. 2018).  Indeed, "[t]here can be no FAL claim where there is no 'statement' at all." *Norcia v. Samsung Telecomms. Am., LLC*, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015); *see also Wallace*, 2020 WL 1139649, at *12; *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1089-90 (N.D. Cal. 2017), *aff'd*, 731 F. App'x 719 (9th Cir. 2018).  The complaint alleges no affirmative statements about battery safety or the risk of thermal runaway in the Subject Phones. Plaintiffs' FAL claims therefore fail for this reason alone.

B.    **Plaintiffs Do Not Plead Any of the Four Circumstances Creating a Duty to Disclose Under the CLRA or UCL**

While the CLRA and UCL, unlike the FAL, can potentially cover omissions, such a claim requires the plaintiff to plausibly plead one of four special factual circumstances, sometimes called the *LiMandri* factors:  "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Hodsdon*, 891 F.3d at 862 (quoting *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Cal. Ct. App. 2011)); *see also LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997).  An omissions claim

1    that is not accompanied by facts establishing one of the four *LiMandri* factors must be dismissed.

2    *See*, *e.g.*, *Kahn v. FCA US LLC*, 2019 WL 3955386, at *4-5 (C.D. Cal. Aug. 2, 2019); *Punian*, 2016

3    WL 1029607, at *9.

4            The SAC fails to plausibly plead the existence of any of the four special circumstances.

5    Plaintiffs do not allege a fiduciary relationship between Samsung and Plaintiffs.  As for "exclusive

6    knowledge," Plaintiffs do not adequately plead *any* pre-sale knowledge (exclusive or otherwise), *see*

7    *supra* Section II, but at a minimum, they can hardly characterize any such knowledge was "exclusive"

8    when the material Plaintiffs rely upon consists entirely of public sources.  *See*, *e.g.*, *Kahn*, 2019 WL

9    3955386, at *4; *Milman v. FCA U.S., LLC*, 2019 WL 3334612, at *6 (C.D. Cal. Apr. 15, 2019); *Harris*

10   *v. R.J. Reynolds Vapor Co.*, 2017 WL 3617061, at *2 (N.D. Cal. Aug. 23, 2017); *Andren v. Alere,*

11   *Inc.*, 207 F. Supp. 3d 1133, 1142-43 (S.D. Cal. 2016).

12           Nor do Plaintiffs offer facts that would support active concealment, which requires

13   "affirmative acts" of "hiding, concealing or covering up" the non-disclosed information.  *Punian*,

14   2016 WL 1029607, at *16.  The only allegations of this nature in the SAC are that Samsung

15   "attempt[ed] to conceal" the scope of *the Note7 issue* by trying to take down videos of Note7 thermal

16   runaway events through an offer to a Chinese consumer and a copyright notice to YouTube.  SAC ¶

17   66.  Of course, Samsung did not conceal the Note7 issue; Samsung conducted a voluntary recall that

18   Plaintiffs admit in the same breath was "well-publicized."  *Id.*  More importantly, these allegations

19   have nothing to do with Plaintiffs' claims in this case, which involve phones other than the Note7.

20   Finally, Plaintiffs do not allege any "partial representations" about their phones that became

21   misleading because some other material fact was not disclosed.  As noted above, Plaintiffs allege no

22   affirmative representations about battery safety or the risk of thermal runaway in the Subject Phones,

23   so this is not a situation where "qualifying information" was needed in order to make any alleged

24   statement by Samsung non-misleading.  *See Punian*, 2016 WL 1029607, at *10 n.4.

25           **C.       Plaintiffs Do Not Plausibly Plead Reliance**

26           Plaintiffs also fail to allege reliance.  For a "fraudulent omission" claim, the "plaintiff must at

27   least plead that he or she saw and relied on the materials that might have contained a disclosure of a

28   defect."  *McVicar*, 2014 WL 12573992, at *11; *accord, e.g.*, *Seldin v. HSN, Inc.*, 2018 WL 3570308,

at *4 (S.D. Cal. July 25, 2018) (no material omission because "Plaintiff has not alleged that she heard any of Defendants' representations or saw any warning labels on the product at issue," and she is therefore "unable to adequately plead her ability to have seen any material information that would have affected her purchase decision"); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (dismissing because "Plaintiff does not allege that, before he bought his MINI, he reviewed any brochure, website, or promotional material that might have contained a disclosure of the [windshield] cracking defect"); *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *12 (C.D. Cal. June 24, 2016) (observing that omissions claim "must fail" where the plaintiffs do not allege they "viewed a website, advertisement, or other material that could plausibly contain the allegedly omitted fact" (internal quotation marks omitted)).

Plaintiffs were fully on notice of this flaw, which Samsung raised in its prior motion to dismiss. ECF No. 69 at 23; *see also* ECF No. 88 at 5 n.4 (Court's direction to Plaintiffs to "be mindful" in "any amended pleading" of the other deficiencies identified by Samsung). Yet the SAC contains no new allegations relating to reliance or even attempting to satisfy the reliance requirement. To be sure, the SAC contains  ample information about Plaintiffs, their purchases, and their experiences: Paragraphs 10 through 16 allege what phone each Plaintiff purchased and on what date, and paragraphs 76 through 82 allege "PLAINTIFFS' EXPERIENCES"—consisting of an assortment of miscellaneous nuisances (not thermal runaway events) while they have owned their phones. However, not one of the seven "Plaintiffs' experiences" includes "review[ing] any brochure, website, or promotional material that might have contained a disclosure of the [alleged battery] defect" prior to their purchases. *Ehrlich*, 801 F. Supp. 2d at 919. Consequently, Plaintiffs' fraud-based claims fail and must be dismissed.[8]

---

[8] The discussion in Sections I, II, and III above disposes of all three aspects of Plaintiffs' UCL claim: the fraud prong, the unfair prong, and the unlawful prong.   "[T]he failure to disclose . . . a defect of which [the manufacturer] is not aware[] does not constitute an unfair or fraudulent practice" under the UCL.  *Wilson*, 668 F.3d at 1146 n.5; *accord Hodsdon*, 891 F.3d at 867; *Wallace*, 2020 WL 1139649, at *13; *see also Hadley v. Kellogg Sales Co.*, 2017 WL 1065293, at *20 (N.D. Cal. Mar.

**IV.     Plaintiffs' Claim for Unjust Enrichment Also Fails**

Plaintiffs premise their unjust enrichment claim on the same allegations underlying their statutory claims—*i.e.*, that Samsung allegedly engaged in "wrongful and fraudulent acts and omissions" that allowed it to "charge[] a higher price for the Subject Phones than the Subject Phones' true value." SAC ¶ 113. Plaintiffs' unjust enrichment allegations therefore are also subject to Rule 9(b)'s heightened pleading requirements, and the unjust enrichment claim fails for the same reasons as the statutory claims. *See, e.g., see Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009). Because Plaintiffs have not plausibly pleaded that their phones had any defect, there is no basis for the premise that the prices charged differed from the "true value."

Plaintiff's unjust enrichment claim also fails because California law does not permit an action in quasi-contract where, as here, a "binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). Here, a binding contract exists between Plaintiffs and Samsung by way of Plaintiffs' purchases of their respective smartphones, and the parties' rights regarding remedies are set forth in Samsung's express warranty. *See Kerkorian v. Samsung Elecs. Am., Inc.*, 2019 WL 6918293, at *7 (E.D. Cal. Dec. 19, 2019); *accord Sciacca*, 362 F. Supp. 3d at 802 (dismissing unjust enrichment claim where limited warranty barred "advancing unjust enrichment as an alternate theory of recovery"). That limited warranty covers "defects in material and workmanship under normal use" of the phones and constitutes "the exclusive remedy regarding the products." RJN, Ex. B. The sole and exclusive remedy under the express warranty for an allegedly defective device is that "Samsung will repair or replace the Product, at [its] sole option, without charge." *Id.* Because Samsung's limited warranty is a binding agreement that sets forth Plaintiffs' rights by expressly limiting their remedies to a repair or replacement and

---

21, 2017) (UCL unfairness claim based on "business practices" that "overlap entirely" with those "addressed in the fraudulent and unlawful prongs . . . cannot survive if the claims under the other two prongs of the UCL do not survive"). Plaintiffs' UCL unlawfulness is expressly predicated on alleged violations of the CLRA and FAL and thus likewise stands or falls with those counts. SAC ¶ 97.

precluding alternate theories of contract, Plaintiffs may not recover under a claim in quasi-contract, such as unjust enrichment.[9]

## CONCLUSION

For the reasons discussed above and those set forth in the Court's prior dismissal order,[10] the Court should dismiss Plaintiffs' claims with prejudice.

DATED: June 8, 2020

/s/ Robert J. Katerberg
Robert J. Katerberg (admitted *pro hac vice*)
Elisabeth S. Theodore (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999
robert.katerberg@arnoldporter.com
elisabeth.theodore@arnoldporter.com

*Attorneys for Defendants*

---

[9] Plaintiffs' unjust enrichment claim also fails because California does not recognize unjust enrichment as a cause of action at all. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (Cal. Ct. App. 2010). Moreover, to the extent Plaintiffs' unjust enrichment claim is construed as a claim in quasi-contract for restitution, California bars such claims where, as here, Plaintiffs have access to adequate legal remedies. *See In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 923 (9th Cir. 2014); *Yordy v. Plimus, Inc.*, 2012 WL 2196128, at *7 (N.D. Cal. June 14, 2012); *Ivie v. Kraft Foods Global, Inc.*, 2015 WL 183910, at *2 (N.D. Cal. Jan. 14, 2015).

[10] In addition to the issues discussed above, the Court previously held that Plaintiffs lacked standing to seek injunctive relief because they did not plead facts satisfying *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). ECF No. 88, at 4-5. It is unclear whether Plaintiffs intend to seek injunctive relief in the SAC: the caption and prayer relief still mention injunctive relief, but the body of the complaint has been purged of any references and Plaintiffs concede that Samsung phone models since 2017 are not defective. To the extent Plaintiffs may persist in seeking injunctive relief, they continue to lack standing because they did not add any allegations addressing the *Davidson* requirements.