ANNE MARIE MURPHY (SBN 202540)
amurphy@cpmlegal.com
ANYA THEPOT (SBN 318430)
athepot@cpmlegal.com
ANDREW F. KIRTLEY (SBN 328023)
akirtley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

GENE J. STONEBARGER (SBN 209461)
gstonebarger@stonebargerlaw.com
CRYSTAL L. MATTER (SBN 278084)
cmatter@stonebargerlaw.com
**STONEBARGER LAW, APC**
101 Parkshore Dr., Suite 100
Folsom, CA 95630
Telephone: (916) 235-7140
Facsimile: (916) 235-7141

*Interim Co-Lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE: SAMSUNG GALAXY SMARTPHONE MARKETING AND SALES PRACTICES LITIGATION** | Case No.: 5:16-CV-06391<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMEND CONSOLIDATED CLASS ACTION COMPLAINT** |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   RELEVANT FACTS .........................................................................................2

    A.   The Dangers of the Lithium Ion Batteries in Samsung's Galaxy and Note Products..........2

    B.   Defective Batteries Manufactured by Samsung SDI in the Subject Phones are Prone to Overheating and Thermal Runaway Events ................................................2

    C.   Samsung Was and Is Aware of the Overheating Problems with the Subject Phones, But Failed to Fix the Problem or Warn Consumers ................................................3

III.  LEGAL ARGUMENT .......................................................................................4

    A.   Plaintiffs Plausibly Plead that Samsung's Phones are Defective...........................4

        1.   Plaintiffs' Shared Characteristics Theory is Factual and Plausible ..............6

        2.   Plaintiffs Establish a Common Defect .........................................................7

        3.   The SAC Contains Ample Allegations Regarding the Subject Phones Confirming the Plausibility of Plaintiffs' Claims......................................9

        4.   Plaintiffs Alleged a Detailed Complaint History Regarding the Defects at Issue ........9

    B.   Plaintiffs Sufficiently Allege that Samsung Was Aware of the Defect in the Subject Phones Prior to Plaintiffs' Purchases of their Phones......................................10

        1.   Plaintiffs Allege Numerous Complaints Posted to Government Websites Dated Prior to Plaintiffs' Dates of Purchase..........................................11

        2.   Consumer Reports Dated Prior to Plaintiffs' Purchases About Smartphone Models Released Prior to the Subject Phones Can Be Used to Establish Samsung's Pre-Sale Knowledge of the Defect in the Subject Phones.........................................12

    C.   Plaintiffs Have Sufficiently Alleged Samsung's Knowledge Because Samsung Took Multiple Actions to Respond to the Consumer Complaints At Issue ...............................14

    D.   Plaintiffs Have Adequately Alleged a False Advertising Law Claim .............................15

    E.   Plaintiffs Have Adequately Alleged Claims under the CLRA and the Unfair Competition Law ..............................................................................................16

        1.   A Duty to Disclose Under the CLRA and UCL Arises from Samsung's Superior Knowledge of Material Information ..............................................16

        2.   In Violation of the CLRA and UCL Samsung Did Not Disclose the Subject Phones' Propensity to Overheat, Catch Fire and Explode, Instead Making Partial Representations While Suppressing Material Facts......................................17

    F.   Plaintiffs Have Adequately Pled Reliance......................................................17

G. Plaintiff's Unjust Enrichment Claim is Properly Alleged ...................................................19

**IV.     CONCLUSION** ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azoulai v. BMW of N. Am. LLC*,
    2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ........................................................... 5

*Baba v. Hewlett-Packard Co.*,
    2011 WL 317650 (N.D. Cal. Jan. 28, 2011) .......................................................... 12

*City of Los Angeles v. Wells Fargo & Co.*,
    22 F.Supp.3d 1047 (C.D. Cal. 2014) ..................................................................... 19

*Coleman-Anacleto v. Samsung Elecs. Am., Inc.*,
    2016 WL 4729302 (N.D. Cal. Sept. 12, 2016) ...................................................... 14

*Day v. AT & T Corp.*,
    63 Cal.App.4th 325 (1998) .................................................................................... 17

*Donohue v. Apple, Inc.*,
    871 F.Supp.2d 913 (N.D. Cal. 2012) ................................................................... 13

*Durell v. Sharp Healthcare*,
    183 Cal.App.4th 1350 (2010) ............................................................................... 19

*Ehrlich v. BMW of N. Am., LLC*,
    801 F.Supp.2d 908 (C.D. Cal. 2010) .................................................................... 18

*Elias v. Hewlett-Packard Co.*,
    2014 WL 493034 (N.D. Cal. Feb. 5, 2014) .......................................................... 17

*Falk v. GMC*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................... 17

*Grodzitsky v. Am. Honda Motor Co.*,
    2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........................................................ 14

*Hodsdon v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) ............................................................... 15

*Johnson v. Harley-Davidson Motor Co. Grp.*,
    LLC 285 F.R.D. 573 (E.D. Cal. 2012) ................................................................. 17

*Levine v. Blue Shield of California*,
    189 Cal.App.4th 1117 .......................................................................................... 19

*LiMandri v. Judkins*,
    60 Cal.Rptr.2d 539 (Cal. Ct. App. 1997) ....................................................... 16, 17

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) ........................................................ 19

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009) .......................................................... 17

*McCarthy v. Toyota Motor Corp.*,
   2019 WL 3220579 (C.D. Cal. Apr. 9, 2019) ..................................................... 10, 13

*McVicar v. Goodman Glob. Inc.*,
   2014 WL 12573992 (C.D. Cal. Nov. 13, 2014)..................................... 13, 14, 15, 17

*McVicar v. Goodman Glob. Inc.*,
   2015 WL 12698408 (C.D. Cal. May 20, 2015) (reconsidering Nov.13, 2014
   Order dismissing HUCL-fraud, CLRA, and FAL claims and allowing plaintiff
   to pursue those claims)........................................................................................... 15

*Munch v. Sears, Roebuck & Co.*,
   2008 WL 4450307 (N.D. Ill. Sept. 30, 2008) ......................................................... 9

*In re My Ford Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................... 17

*Naoko Ohno v. Yuko Yasuma*,
   723 F.3d 984(9th Cir. 2013) .................................................................................. 19

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F.Supp.3d 888 (N.D. Cal. 2018) ...................................................................... 11

*Pugh v. Tribune Co.*
   521 F.3d 686 (7th Cir. 2008) .................................................................................... 8

*Punian v. Gillette Co.*,
   2016 WL 1029607 (N.D. Cal. Mar. 15, 2016)............................................... 5, 9, 10

*Sciacca v. Apple, Inc.*,
   362 F.Supp.3d 787 (N.D. Cal. 2019) ................................................................. 5, 12

*Sloan v. Gen. Motors LLC*,
   287 F.Supp.3d 840 (N.D. Cal. 2018) ...................................................................... 10

*" Sprint Nextel Corp. v. Welch*,
   *2014 WL 68957* (E.D. Cal. Jan 8, 2014) .......................................................... 18, 19

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009)........................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Littig.*,
   2011 WL 4345435 (N.D. Cal. Sept. 15, 2011) ...................................................... 19

*Tietsworth v. Sears, Roebuck and Co.*,
   720 F.Supp.2d 1123 (N.D. Cal. 2010) ............................................................... 8

*Tomek v. Apple Inc.*,
   636 F. App'x 712 (9th Cir. 2016) ................................................................... 12

*Wallace v. SharkNinja Operating, LLC*,
   2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) ................................................... 7

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ....................................................................... 11

**Other Authorities**

Federal Rule of Civil Procedure

   § 9(b) ....................................................................................................... 5, 10

   § 56 ............................................................................................................. 20

Federal Rules of Evidence

   § 407 ............................................................................................................. 8

Local Rule 5-1(i)(3), I ................................................................................. 21

Plaintiffs OMAR ATEBAR, LIZETT ANGUIANO, TOMAS HERNANDEZ, ERIC PIRVERDIAN, TOMIG SALMASIAN, DIOR DEE, and JESUS SANCHEZ (collectively hereinafter, "Plaintiffs") hereby respond to SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.'s (collectively hereinafter, "Samsung") Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint ("Motion" or "Mot.") as follows:

## I.    INTRODUCTION

Plaintiffs have carefully considered the Court's prior order and have made significant additions to their operative complaint. Remaining at issue in this case are four Galaxy model smartphones the: S6, S6 Edge, S7, and Note5 (the "Subject Phones"). Samsung was made repeatedly aware of issues with its smartphones (even before the complete recall of the Galaxy Note7) yet failed to warn consumers of the dangers posed by the phones. Samsung markets its phones as durable, reliable, and the hub of consumers' lives. Samsung expects and encourages consumers to use their smartphones for all aspects of their lives and to always have their smartphones with them. Despite this expected ubiquity, Samsung concealed from consumers that the smartphones at issue in this litigation are unduly prone to overheating and thermal runaway.

Plaintiffs Second Amended Consolidated Class Action Complaint ("SAC") plausibly alleges specific defects related to the Subject Phones. Additionally, Plaintiffs sufficiently allege Samsung's presale knowledge of the defect because the SAC lists dozens of complaints to a government website, acknowledged by Samsung, including complaints that pre-date the first Plaintiff's purchase by more than two years.

Accordingly, the Court should deny Samsung's Motion and allow Plaintiffs to proceed in this litigation on behalf of Plaintiffs and each member of the Class owning the relevant Samsung smartphones that have a dangerous propensity to overheat, catch fire, and/or explode.

/././

/././

/././

/././

## II.     RELEVANT FACTS

### A.     The Dangers of the Lithium Ion Batteries in Samsung's Galaxy and Note Products

The dangers posed by lithium ion batteries made headlines in 2016 when numerous Samsung Note7 devices exploded and burst into flames. ¶29[1]. Eventually Samsung issued a worldwide recall of the Note7, but some executives "were skeptical the incidents [fires] amounted to much."  ¶¶29, 33-35. Samsung issued a root cause analysis of the Note7 thermal runaway events claiming multiple manufacturing defects in the first batch of Note7s, as well as in the replacement Note7s.  ¶36.

This action centers around the dangers posed by the batteries in Samsung Galaxy S6, S6 Edge, S7, and Note5 Phones (the "Subject Phones"). ¶¶1, 28. The Subject Phones, as well as the recalled Note7, contained lithium-ion batteries manufactured by Samsung SDI. ¶¶27 (chart detailing battery capacity and manufacturers of Samsung's Note and Galaxy devices), 28. The Subject Phones all pose a risk of overheating, fire and explosion as they were designed, engineered, developed, manufactured, produced and/or assembled in a substantially similar manner to the Note7. ¶28.

### B.     Defective Batteries Manufactured by Samsung SDI in the Subject Phones are Prone to Overheating and Thermal Runaway Events

Samsung's "Galaxy S" and "Galaxy Note" phones, like other consumer electronics, are powered by lithium ion batteries. ¶¶24, 30. However, unlike Samsung's prior models which used removable batteries, the Subject Phones feature batteries that are not removable.  ¶39. Samsung introduced this design change with the Subject Phones in order to push the envelope of creating sleeker phones with faster charge times.  ¶¶38-39.

"The batteries manufactured by Samsung SDI for the Subject Phones contained the same defect as original batteries in the Note7."  ¶41. "Samsung's battery problems were a result of Samsung's attempt to maximize battery life while cramming components and custom-designed

---

[1] Unless otherwise specified, all references to "¶" are reference to paragraphs of the SAC.

batteries into ever-thinner phone hardware." *Id.* The defect, as admitted by Samsung, is that a short circuit within a lithium ion battery may occur when there is damage to the thin separator that divides positive electrodes and positive and negative electrodes are allowed to meet.*" Id*

In all batteries, electrodes are not meant to touch. ¶44. Nonetheless, Samsung lithium ion batteries manufactured by Samsung SDI used a high-energy cathode to maximize battery energy density and a thin separator between the cathode and anode to reserve volume for more active components and materials. ¶¶45-46. This design is problematic because separators are made from micro-permeable porous membranes which can be penetrated by tiny needle-like structures, called "dendrites," that can form inside of a battery during charge cycles. *Id.* Thin separators increase the chance of a battery short because it makes it easier for dendrites to penetrate the separator, much like the way a weed can poke through pavement. *Id.* Dendrite penetrations form "pinholes" that can lead to overheating and/or a heat and safety event.  *Id.*

Furthermore, the batteries manufactured by Samsung SDI featured a polymer pouch that did not provide enough room for negative electrodes in the batteries' upper-right corner. ¶47.  The negative electrodes bended and stretched the separator when they were deflected into the batteries' upper-right corner. *Id.* When the separator failed, the cell would short circuit, and could cause a thermal runaway event. *Id.* An additional contributing factor was the tip of the negative electrode was incorrectly located in the curve, not the planar area.  *Id.*

### C.    Samsung Was and Is Aware of the Overheating Problems with the Subject Phones, But Failed to Fix the Problem or Warn Consumers

Outside of the Note7 recall, Samsung has taken no steps to recall or warn consumers about the risks of overheating, fire and explosion posed by its Subject Phones during normal use. It denies that the Subject Phones are dangerous or defective. ¶48. Even though Samsung denies that the Subject Phones are dangerous or defective, Samsung instituted an "Eight-Point Battery Safety Check."  ¶¶57-58. This emphasis on safety comes too late for Plaintiffs and other purchasers of the Subject Phones but does "stand as an implicit admission that the safety standards and production processes at Samsung were not adequate before 2017.  ¶48.

As detailed at length in the SAC, Samsung had good reason to be concerned about overheating in its smartphones. ¶50. The occurrence of similar incidents in other models of Samsung phones and electronic devices has been reported through the media and consumer protection agencies for years. *Id.* Despite knowledge and awareness, Samsung failed to fix the root problem, notify or warn the public of the dangers its electronic devices presented, initiate a recall of all devices where overheating, explosion, and/or fire were foreseeable, or otherwise address the problem. ¶¶50-54. The SAC lists fifty-three reports: twenty-three dated CPSC reports and twenty-seven dated posts from saferproducts.gov, and two articles which Samsung directly responded to in the Philippines and in the United Kingdom. ¶¶52-53, 68.

Despite knowledge of the overheating problem existing across multiple models and generations of Samsung Galaxy phones and despite choosing to put increasingly powerful batteries in smaller spaces in the Subject Phones, Samsung concealed from consumers the risks of fire, explosion and overheating" and continued to advertise the Subject Phones as having "next level performance," "next level charging," "fast charging." ¶¶60-66.

Each of the Subject Phones "is unsafe for its intended use by reason of defects in its design, engineering, development, manufacturing, testing, production, and/or assembly, such that it cannot safely serve its purpose, but can instead expose the public and Plaintiffs to serious injury." ¶¶72-75.

## III.   LEGAL ARGUMENT

### A.   Plaintiffs Plausibly Plead that Samsung's Phones are Defective

Plaintiffs plausibly plead a defect. There remain at issue four sub-models of Samsung Galaxy phones, to wit, the S6, S6 Edge, S7, and Note 5. ¶¶1, 28. The SAC contains substantially more detail than the prior complaint and adequately pleads that the Subject Phones suffer from a defect, curing the Court's prior concern. *See*, ECF No. 88 at 5. The SAC alleges that the Galaxy line, pre-S8, is defective. ¶2. Plaintiffs each have a Galaxy phone that has the dangerous propensity to overheat, catch fire and/or explode. ¶4. The Subject Phones are the first Galaxy line phones to have nonremovable batteries. ¶24. As detailed in the SAC, Samsung kept steadily increasing the battery capacity of the Galaxy phones, until the S8, which followed the recalled

Note7.  ¶¶26-28.  The SAC contains a detailed analysis of how Samsung pushed boundaries and jeopardized safety with the Subject Phones, in essence trading safety for a thinner phone with higher battery capacity by switching to a non-removable battery.  ¶¶38-41.

The cases cited by Samsung hinged on the nature of the statements and the alleged harm. For instance in *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) this Court considered a self-closing system for BMW cars which were advertised as safe, however, the system did not prevent consumers from slamming their fingers in the door which this Court found to be an "anticipated risk of using any door."  *Id.* *9.  In contrast, reasonable consumers should be able to expect that smartphones will not be subject to undue overheating, fire and explosion – no one expects that the phone they are sleeping next to will blow up; this is even more true when the manufacturer chooses to affirmatively advertise the device as durable and reliable.

Samsung cites *Punian v. Gillette Co.,* 2016 WL 1029607, at *13 (N.D. Cal. Mar. 15, 2016), stating that the court dismissed the case for failure to plausibly allege "any systematic design, technical, manufacturing, or other flaw present in all Duralock Batteries."  The quoted language is in the decision, however, and the sentence after the one cited by Samsung continues, "Plaintiff does not allege any cause for Duralock Batteries' potential to leak."  *Punian,* 2016 WL 1029607, at *13.  Here, plaintiffs have described the defect.  The problem is not just that the phones overheat—it is that Samsung cut corners to construct a phone with characteristics (thinness and power) that are desired by consumers.

Samsung next cites to *Sciacca v. Apple, Inc.*, 362 F.Supp.3d 787, 797-80 (N.D. Cal. 2019). In *Sciacca* the plaintiff alleged that all Apple Watches were defective and the defect caused the screen to crack, shatter or detach—the court held that a mere description of the consequences of a defect, with no description of the defect itself does not satisfy Rule 9(b).  Here, the court challenged Plaintiffs to include more specificity regarding the alleged defect in the Subject Phones. ECF 89, Tr. March 29, 2018 at 5:7-13; 10:23-24 (Plaintiffs "need[] to better identify the defect" but they do not need "to rule out any other possible cause of the defect. I just think [Samsung] need[s] to be on a little bit more notice.")

Plaintiffs heeded the Court's admonishment that they needed to do more than just cite to the Note7.  The SAC includes new facts regarding the defective batteries manufactured by Samsung SDI for the Subject Phones.  ¶¶40-41.  While Plaintiffs believe that the Note7 analysis is highly relevant, they have included a great deal more specificity in the SAC regarding the defect in the Subject Phones, including facts related to Samsung's use of a high energy cathode in its lithium ion batteries to maximize battery energy density and its use of a thin separator between the cathode and anode to reserve room for more active components and materials.  ¶¶45-46. Plaintiffs allege that thin separators increase the chance of a battery short because it makes it easier for "dendrites" to penetrate the separator forming "pinholes" that can lead to overheating and/or a heat and safety event.  ¶46.  Plaintiffs also allege that the batteries manufactured by Samsung SDI featured a polymer pouch that did not provide enough room for negative electrodes in the batteries' upper-right corner and the separator could be bended and stretched when negative electrodes deflected into the batteries' upper-right corner.  ¶47.

### 1.  Plaintiffs' Shared Characteristics Theory is Factual and Plausible

Samsung ignores the significant new detail contained in the SAC, which is described in Section II.B.  Plaintiffs object to Samsung's request for judicial notice.  *See* Plaintiffs' Opp. To Samsung's RJN, filed herewith. Regardless, it does not matter to Plaintiffs' theory of the case that by 2018 primary phone manufacturers were using nonremovable batteries.  The Subject Phones were released in 2015 and 2016.  ¶23.  As alleged in the SAC, the issue is that Samsung pushed the envelope when it began using non-removable batteries to create thinner, more powerful phones.  ¶39.  The S8 was released in April 2017, it had a nonremovable battery, but did not suffer from the safe propensity for overheating and fire as the Subject Phones, as Samsung rethought safety and battery design issues before issuing the S8.  ¶57, fn. 43, 59.  Plaintiffs do not allege that all phones manufactured with a nonremovable battery are defective.

At the last motion to dismiss hearing, the court challenged plaintiffs to provide additional detail about the specifications of the Subject Phones and more detail about the alleged defect. Plaintiffs have met these challenges.  *See* Section II.A (titled "The Dangers of the Lithium Ion Batteries in Samsung's Smartphones").  The SAC includes new information regarding the model

numbers, part numbers, and battery manufacturers for the Subject Phones.  ¶27.  As this court

stated in *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *6 (N.D. Cal. Mar. 9,

2020), "a plaintiff is not required to allege the precise cause of a defect." (*citing Hardt v. Chrysler

Grp. LLC*, 2015 WL 12683965, at *5 (C.D. Cal. June 15, 2015)).  This Court continued in

*SharkNinja* to note that "[a]fter all, it is typically difficult for a plaintiff to discern the mechanical

workings of a product at the pleading stage."  *Id*.

### 2.      Plaintiffs Establish a Common Defect

Samsung's brief continues with hyperbole, claiming plaintiffs "grasp at straws by

suggesting that battery capacity may play some role in the supposed defect."  ECF No. 112, 12:9-

21.  As alleged, battery capacity is a core element of Plaintiffs' claim—as Samsung raced to

produce thinner, higher-capacity Galaxy phones, corners were cut and defects were introduced,

these problems plagued the Galaxy line until the S8.

Samsung claims the Subject Phones' capacity "varied widely" from 2250 to 3000 mAh

and did not reach the Note7's 3500mAh capacity. Samsung further claims that plaintiffs are to

fault for not claiming that the S7 Active (with a 4000 mAh capacity) is defective.  ECF No.

112,12:9-21.  First, a 50 mAh variance is not "wide" – but that is beside the point – there are only

four Subject Phones in the SAC because the court found specific arbitration clauses enforceable,

thus culling the scope of this case.  As originally filed, the case involved eight models, three with

capacity that was the same, or greater, than the Note7, including the S7 Active.  *See* ECF No. 65,

Am. FAC, ¶95 (S7 Active included in class definition).  It makes no sense that Samsung now

criticizes Plaintiffs for not contending that the S7 Active is defective when it was included in the

earlier class definition—further the SAC alleges that the Galaxy phones pre-S8 were prone to

excessive overheating and thermal runaway events—this encompasses the S7 Active, although

the S7 Active is not a Subject Phone because of the arbitration ruling.

Samsung next argues that plaintiffs cannot rely upon Samsung's changes in manufacturing

protocols starting with the S8 and resulting elimination of consumer complaints regarding

overheating and thermal runaway, to support plaintiffs' claim that the pre-S8 models had a defect.

First, at issue is Samsung's challenge to the pleadings—not an offer of evidence at trial.  Second,

Federal Rules of Evidence 407 is not absolute.  Plaintiff are tasked at this stage to show plausibility, not to prove the case.   Further, Samsung argues that all lithium ion batteries are prone to overheating and thermal runaway (*see* Mot. p. 3), however, FRE 407 allows evidence of subsequent measures to prove the feasibility of precautionary measures.  The cases that Samsung cites are not persuasive.

If Samsung's contention is true that all lithium ion batteries are prone to overheating and thermal runaway, then that would include the batteries in the Subject Phones which supports Plaintiffs' claim that notice of these risks should have been expressly provided to consumers.

The first of three cases cited by Samsung, *Tietsworth v. Sears, Roebuck and Co.*, 720 F.Supp.2d 1123, 1135 n.7 (N.D. Cal. 2010) involved allegedly defective washing machines – the footnote cited by Samsung states that plaintiffs cannot rely upon the manufacturers' "secret warranty program" as evidence of a defect because "return of a defective product" is a "standard business practice."  Tied into the "secret warranty program" was an offer by Sears to provide an upgraded control board—the court found that this was not evidence of a defect. Samsung next cites *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931 (N.D. Cal. June 5, 2009*)* a putative class action involving mold in mattresses.  The pin cite used by Samsung is to the decision's analysis of the concealment claim and whether plaintiffs could meet a five-point test for pleading concealment.  In *Stearns,* the court found that the fact that the company offered a full refund to complaining consumers does not support the claim that the company intended to deceive customers.  *Id.*at *9.

Finally, Samsung cites *Pugh v. Tribune Co.* 521 F.3d 686, 695 (7th Cir. 2008) as "applying [a] subsequent remedial measures bar at pleadings stage in securities case."  At issue in *Pugh* were fraudulent circulation figures for publications, that allegedly led to increased advertising revenue.  Review of the cited passage shows that the analysis was specific to the claims in the case and that the court was not willing to infer fraudulent intent from a subsequent remedial measure of required certification of circulation figures.

/././

/././

3. **The SAC Contains Ample Allegations Regarding the Subject Phones Confirming the Plausibility of Plaintiffs' Claims**

As described in Section II of this Opposition (Relevant Facts), the SAC contains ample allegations regarding overheating and thermal runaway events in the Subject Phones and related series models.  This case concerns both overheating and thermal runaway events.  Samsung claims that plaintiffs fail to show any relevant events for the Note5.  However, Plaintiff Atebar personally experienced overheating that interfered with his use of the phone, including numerous overheating warnings using his Note5.  ¶76.

As to the S6, another series Samsung claims Plaintiffs have not included enough prior complaints for, Plaintiffs include sixteen (16) reports to the government, that were acknowledged by Samsung, involving the S6 series phones.  ¶¶51-54.  In addition, five of the Plaintiffs are complaining about series S6 phones: (1) Anguiano, S6 Edge, ¶77; (2) Hernandez, S6, ¶78; (3) Pirverdian, S6 Edge, ¶79; (4) Salmasian, S6, ¶80; and (5) Sanchez, S6, ¶82.

As to the S7, Samsung again claims that Plaintiffs have not shown enough complaint records. Plaintiffs include thirteen (13) reports to the government, that were acknowledged by Samsung, involving the S7 series phones.  ¶¶51-54.  As well as two widely publicized news stories about three different thermal runaway events in S7 series phones.  In addition, Plaintiff Dee personally experienced a defective device.

4. **Plaintiffs Alleged a Detailed Complaint History Regarding the Defects at Issue**

Samsung cites two distinguishable cases where the courts found that plaintiffs did not disclose enough consumer complaints to show a widespread problem.  First, in *Munch v. Sears, Roebuck & Co.*, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008), the discussion of complaint levels reflects analysis solely under Illinois state law.  Even then, the court accepted plaintiffs' allegation that "the [] washers have a higher than normal failure rate," but it was not enough under the Illinois Consumer Fraud Act.  *Munch*, 2008 WL 4450307 at *6.

In *Punian v. Gillette co.,* 2016 WL 1029607, at *2 (N.D. Cal. Mar. 15, 2016) plaintiffs alleged that Duralock Batteries were defective because they could leak.  The court found that

plausibility was lacking where "Plaintiff has not alleged the cause of any defect in Duralock Batteries, the impact of battery leakage on the battery, the likelihood that Duralock Batteries will leak, that consumers had any expectations about the leakage rate or potential to fail of Duralock Batteries, or that any of Plaintiff's Duralock Batteries have failed." *Punian,* 2016 WL 1029607, at *15.  However, *Punian* is inapposite to the present case because the Court found that plaintiffs did not describe the batteries' potential to fail or leak and did not allege that they purchased batteries that leaked or damaged any electronic devices.  *Id.* *11.  Moreover, the *Punian* plaintiffs pointed to consumer complaints that were duplicative (5 of 40 complaints), "clearly relate[d]" to other batteries not at issue (16 of 40 complaints), positive reviews (5 of 40 complaints), undated complaints (8 of 40 complaints), and complaints that did not indicate the date of purchase or expiration date (3 of 40 complaints).  *Id.* *12.  Thus, the Court held that three consumer complaints over a two-year period, along with undisclosed other complaints, was insufficient, particularly in the absence of any allegations in the complaint about the likelihood of the defect.  *Id.* at *13.

In contrast, here, all of the plaintiffs allege they personally experienced overheating and have included examples of fifty-three (53) consumer complaints.  ¶¶76-82, 50-54, 68.  In addition, plaintiffs have also significantly bolstered their description of the defects in the Subject Phones.  *See* Section II(B), *supra.*

### B.   Plaintiffs Sufficiently Allege that Samsung Was Aware of the Defect in the Subject Phones Prior to Plaintiffs' Purchases of their Phones

Plaintiffs' SAC lists dozens of complaints to a government website, including complaints acknowledged by Samsung, and complaints that pre-date the first Plaintiff's purchase by more than two years.  Therefore, Samsung's argument that Plaintiffs do not allege particularized facts showing that Samsung had pre-sale knowledge of defects in the Subject Phones is unavailing.

At the outset, Plaintiffs note that "as a general matter, '[w]hile circumstances constituting fraud must be alleged with particularity, knowledge may be alleged generally.'"  *McCarthy v. Toyota Motor Corp.,* 2019 WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019) citing *Parenteau v. Gen. Motors, LLC, 2015* WL 1020499, at *6 (C.D. Mar. 5, 2015) distinguished on other grounds by

*Sloan v. Gen. Motors LLC,* 287 F.Supp.3d 840, 877-78 (N.D. Cal. 2018); Fed. R. Civ. P. 9(b) (finding that plaintiffs sufficiently alleged pre-sale knowledge by showing "not only that testing and internal reporting could have alerted Defendant to the defect, but that they in fact did so").

1.  **Plaintiffs Allege Numerous Complaints Posted to Government Websites Dated Prior to Plaintiffs' Dates of Purchase**

Contrary to Samsung's assertion, Plaintiffs allege more than a "handful of complaints." *In re Nexus 6P Prod. Liab. Litig.*, 293 F.Supp.3d 888, 909 (N.D. Cal. 2018).  In *In re Nexus,* plaintiffs did not sufficiently allege defendants' pre-sale knowledge because they did not provide specific dates for *any* online consumer postings or any communications between plaintiffs and defendants concerning the defects.  *In re Nexus,* 293 F.Supp.3d at 908-910.  By contrast, Plaintiffs provide twenty-three dated CPSC reports and twenty-seven dated posts from saferproducts.gov online consumer postings that are dated prior to their dates of purchase.  ¶¶52-53.

Like Samsung's previous motion, the instant Motion dissects the fifty plus complaints included in the SAC by sub-model number and then compares the date of each Plaintiff's purchase.  This sleight of hand does not make Samsung's point because for two of the plaintiffs, there were complaints to the CPSC prior to the date of their purchase of their precise sub-model.

The news stories concerning thermal runaway events in the Philippines and in the United Kingdom are relevant and should be credited in finding sufficient allegations of Samsung's pre-sale knowledge.  ¶68.  Both complaints are dated prior to Plaintiff Dee's purchase of his Samsung Galaxy S7 smartphone and allege similar symptoms of the phone becoming hot to the touch.  ¶¶15, 68 81.  Contrary to Samsung's arguments, these complaints substantiate Plaintiffs' claims by showing the widespread nature of the alleged defect in the Subject Phones.  These complaints also reflect Samsung's awareness of the specific complaints because Plaintiffs allege that a Samsung spokesperson stated that Samsung would investigate the UK complaint and that a Samsung store refunded purchase made in the Philippines in full.  ¶68.

The cases Samsung cites (Mot. 15-18) are distinguishable on their face.  In *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147-1148 (9th Cir. 2012), the court noted that twelve of fourteen complaints were undated and the other two were over two years after plaintiff's

purchase, and that the cited complaints did not state "where or how the complaints were made (*e.g.,* via HP's website)." Similarly, in *Sciacca v. Apple*, 362 F.Supp.3d 787, 800 (N.D. Cal. 2019), the court explained that although plaintiffs alleged that customer complaints at Apple Stores and to Apple Support made Apple aware of an alleged Apple Watch defect, the complaint did not identify *any* customer complaints at Apple Stores or to Apple Support.

In *Tomek v. Apple Inc.,* 636 F. App'x 712, 714 (9th Cir. 2016) the consumer complaints were all posted *after* the single purchase at issue in the case. Importantly, the court noted that the cited complaints tended to show that the defendant (Apple) released a patch solving the issue in the case and that the release of the patch was evidence that Apply had been unaware of the problem initially. In *Baba v. Hewlett-Packard Co.,* 2011 WL 317650, at *1 (N.D. Cal. Jan. 28, 2011) the court engaged in a fact-specific analysis of the internet posts cited in the complaint and found it significant that only three of the complaints came from the defendant's own website and there were no complaints prior to the product purchase by one of the two plaintiffs.

By contrast, Plaintiffs' SAC contains over fifty complaints that are all dated and reflected in the CPSC and saferproducts.gov government database or in online articles. ¶¶52-53, 68. Samsung even previously commented on the ease of accessing the reports. (ECF No. 70, p. 3, n. 1, Samsung's Request for Judicial Notice in Support of Motion to Dismiss First Amended Consolidated Class Action Complaint).

> **2.      Consumer Reports Dated Prior to Plaintiffs' Purchases About Smartphone Models Released Prior to the Subject Phones Can Be Used to Establish Samsung's Pre-Sale Knowledge of the Defect in the Subject Phones**

The SAC provides examples of consumer complaints to the CPSC regarding Samsung Galaxy products as early as December 6, 2012 to make the point that Samsung knew of safety issues in its Galaxy line of smartphones well before the earliest purchase by a Plaintiff in 2015. ¶¶52-53. Plaintiffs allege that the batteries in Galaxy models prior to the Note5 and S6 (which contained removable batteries) exhibited the propensity of overheating and thermal runaway events, which is evidenced by consumer complaints. Plaintiffs allege that the defect was

1    magnified with the Subject phones in that the same defect contained in the prior models also

2    existed in the now non-removable batteries which had less room and more power.

3        In *McCarthy v. Toyota Motor Corp.,* 2019 WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019),

4    the court distinguished cases holding that claims about a defect in a different vehicle model were

5    insufficient to establish pre-sale knowledge.  For example, in *Mandani v. Volkswagen Grp. of*

6    *Am., Inc.*, 2019 WL 652867, at *8 (N.D. Cal. Feb, 15, 2019), cited by Samsung, the court held

7    that plaintiffs had not alleged pre-sale knowledge when they alleged that the defendant received

8    only one complaint about a "similar" defect in a different year and model vehicle.  Furthermore,

9    in *Donohue v. Apple, Inc*., 871 F.Supp.2d 913, 921, 927 (N.D. Cal. 2012), the court took issue

10   with plaintiff's evidence because "Plaintiff points to no complaints, data or other information

11   about pre-iPhone 4 models that would have put Apple on notice that such models were similarly

12   defective."  *Donohue* stands in stark contrast to this case where Plaintiffs have gone out of their

13   way to demonstrate that Samsung's knowledge of the thermal issues in the Galaxy smartphones

14   pre-dated plaintiffs' purchase (even by numerous years).

15       Courts have found that similar detailed allegations regarding defects in similar products

16   can be enough to establish pre-sale knowledge.  In *McCarthy*, the court concluded that, assuming

17   the truth of plaintiffs' allegations related to consumer complaints regarding different models,

18   there was a plausible inference that the manufacturer knew of the defect at the time of sale.

19   *McCarthy*, WL 3220579, at *4 (C.D. Cal. Apr. 9, 2019); *see also* Acedo v. DMAX, Ltd., 2015

20   WL 12912365, at *13 (C.D. Cal. July 31, 2015) (although allegations of pre-sale knowledge

21   concerned an "earlier version" of the motor at issue, "[t]he fact that defendants observed [the

22   defect] while testing the [earlier motor] plausibly suggests that they were on notice of the" defect

23   in the motor at issue); see also *McVicar v. Goodman Glob. Inc.*, 2014 WL 12573992, at *7 (C.D.

24   Cal. Nov. 13, 2014) (holding that allegation that defendants knew of at least some models of its

25   air conditioning coils were defective was sufficient to plead knowledge as to other models of

26   coils).

27       Here, similar to the *McCarthy* and *Acedo* plaintiffs, Plaintiffs "have done much more than

28   allege that one consumer complained about a 'similar' issue."  *McCarthy*, 2019 WL 3220579, at

*4. Instead, Plaintiffs allege that Samsung knew that the Subject Phones, and similar smartphone models, including those within the Galaxy line, were at risk of thermal runaway events. *See* ¶¶50-53. Samsung responded to these requests and attempted to address the overheating issues in Galaxy S8 models. ¶¶54-58. Plaintiffs further allege that despite Samsung's knowledge of the overheating problems existing across multiple models and generations of its Galaxy phone, it nevertheless chose to put increasingly powerful batteries in smaller spaces in the Subject Phones, and concealed from consumers the risks of fire, explosion and overheating. ¶60.

In sum, the Court should deny Samsung's Motion because Plaintiffs have presented the Court with dozens of complaints to a government website, acknowledged by Samsung, including complaints that pre-date the first Plaintiff's purchase by more than two years. Thus, this case is inapposite to *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *14 (N.D. Cal. Sept. 12, 2016) in which the Court found that plaintiff's failure to allege knowledge was a sufficient basis for dismissal because plaintiff's allegations of knowledge "consist[ed] solely" of consumer complaints that postdated plaintiff's purchase by two years, the consumer complaints were not sent directly to defendant, and the plaintiff did not allege that defendant monitored or was otherwise aware of the complaints. *Coleman-Anacleto*, 2016 WL 4729302 at *14.

### C. Plaintiffs Have Sufficiently Alleged Samsung's Knowledge Because Samsung Took Multiple Actions to Respond to the Consumer Complaints At Issue

Plaintiffs have alleged sufficient reports to put Samsung on notice of the defect and Samsung's cases do not establish an opposite conclusion. In *Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 690822, at *2 (C.D. Cal. Feb. 19, 2013) the court took issue with the fact that the online complaints cited by plaintiffs were made on a website unconnected to defendant and most of the complaints were dated after the purchases at issue. Here, plaintiffs have alleged Samsung's knowledge of the CPSC complaints and there were large numbers of complaints prior to each plaintiff's purchase. *See* ¶¶52, 53, 68.

*McVicar v. Goodman Glob. Inc.*, 2014 WL 12573992 (C.D. Cal. Nov. 13, 2014), also cited by Samsung, supports Plaintiffs' position. In *McVicar*, the court rejected the defense's position that the plaintiffs had to plead which of three types of evaporator coils were defective,

instead finding that "Pleading Defendants' knowledge of the defect in the evaporator coils, regardless of type, is sufficient to establish knowledge for the purposes of the UCL." *McVicar v. Goodman Glob. Inc.,* 2014 WL 12573992 on reconsideration on other grounds in *McVicar v. Goodman Glob. Inc.,* 2015 WL 12698408, at *4 (C.D. Cal. May 20, 2015) (reconsidering Nov.13, 2014 Order dismissing HUCL-fraud, CLRA, and FAL claims and allowing plaintiff to pursue those claims).  Further in *McVicar*, on the question of what types of complaints are enough to impute notice, the court noted that "customer complaints generally do not adequately support an inference that a manufacturer was aware of a defect," but that there can be situations where complaints are enough, particularly when the complaint alleges that the defendant tracked the complaints.  *McVicar*, 2014 WL 12573992, at *8.

Here, Plaintiffs have alleged more than the *McVicar* plaintiffs, pleading which sub-model Galaxy phones are at issue. Plaintiffs also allege that Samsung acknowledged the CPSC and that Samsung is and was aware of the reports and hazards posed by the Subject Phones because consumers reported the issues directly to Samsung, Samsung responded to reports with a boilerplate response, and a Samsung spokesperson responded to at least one complaint.  ¶¶52-54, 68.  The SAC further alleges Samsung's knowledge by stating that Samsung took specific steps, including its introduction of an Eight-Point Battery Safety Check to check for battery flaws and a push notification sent to certain smartphones to inform consumers that their phones, including the Galaxy S7, were not subject to recall.  *See* ¶¶57-58; 67.

### D.   Plaintiffs Have Adequately Alleged a False Advertising Law Claim

Samsung makes the sweeping statement that omissions claims are not actionable under the FAL. (ECF 112, 13:12-17.)  As an initial matter, the extent to which omission-only claims are actionable under the FAL is subject to debate within the district courts, as outlined in *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023-1024 (N.D. Cal. 2016), a case cited by Samsung (ECF 112, 13:14-15.)  However, this Court need not decide the question of whether a pure omission claim, without any affirmative statement, is actionable under the FAL.  In this case, Plaintiffs have alleged numerous affirmative statements combined with omissions.  *See e.g.*, ¶¶2-3, 56, 63-

64 (reflecting affirmative statements, including marketing statements, made by Samsung).

Plaintiffs have also alleged knowledge by Samsung of the defects.  ¶76-82, 50-54, 68.

**E.     Plaintiffs Have Adequately Alleged Claims under the CLRA and the Unfair Competition Law**

There is no question that omission claims are actionable under the CLRA and UCL, indeed, Samsung admits as much.  ECF 112, 19: 20-28.  However, Samsung suggest that plaintiffs must plead one of four "*LiMandri* factors": (1) that the defendant is the plaintiff's fiduciary; (2) that the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) that the defendant actively conceals a material fact from the plaintiff; and/or (4) that the defendant has made partial representations that are misleading because some other material fact has not been disclosed. ECF 112, 19:20-20:3, referring to *LiMandri v. Judkins*, 60 Cal.Rptr.2d 539 (Cal. Ct. App. 1997).  In this case, each of factors (2), (3) and (4) supports plaintiffs' position regarding required disclosure.

**1.     A Duty to Disclose Under the CLRA and UCL Arises from Samsung's Superior Knowledge of Material Information**

First, plaintiffs allege that Samsung had and has "superior knowledge" of the defects in the Subject Phones and that the phones are subject to overheating, fire, and explosion.

Consumers have little to no knowledge of the inner workings of smartphones and no obligation themselves to investigate whether Samsung's smartphones are unduly prone to overheating and thermal runaway events.   Although plaintiffs need not plead "detailed factual allegations" on Samsung's superior knowledge (*Twombly*, 550 U.S. at 555), the complaint does so (¶¶50-54, 68, 76-82) (describing fifty-three complaints and stating that Samsung has acknowledged consumer complaints to the government, albeit with boilerplate responses.) Samsung argues that the public had access to the complaints, however, it is unreasonable to expect a consumer to pour through Consumer Product Safety Commission reports of complaints prior to purchasing a consumer product.  With respect to the CPSC complaints, Samsung acknowledged each one – Samsung had superior knowledge of the complaints.

Further, the "omissions were material to consumers' purchasing decisions in that had consumers been warned of the dangers of the products, they would not have purchased the Subject Phones or would have paid less for the Subject Phones than they paid."  ¶65.

The four-part test stated by *LiMandri v. Judkins*, 60 Cal.Rptr.2d 539, and many other cases refers to "exclusive knowledge."  However, courts have not applied 'exclusivity' literally or rigidly, but rather, analyze "exclusivity" by examining whether the defendant simply had **superior knowledge**.  *Johnson v. Harley-Davidson Motor Co. Grp*., LLC 285 F.R.D. 573, 583 (E.D. Cal. 2012) ("Since defendant was in a **superior position** to know of its defective engines, plaintiffs properly allege that defendant had exclusive knowledge of material facts not known to plaintiffs.") (Emphasis added). Numerous courts have used the "superior position" test.  *See, e.g., In re My Ford Touch Consumer Litig*., 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Elias v. Hewlett-Packard Co*., 2014 WL 493034, at \*9 (N.D. Cal. Feb. 5, 2014) ("*Elias II*"); *Falk  v. GMC*, 496 F. Supp. 2d 1088, 1096-97 (N.D. Cal. 2007).

2. **In Violation of the CLRA and UCL Samsung Did Not Disclose the Subject Phones' Propensity to Overheat, Catch Fire and Explode, Instead Making Partial Representations While Suppressing Material Facts**

As an independent basis for their claims, plaintiffs rely on the **<u>third</u>** and **<u>fourth</u>** prongs of the four-part test. Samsung concealed the safety defect from consumers, instead marketing the phones as durable and reliable.  ¶¶2, 61. representations but also suppresses some material fact." *Falk*, 496 F. Supp. 2d at 1095 (denying motion to dismiss CLRA and fraud by omission claims); *Marsikian v. Mercedes Benz USA, LLC,* 2009 WL 8379784, at \*5, \*8 (C.D. Cal. May 4, 2009). Samsung regularly touted the reliability and durability of the Subject Phones, while knowing that they were anything but reliable and durable given the high levels of reports of overheating and thermal runaway events.  ¶¶2, 50-54, 61, 68, 76-82.  Partial representations also give rise to a duty to disclose.  *See generally Day v. AT & T Corp.*, 63 Cal.App.4th 325, 332-33 (1998)

F. **Plaintiffs Have Adequately Pled Reliance**

Contrary to Samsung's assertion, Plaintiffs do allege reliance.  *See* ¶¶100-103. "[I]n a CLRA claim predicated on a false representation in an advertisement, the plaintiff must allege that he or she

1    saw and relied on the misrepresentations in the advertisement." *McVicar*, 2014 WL 12573992, at *11.

2    Plaintiffs bring their CLRA claim based on Samsung's "failure to disclose that the Subject Phones

3    were prone to overheating, catching fire, and explosion." ¶106.  Plaintiffs could not have been more

4    direct regarding their allegations of reliance: "CALIFORNIA CLASS REPRESENTATIVES and the

5    CALIFORNIA CLASS relied upon SAMSUNG advertising in their decisions to purchase the Subject

6    Phones." ¶102.  This statement reasonably infers that Plaintiffs also saw the advertising in order to

7    rely upon it.  Additionally, the SAC includes details related to specific statements made by Samsung.

8    ¶¶2, 61-64 (reflecting affirmative statements, including marketing statements, made by Samsung).

9         Furthermore, "[a]ctual reliance is presumed (or at least inferred) when the omission is

10   material." *Ehrlich v. BMW of N. Am., LLC*, 801 F.Supp.2d 908, 919 (C.D. Cal. 2010) citing *In re*

11   *Tobacco II Cases*, 46 Cal.4th 298, 326 (2009).  Plaintiffs have sufficiently alleged materiality of the

12   defect in the Subject Phones.  *See supra*, Section III(E)(1); ¶65 ("SAMSUNG'S omissions were

13   material to consumers' purchasing decisions in that had consumers been warned of the dangers of the

14   products, they would not have purchased the Subject Phones or would have paid less for the Subject

15   Phones than they paid.")

16        In *Ehrlich*, relied upon by Samsung, the plaintiff did not allege that he reviewed any

17   "brochure, website, or promotional material that might have contained a disclosure of the [windshield]

18   cracking defect" prior to purchasing his vehicle.  *Ehrlich*, 801 F.Supp.2d 908, 919–20 (C.D. Cal.

19   2010).  "Given the alleged importance of the cracking defect, had BMW chosen to disclose it to

20   prospective buyers, presumably Plaintiff, as a member of the buying public, would have become

21   aware of the defect in the course of making his purchasing decision." *Id.* at 920.  The court dismissed

22   plaintiffs' fraud-based CLRA and UCL claims (while granting leave to amend) because the complaint

23   was "devoid of allegations that Plaintiff would have plausibly been aware of the cracking defect

24   before he purchased his MINI had BMW publicized this information." *Id.*  Here, Plaintiffs allege that

25   they relied upon Samsung's advertisements and specify affirmative statements by Samsung indicating

26   that the devices were durable and reliable.  ¶¶62-64, 102.  Samsung was required to disclose that the

27   Subject Phones were prone to overheating, fire and explosion, and had it done so at the point of sale,

28   then Plaintiffs who reviewed Samsung's advertisements would have been aware of the defect.

G.     Plaintiff's Unjust Enrichment Claim is Properly Alleged

Samsung fails to mention that "[t]here is a split in authority among California courts over whether "unjust enrichment" is regarded as a cause of action*." Sprint Nextel Corp. v. Welch, 2014 WL 68957,* at \*4 (E.D. Cal. Jan 8, 2014), report and recommendation adopted, WL 2106683 (E.D. Cal. May 20, 2014), directing to *Levine v. Blue Shield of California*, 189 Cal.App.4th 1117, 1138 (discussing split in authority).  *Welch* cites to *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350 (2010) – a case relied upon by Samsung – as being on one side of the divide.  *Welch*, 2014 WL 68957, at \*4.

As confirmed in *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1006, n. 25(9th Cir. 2013), "[t]he Supreme County of California and California Courts of Appeal have recognized actions for relief under the equitable doctrine of unjust enrichment."  For example, in *In re TFT-LCD (Flat Panel) Antitrust Littig.,* 2011 WL 4345435, at \*4 (N.D. Cal. Sept. 15, 2011), this Court found that "plaintiffs have invoked a valid theory of recovery. In such circumstances, courts have generally allowed claims for "unjust enrichment" to proceed, regardless of the precise label assigned to the case of action."  The Northern District also declined to dismiss an unjust enrichment claim under California law in *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.,* 2015 WL 4755335, at \*25-31 (N.D. Cal. Aug. 11, 2015).  *See also City of Los Angeles v. Wells Fargo & Co.,* 22 F.Supp.3d 1047, 1061 (C.D. Cal. 2014) (holding that City sufficiently alleged that it conferred benefits on defendants, as required to seek restitution based on unjust enrichment theory).

The Court should not "dismiss [Plaintiffs'] claim for restitution based solely on its label" and instead should review the SAC to determine whether Plaintiffs have alleged "a valid theory of recovery." *City of Los Angeles v. Wells Fargo & Co.*, 22 F.Supp.3d at 1061 citing *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4345435, at \*3–4 (permitting unjust enrichment claim to proceed where the plaintiff invoked a valid theory of recovery).  Thus, the inquiry is whether Plaintiffs allege that Samsung was unjustly enriched at Plaintiffs' expense. *See City of Los Angeles v. Wells Fargo & Co.*, 22 F.Supp.3d at 1061 quoting *McBride v. Boughton*, 123 Cal.App.4th 379, 389 (2004).  Plaintiffs have adequately pled such facts.  ¶¶113-114.

Finally, as discussed in Plaintiffs' opposition to Samsung's Request for Judicial Notice ("RJN"), Samsung's arguments related to the enforceability of Samsung's warranty (RJN Exh. B) raise multiple disputes of material fact that are not within the confines of the SAC that are not appropriate at the pleading stage. *See generally* F. R. Civ. Proc. 56.  Samsung admits that consumers had to undergo multiple steps to access Samsung's Safety Guides and the limited warranty contained therein because "guidebooks included with Plaintiffs' phones directed users to online Safety Guide[s]."  RJN 4 (citing Blackard Decl., ECF No. 68 at ¶¶27-28, 42-43, 50, 59, 60, 71).  Accordingly, they are not appropriate for resolution at the pleading stage and the Court should find that Plaintiffs adequately allege unjust enrichment.[2]

## IV.  **CONCLUSION**

Plaintiffs respectfully request that the Court deny Samsung's Motion to Dismiss Plaintiffs' Second Amended Complaint. In the alternative, if the Court grants the Motion in whole or in part, Plaintiffs request leave to amend.

Dated: June 22, 2020

**COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Anne Marie Murphy*
     Anne Marie Murphy
     Anya N.Thepot

**STONEBARGER LAW, APC**

By: */s/ Gene J. Stonebarger*
     Gene J. Stonebarger
     Crystal L. Matter

---

[2] In an effort to narrow issues, and due to the fact that plaintiffs have alleged that recent Galaxy models (S8 and later) are not experiencing the same overheating and thermal runaway events as the Subject Phones, plaintiffs will not pursue injunctive relief.

**Civil Local Rule 5-1(i)(3) Attestation**

Pursuant to Local Rule 5-1(i)(3), I Anne Marie Murphy, the ECF user whose user ID and password are being utilized in the electronic filing of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss Second Amended Consolidated Class Action Complaint, hereby attest that I obtained concurrence in the filing of this document rom each of the signatories hereto.

DATED: June 22, 2020                                     /s/ Anne Marie Murphy
                                                                  Anne Marie Murphy