**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE SAMSUNG GALAXY SMARTPHONE MARKETING AND SALES PRACTICES LITIGATION** | Case No.  16-cv-06391-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>[Re:  ECF 112] |

Plaintiffs Omar Atebar, Lizett Anguiano, Tomas Hernandez, Eric Pirverdian, Tomig Salmasian, Dior Dee, and Jesus Sanchez (collectively, "Plaintiffs") bring this putative consumer class action against Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Defendants"), alleging certain Samsung smartphone batteries pose a threat to the safety of consumers. *See* Second Am. Compl. ¶ 1 ("SAC"), ECF 108. Plaintiffs allege four causes of action: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; violation California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and unjust enrichment under California Law. SAC ¶¶ 92–115. Plaintiffs request economic losses, restitution, and punitive damages, in addition to costs and fees.[1] *See* SAC § VI. Defendants move to dismiss Plaintiffs' Second Amended Complaint for failure to plead their fraud claims with particularity as required by Federal Rule of Civil Procedure 9(b) and for failure to

---

[1] In the complaint, Plaintiffs also requested an order enjoining Defendants from selling the subject phones and from any future violations of the law. *See* SAC § VI. However, in their Opposition brief, Plaintiffs now state "in an effort to narrow issues, and due to the fact that plaintiffs have alleged that recent Galaxy models (S8 and later) are not experiencing the same overheating and thermal runaway events as the Subject Phones, plaintiffs will not pursue injunctive relief." Opp'n 20 n.2, ECF 117.

United States District Court
Northern District of California

state a claim as required by Rule 12(b)(6). *See* Mot., ECF 112. Having considered the parties' briefing and oral argument on September 10, 2020, the Court GRANTS Defendants' Motion without leave to amend.

## I.   BACKGROUND

### A.   Procedural History

The case began with the complaint filing on November 2, 2016, *see* ECF 1, and, after several cases were consolidated into this one, fifteen named plaintiffs filed their First Amended Complaint on August 3, 2017. First Am. Compl. ("FAC"), ECF 65. Plaintiffs alleged that Defendants were aware of overheating problems with various models of the smartphones they manufacture and sell, but they failed to fix the problems or warn customers of the dangers posed. *See id.*

Defendants soon after filed a motion to compel arbitration, *see* Mot. to Compel Arbitration, ECF 67, which the Court granted in part on March 30, 2018. Order on Mot. to Compel Arbitration, ECF 87. Six of the named plaintiffs were compelled to arbitration, and because the arbitration agreement included a class action waiver, the Court also granted Defendants' motion to dismiss the class action claims of these six named plaintiffs. *Id.* at 24. As for the remaining named plaintiffs, the Court granted Defendants' motion to dismiss and dismissed all the claims that had not been compelled to arbitration. *See* Order Granting Mot. to Dismiss, ECF 88. In particular, this Court dismissed Plaintiffs' first amended complaint on two grounds: Plaintiffs did not adequately plead that each Samsung phone model at issue suffered from a defect, and Plaintiffs did not sufficiently allege that Samsung had knowledge of any such defect at the time of the relevant sales. *Id.* at 5–6. The Court also dismissed Plaintiffs' unjust enrichment claim because Plaintiffs failed to identify the applicable law. *Id.* at 6. The Court granted Plaintiffs leave to amend, but first stayed the entire case pending arbitration. Order on Mot. to Compel Arbitration 25. Plaintiffs were to amend their complaint within 30 days of termination of the stay. Order Granting Mot. to Dismiss 7.

Having stayed the case, the Court administratively closed the file on April 13, 2018. *See*

United States District Court
Northern District of California

Order Adm. Closing Case, ECF 90. The parties were "directed to file a joint status report within seven days of the resolution of the arbitration" in which they "shall advise the Court whether the action should be reopened." *Id.* In February 2020, six plaintiffs moved to reinstate the case as to the claims that were not compelled to arbitration. *See* Mot. to Reinstate, ECF 93. Plaintiffs represented that "[t]he cases that the Court compelled to arbitration are either no longer being pursued or have been resolved," *id.* at 2–3, and they thus wanted to proceed with the remaining claims. *See id.* Defendants filed their own motion to dismiss the case pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. *See* Mot. to Dismiss for Lack of Prosecution, ECF 96. The Court denied Defendants' motion and granted Plaintiffs' motion to reinstate the case on May 4, 2020. *See* Order Re Pls.' Mot. to Reinstate, ECF 107. At the hearing for that motion, the Court warned Plaintiffs that the forthcoming second amended complaint would be their last since the Plaintiffs were on clear notice for two years regarding the defects identified concerning their complaint. Tr. of Proceedings 18:6-15, ECF 106.

On May 11, 2020, Plaintiffs filed a Second Amended Complaint. *See* SAC. Defendants filed a motion to dismiss on June 8, 2020. *See* Mot. Defendants also requested the Court take judicial notice of eight exhibits in connection with their Motion to Dismiss. *See* Req. for Judicial Notice ("RJN"), ECF 113. Plaintiffs have opposed the motion to dismiss, Opp'n, ECF 117, and objected to Defendants' request for judicial notice. *See* Obj., ECF 118. Defendants have replied in support of their Motion to Dismiss. *See* Reply, ECF 121.

### B.   Factual History

This case focuses on four Samsung smartphone models, known as the Galaxy S6, S6 Edge, S7, and Note5, launched in the United States between April 2015 and March 2016 (collectively, the "Subject Phones"). SAC ¶¶ 1, 23. Plaintiffs allege that these phones "are subject to overheating, fire and explosion" due to dangers posed by the phones' lithium-ion battery. *Id.* ¶¶ 1–2. Plaintiff Atebar experienced overheating, shortened battery life, and sluggishness with his Note5. *Id.* ¶ 76. Plaintiff Anguiano experienced overheating with her Galaxy S6 Edge. *Id.* ¶ 77. Plaintiff Hernandez experienced overheating, problems running applications, sluggishness, and reduced battery power with her Galaxy S6. *Id.* ¶ 78 Plaintiff Pirverdian experienced overheating,

United States District Court
Northern District of California

sluggishness, problems connecting to the internet, problems running applications, dropped calls, random warning signs, shortened battery life, random dimming, and random site searches with his Galaxy S6 Edge. *Id.* ¶ 79. Plaintiff Salmasian experienced overheating, problems running applications, dropped calls, random warning signs, and shortened battery life with his Galaxy S6. *Id.* ¶ 80. Plaintiff Dee experienced overheating while charging, a discolored or pixilated screen, problems connecting to the internet, problems with applications, problems sending text messages, and charging issues with his Galaxy S7. *Id.* ¶ 81. And Plaintiff Sanchez experienced overheating with his Galaxy S6. *Id.* ¶ 82. Plaintiffs bring four causes of action against Defendants: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; violation California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and unjust enrichment. *Id.* ¶¶ 92–115.

Defendants move to dismiss Plaintiffs' entire SAC under four theories: (1) Plaintiffs fail to plausibly allege with the required particularity that their phones had a defect under Rule 9(b), (2) Plaintiffs fail to plausibly allege that Samsung had knowledge of a defect in Plaintiffs' phones at the time of purchase under Rule 9(b), (3) Plaintiffs' statutory claims fail because the False Advertising Law ("FAL") is inapplicable to omissions, none of the circumstances that make an omission actionable under the other California statutes are present in Plaintiffs' SAC, and Plaintiffs fail to plead reliance with particularity, and (4) Plaintiffs' claims for unjust enrichment must be dismissed. Mot. ii.

## II.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro*

United States District Court
Northern District of California

*v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

In addition, because Plaintiffs' causes of action are grounded in fraud, the SAC must also satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (holding that claims for false or misleading advertising under the CLRA, FAL, and UCL are "grounded in fraud" and applying Rule 9(b)). To satisfy Rule 9(b), a plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction," *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original); she must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). That is, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). However, other circumstances—such as knowledge—"need not be pled with particularity." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

In evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). At the same time, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

### III.      JUDICIAL NOTICE

Generally, a motion to dismiss under Rule 12(b)(6) must rely solely on the contents of the pleadings. *See* Fed. R. Civ. P. 12(d). There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Defendants have submitted eight exhibits that they request the Court to review in ruling on their Motion. *See* RJN. Plaintiffs oppose the Court taking notice of all eight documents. *See* Obj.; Opp'n 6, 20.

Courts may "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents are not in dispute." *Golub v. Gigamon Inc.*, 2019 WL 4168948, at *6 (N.D. Cal. Sept. 3, 2019). "[A] defendant may attach to the motion to dismiss such documents in order to show that they do not support the plaintiff's claim." *Wright v. Allstate Ins. Co. of  Cal.*, 2015  WL 1548949, at *2  (N.D. Cal. Apr  7, 2015). The Court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Wong v. Arlo Techs., Inc*., 2019 WL 7834762, at *4 (N.D. Cal. Dec. 19, 2019) (internal quotation marks omitted*); see also Golub*, 2019 WL 4168948, at *6 ("[W]hen reviewing a motion to dismiss for failure to state a claim, [the court] need not accept as true allegations that contradict matters properly subject to judicial notice; a party may not avoid dismissal by raising an unreasonable factual dispute." (internal quotation marks and citation omitted)). The incorporation by reference doctrine "applies with equal force to internet pages as it does to printed material." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Courts thus routinely consider the "full page [of a] website" where, as here, "[a] portion of the page" is quoted or relied on in the complaint. *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, 2012 WL 6087329, at *1 n.2 (N.D. Cal. Dec. 6, 2012).

Defendants ask the Court to take judicial notice of the full contents of the Note7 Recall website (Exhibit A), an article from the website giffgaff (Exhibit D), and a *Consumer Reports* article (Exhibit E) because those materials are relied upon, cited, and hyperlinked in the SAC. See RJN 1-3. Plaintiffs oppose this request and cite *Khoja* in support of their position. Obj. 4-5. The

6

Court reads *Khoja* as supporting taking judicial notice of Exhibits A, D, and E. The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. This is exactly what Plaintiffs have done here. Regarding Exhibit A, *see* ECF 113-1, the Note7 recall website explicitly states that the battery defects leading to the thermal runaway events were "unique  to  the  Note7 devices." Plaintiffs, however, conveniently omit this fact when using the Note7 recall website to support its allegations of defects in the subject phones. SAC ¶¶ 34, 36-47. This selective pleading is precisely why the incorporation-by-reference doctrine exists. Accordingly, the Court will take judicial notice of this fact in Exhibit A.

Exhibit D, *see* ECF 113-4, the giffgaff article, establishes that "[a]ll smartphones from Samsung, Sony, Apple, Huawei, and Nokia have non-removable batteries," but Plaintiffs cite to the article in attempts to present Defendants' choice to use a non-removable battery as something other than the industry norm. SAC ¶ 24. The Court finds it appropriate to take judicial notice of this fact in Exhibit D.

Finally, Defendants ask for judicial notice of Exhibit E, *see* ECF 113-5, the *Consumer Reports* article. Plaintiffs include a picture of a phone that has suffered a thermal runaway event in their operative complaint. SAC ¶ 47. What Plaintiffs fail to mention is that this is a picture of a Note7, not one of the subject phone models, and it is taken from the Consumer Reports article describing the Note7 battery failures. *See* Mot. 12 n.5. The Court will take judicial notice of Exhibit E.

Without weighing in on the merits of Plaintiffs' objections to the other exhibits, the Court declines to take judicial notice of any additional documents. A court is not required to take judicial notice of judicially noticeable information. *See Carson v. Bank of Am. NA*, 611 Fed. App'x 379, 380 n.1 (9th Cir. 2015) (declining to take judicial notice of the requested documents "because the documents are not relevant or necessary to the determination of this case"). Here, the additional material Defendants request the Court take judicial notice of is not necessary to the Court's resolution of the motion to dismiss, and the Court does not rely upon it. The Court therefore

United States District Court
Northern District of California

7

1    DENIES the requests as to Exhibits B, C, F, G, H without prejudice.

2    **IV.    DISCUSSION**

3         In the Court's previous order dismissing Plaintiffs' complaint, the Court found that

4    Plaintiffs failed to state facts establishing a defect in the Subject Phones and Defendants'

5    knowledge of any alleged defect. Order Granting Mot. to Dismiss 5. The Court will first address

6    the threshold issue of whether Plaintiffs have alleged facts demonstrating that the Subject Phones

7    suffer from a defect. The Court finds that Plaintiffs have not done so. Additionally, the complaint

8    suffers from other deficiencies that the Court will address separately in the context of Plaintiffs'

9    four claims.

10        **A.    Existence of a Defect**

11        The prior version of Plaintiffs' complaint was not clear as to whether each Subject Phone

12   model suffers from a defect. *See* Order Granting Mot. to Dismiss 5. The defect, as alleged in the

13   Second Amended Complaint and confirmed in the Opposition, is that the Subject Phones "all pose

14   a risk of overheating, fire and explosion as they were designed, engineered, developed,

15   manufactured, produced and/or assembled in a substantially similar manner to the Note7." SAC

16   ¶ 1, 28; *see also* Opp'n 2. Plaintiffs do not allege that any of their phones suffered a thermal

17   runaway event, which was the primary defect of the Note7. Plaintiffs include new information

18   about the defect in the Second Amended Complaint regarding the numbers, part numbers, and

19   battery manufacturers for the Subject Phones. SAC ¶ 27; *see also* SAC ¶¶ 24–28, 30–33, 40. The

20   injuries Plaintiffs allege as a result of this defect are shortened battery life, increased phone

21   sluggishness, and dropped calls. SAC ¶¶ 76-82.

22        Defendants argue that Plaintiffs have not alleged enough information to make the defect

23   plausible in the Subject Phones under Rule 9(b). Mot. 1–2. First, Defendants argue that Plaintiffs'

24   shared-characteristics theory is conclusory because virtually all smartphones on the market today

25   have built-in batteries, including those not alleged to have defects; the batteries for the Subject

26   Phones were not all manufactured by the same company; and the batteries for the Subject Phones

27   were all manufactured at different times to different specifications. *Id.* at 1–2, 9–11.

28        Second, Defendants argue that no consumer reports were made about the Subject Phones

United States District Court
Northern District of California

1  for six months or more after their respective launches and there are too few thermal runaway

2  events for the Subject Phones to establish a common defect. Mot. 1–2, 9–11. However, consumer

3  complaints can only be offered to establish knowledge on the part of the Defendants at this stage

4  in the proceedings. *See Wallace*, 2020 WL 1139649, at *6. Therefore, the date and number of

5  complaints reporting issues with the Subject Phones do not affect the plausibility of Plaintiffs'

6  allegation that the Subject Phones were defective. *See id.*

7          At the pleadings stage, Plaintiffs must provide factual allegations describing each Subject

8  Phone (not just the Note7) and the component or setup that causes alleged injuries in order to

9  survive a motion to dismiss. *See, e.g.*, *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 797 (N.D. Cal.

10  2019) ("Aside from this description of the consequences of the alleged defect, Plaintiff fails to

11  identify what is the actual defect; namely, what is the defect that causes the screens to allegedly

12  detach, crack, or shatter."); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at

13  *13 (N.D. Cal. Mar. 15, 2016) ("[A]lthough Plaintiff alleges that leakage is a 'defect' in Duralock

14  Batteries, Plaintiff does not allege that leakage is the result of any systematic design, technical,

15  manufacturing, or other flaw present in all Duralock Batteries.").The Court finds that Plaintiffs

16  have not adequately pled a defect in the subject phones.

17          The Court previously advised Plaintiffs that simply alleging in conclusory fashion that the

18  Subject Phones contained shared characteristics with the recalled Note7 would not be sufficient.

19  Hr'g Tr. 14:6-21, ECF 89. Now, the Plaintiffs allege two shared characteristics: The Subject

20  Phones, like the Note7, have self-enclosed batteries, and the Subject Phones' batteries were

21  manufactured by the same battery manufacturer of the Note7. SAC ¶ 40; *see also* SAC ¶¶ 2, 26,

22  27, 33, 59. Regarding the self-enclosed battery argument, Plaintiffs' own pleadings and sources

23  incorporated-by-reference undermine this argument. Self-enclosed batteries are the industry

24  standard for cellphones, *see* Ex. D, giffgaff article, and Plaintiffs do not allege that every Samsung

25  phone with a self-enclosed battery is defective. SAC ¶ 59. Plaintiffs allege that later Samsung

26  phones were subject to an "8-Point Battery Safety Check," SAC ¶¶ 57-58, but they nonetheless

27  contain self-enclosed batteries like the Subject Phones and phones produced by Sony, Apple,

28  Huawei, and Nokia. According to Plaintiffs' complaint, the Note7 had a battery capacity of 3500

United States District Court
Northern District of California

milli-ampere hours ("mAh"), which is the same as the later-produced Galaxy S8+ that Plaintiffs allege is not defective. SAC ¶¶ 25, 27. This plainly contradicts Plaintiffs' allegations that Defendants scaled back battery capacity after the Note7 recall. SAC ¶ 26. It is clear to everyone, including Defendants, that the Note7 was defective. However, Plaintiffs' attempt to piggyback on this defect with conclusory allegations of similarities with the Note7 is not sufficient to advance this case past the pleadings stage. Accordingly the Court cannot find that the self-enclosed battery characteristic is sufficient to plead a defect in the Subject Phones.

Plaintiff's other allegation that the Subject Phones' batteries were manufactured by the same battery manufacturer of the Note7 fares no better. First, by Plaintiffs' own admission, the Note7 had two different battery suppliers. SAC ¶¶ 27, 33. So does the Note5, the phone owned by Plaintiff Atebar. SAC ¶ 27. Additionally, again by Plaintiffs' own admission, the Subject Phones' batteries manufactured by Samsung SDI and the Note7 battery manufactured by Samsung SDI all have different specifications. *Id.* Therefore the Court cannot conclude that because one battery model manufactured by Samsung SDI was defective, every battery manufactured by Samsung SDI was defective. Plaintiffs themselves allege that two later models manufactured by Samsung SDI were not defective. SAC ¶¶ 25, 27. Plaintiffs needed to allege more than a possible common battery supplier with the Note7 and the same self-enclosed battery design to survive the motion to dismiss stage.

Plaintiffs' complaint relies heavily on Defendants' root cause analysis of the Note7 thermal runaway events while failing to mention that the analysis found the manufacturing defects "unique to the Note7 devices." *See* SAC ¶¶ 34, 36-47; *see also* Mot. 5, 11. For example, Plaintiffs state in conclusory fashion, "The  batteries  manufactured  by  Samsung SDI for the Subject Phones contained the same defect as original batteries in the Note7," followed by "[t]he defect, as admitted by SAMSUNG, is that a short circuit within the battery may occur when there is damage to the separator that allows the positive and negative electrodes to meet." SAC ¶ 41. However, Defendants said this about the Note7, not about the Subject Phones. Ex. A, Note7 Recall website; Ex. E *Consumer Reports* article. Plaintiffs' complaint does not contain any allegations, other than those already discussed, that support the bare conclusory allegation that the Note7 defect is found

1    in the subject phones.

2          The absence of plausible allegations of a defect is not the only deficiency with the

3    complaint, as demonstrated by an evaluation of Plaintiffs' specific claims.

4          **B.    CLRA Claim**

5          Plaintiffs bring a claim under the California Consumer Legal Remedies Act, which

6    prohibits specified "unfair methods of competition and unfair or deceptive acts or practices

7    undertaken by any person in a transaction intended to result or which results in the sale or lease of

8    goods or services to any consumer." Cal. Civ. Code § 1770(a). Plaintiffs argue that Defendants'

9    failure to disclose that the Subject Phones were prone to overheating, catching fire, and explosion

10   before Plaintiffs' purchases violates the CLRA by representing the Subject Phones had

11   "characteristics" and "benefits" they do not have. SAC ¶¶ 105–106; Opp'n 17; *see also* Cal. Civ.

12   Code § 1770(a)(5).

13         Plaintiffs' Opposition makes clear that they are alleging omission claims under the CLRA.

14   Opp'n 16. Defendants agree that omissions are covered by the CLRA. Mot. 19. An actionable

15   fraudulent omission is either an omission that is "contrary to a representation actually made by the

16   defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am.*

17   *Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006). Plaintiffs assert the latter—i.e., that

18   Defendants had a duty to disclose the Subject Phones were prone to overheating, catching fire, and

19   explosion. Opp'n 3–4; SAC ¶ 106.

20         "California courts have generally rejected a broad obligation to disclose." *Wilson v.*

21   *Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). There are four circumstances in which

22   a duty to disclose may arise under California law:

23

24         (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive
           knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when
25         the defendant actively conceals a material fact from the plaintiff; and (4) when the
           defendant makes partial representations that are misleading because some other material
26         fact has not been disclosed.

27

28   *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014) (citing *Collins v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *eMachines, Inc.,* 202 Cal. App. 4th 249, 255 (Cal. Ct. App. 2011) and *LiMandri v. Judkins*, 52

2  Cal. App. 4th 326, 336, (Cal. Ct. App. 1997)). These are referred to as the *LiMandri* factors. *Beyer*

3  *v. Symantec Corp.*, 333 F. Supp. 3d 966, 978 (N.D. Cal. 2018). Plaintiffs do not allege that

4  Defendants owe them a fiduciary duty. The Court will evaluate the remaining three *LiMandri*

5  factors.

6           **i.**   **Knowledge**

7        "California federal courts have held that, under the CLRA, plaintiffs must sufficiently

8  allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."

9  *Wilson*, 668 F.3d at 1145. This complaint alleges, on information belief, that Defendants "knew

10  the Subject Phones were defectively designed or manufactured, would fail without warning, posed

11  a risk to the public, and were not suitable for their intended use." SAC ¶ 68. Plaintiffs point to

12  numerous complaints filed with the Consumer Product Safety Commission ("CPSC") and on

13  saferproducts.gov that described issues with the Subject Phones and earlier smartphone models.

14  *Id.* ¶¶ 49–53. Plaintiffs factually allege two separate instances of overheating and fires that

15  occurred prior to Plaintiffs' purchases of the Subject Phones that put Defendants on notice: (1) a

16  Galaxy S7 in the United Kingdom that blew up the month before Plaintiff Dee purchased his

17  Galaxy S7, an event covered by the media and acknowledged by a Samsung spokesperson, and (2)

18  a Galaxy S7 Edge in the Philippines that caught on fire the month before Plaintiff Dee purchased

19  his Galaxy S7, which Samsung fully refunded. *Id.* ¶ 68.

20        Defendants contend that Plaintiffs haven't plead *any* knowledge, exclusive or otherwise.[2]

21  Mot. 20. Further, this complaint recycles the identical list this Court previously found insufficient

22  in the First Amended Complaint, and the list is supplemented only by reports of two incidents in

23  phones outside the United States—one of which involved a phone that none of the Plaintiffs

24  owned or allege was defective. Mot. 2. Defendants also argue that the reports Plaintiffs use to

25

26  _____

27  [2] While the parties disagree on whether this factor requires exclusive knowledge or merely superior knowledge, the Court need not make that decision since Plaintiffs fail to plead even superior knowledge. The Court notes that the Ninth Circuit has suggested recently that the standard is indeed exclusive knowledge. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 n.5 (9th Cir.

28  2018).

support their allegations post-date the individual Plaintiffs' purchases, concern phones other than those at issue here, and/or involve overheating of phone chargers. *Id.* Defendants contend that the handful of complaints involving the Subject Phones do not plausibly show they had knowledge of the defect. *Id.* 15. Plaintiffs maintain they have sufficiently alleged pre-sale knowledge because Plaintiffs' numerous complaints (regarding phones other than the Subject Phones) were posted to government websites prior to Plaintiffs' dates of purchase. Opp'n 11–14. Further, Plaintiffs state that Defendants took multiple actions to respond to the consumer complaints at issue, including establishing an "Eight-Point Battery Safety Check," further establishing pre-sale knowledge. *Id.* at 3, 14–15. However, the "Eight-Point Battery Safety Check" was established five months *after* the latest date one of the Plaintiffs purchased a Subject Phone, which does not help Plaintiffs establish pre-sale knowledge. SAC ¶¶ 15, 57

As noted above, "merely conclusory" allegations are not entitled to the presumption of truth on a motion to dismiss. *In re Gilead*, 536 F.3d at 1055. As Defendants correctly point out, the only facts Plaintiffs include to support their allegation of knowledge are customer complaints, many of which were the same as those alleged in the previously dismissed First Amended Complaint (despite two years passing since the First Amended Complaint's dismissal). Mot. 15–16; *see* Order Granting Mot. to Dismiss. Although courts have allowed litigants to plead knowledge based solely on customer complaints, *see, e.g.*, *Williams*, 851 F.3d at 1028; *Kowalsky v. Hewlett–Packard Co.*, 771 F. Supp. 2d 1138, 1145 (N.D. Cal. 2010), *vacated in part on other grounds by* 771 F.Supp.2d 1156 (N.D. Cal. 2011), the problem here is that most of the customer complaints at hand do not appear to involve thermal runaway events or overheating in the Subject Phones models themselves. Further, the number of complaints regarding the Subject Phones do not meet the threshold that is legally required to establish pre-sale knowledge.

Plaintiffs point the Court to "fifty-three (53) consumer complaints." Opp'n 10 (citing SAC ¶¶ 76–82, 50–54, 68). However, Defendants correctly point out that those 53 complaints include "a sizable number of reports concerning much older phone models going back to 2012: the Galaxy S2, Note2, S3, S4, S4 Active, and S5." Mot. 7. Plaintiffs cite to *McCarthy v. Toyota Motor Corp.*, No.: 8:18-cv-00201-JLS-KES, 2019 WL 3220579 (C.D. Cal. Apr. 9, 2019), to support their

13

United States District Court
Northern District of California

1  contention that claims stating a defect in a different model can establish pre-sale knowledge for

2  the model at issue. Opp'n 13. In particular, Plaintiffs state that the *McCarthy* court distinguished

3  cases holding that claims about a defect in a different vehicle model were insufficient to establish

4  pre-sale knowledge. *Id.* However, as Defendants argue, *McCarthy* did not rely solely on consumer

5  complaints in finding pre-sale knowledge, unlike the case at hand. Reply 10; *see also McCarthy*,

6  2019 WL 3220579, at *2 (indicating Plaintiffs supported their allegations with consumer

7  complaints and field reports from engineers). Plaintiffs other cited cases are also distinguishable.

8  Opp'n 13; *see Acedo v. DMAX, Ltd.*, No. CV 15–02443 MMM (ASx), 2015 WL 12912365, at *13

9  (C.D. Cal. July 31, 2015) (concerning acknowledged defects with an "earlier version" of a motor

10 at issue that Defendants addressed in published videos for sales teams); *McVicar v. Goodman*

11 *Glob. Inc.*, No. SACV 13-1223-DOC (RNBx), 2014 WL 12573992 at *10 (C.D. Cal. Nov. 13,

12 2014) (finding knowledge when company made public announcement regarding an alleged fix to

13 premature parts failures prior to plaintiffs' purchase). Further, this Court previously rejected

14 imputing pre-sale knowledge of defects from similar phones onto the Subject Phones at issue and

15 will not reverse course here. *See* Order Granting Mot. to Dismiss 6; *see also Wallace*, 2020 WL

16 1139649, at *9 (holding that manufacturer's "knowledge of a defect in the BL660 [blender] that

17 [plaintiff] purchased" could not be inferred from a pre-sale consumer report about a different

18 model blender, the "Ninja Master Prep").

19       In addition, there are no consumer complaints regarding the Note5, which would be

20 required to support the allegation of pre-sale knowledge with regard to this smartphone. The

21 handful of complaints that do concern the Subject Phones do not plausibly show Defendants had

22 pre-sale knowledge of the alleged defects. *See In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-

23 02185- BLF, 2018 WL 1156861, at *5 (N.D. Cal. Mar. 5, 2018) ("[A] handful of complaints do

24 not, by themselves, plausibly show that [the defendant] had knowledge of the defects and

25 concealed the defects from customers."). Plaintiffs provide no consumer reports indicating issues

26 with the Galaxy S6 before Plaintiffs Sanchez and Hernandez's purchases of the Galaxy S6 in April

27 and August 2015, respectively, as the first consumer report stating issues with the S6 is dated

28 November 13, 2015. SAC ¶¶ 12, 16, 53. The same issue exists with the S6 Edge for Plaintiffs

14

Anguiano and Pirverdian, who purchased the S6 Edge in April and July 2015, respectively, months before the first S6 Edge report dated January 18, 2016. *Id.* ¶¶ 11, 13, 53. One S6 Edge report appeared weeks before Plaintiff Salmasian purchased his S6 Edge on January 29, 2016. *Id.* ¶¶ 14, 53. Finally, Plaintiffs provide two reports concerning issues with the S7 before Plaintiff Dee purchased his phone in October 2016, including one report from the United Kingdom. *Id.* ¶¶ 15, 53, 68.

Plaintiffs allege in conclusory fashion that Defendants "acknowledged the reports by responding on the consumer agency's website with a boilerplate response." SAC ¶ 54. Plaintiffs offer no specifics, such as which complaint, which website, which phone model and what response. Plaintiffs also allege that a Samsung spokesperson acknowledged the October 2016 report from the United Kingdom regarding the exploding S7 model by making a statement to the media that "... This issue is currently being investigated and our customer services team is in contact with the customer regarding the matter." SAC ¶ 68. Even assuming this response regarding the incident in the United Kingdom indicates Defendants were informed about issues with the S7, *see* Opp'n 14–15, the one consumer report before Plaintiff Salmasian's purchase of the S6 Edge and two reports before Plaintiff Dee's purchase of the S7 are insufficient to prove pre-sale knowledge. *See, e.g.*, *Olmos v. Harbor Freight Tools USA, Inc.*, 2018 WL 8804820, at *7 (N.D. Cal. Dec. 24, 2018) (holding that 10 pre-purchase reports were "an inadequate basis for . . . asserting pre-sale knowledge"); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (12 complaints pre-dating purchases insufficient to allege knowledge). Thus the Court finds that the knowledge *LiMandri* factor has not been satisfied.

### ii.   Active Concealment

Plaintiffs allege that Defendants actively concealed the safety defect from consumers by marketing their phones as "durable and reliable." SAC ¶¶ 2, 61. In the cases Plaintiffs rely on, *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM JTLX, 2009 WL 8379784, at *5 (C.D. Cal. May 4, 2009) and *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007), the courts predicated their active concealment findings on the fact that those defendants had knowledge of the defects. Here, Plaintiffs have not established knowledge.

United States District Court
Northern District of California

To state a duty to disclose arising from active concealment, a plaintiff must allege five elements:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Punian*, 2016 WL 1029607, at *10 (quoting *Falk*, 496 F. Supp. 2d at 1097). "As a threshold matter, Plaintiff must aver (1) the existence of a material fact (2) of which Defendant was aware." *Punian*, 2016 WL 1029607 at *10 (citations omitted). As the Court established above, the Plaintiffs have not sufficiently pled knowledge. Moreover, claims of "reliability" and "durability" have been held to be "mere sales puffery" and thus unactionable statements. *In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 877 (N.D. Cal. 2019). Accordingly, the Court finds that the active concealment *LiMandri* factor has not been established.

### iii.    Misleading Partial Representations

Plaintiffs' arguments regarding misleading partial representations are also based on Defendants' statements that the Subject Phones are "durable and reliable." Opp'n 17. "A partial representation claim may arise when 'the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead.'" *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970)). "Thus a defendant may not 'suppress or conceal any facts within his knowledge which materially qualify those stated.'" *Herron*, 924 F. Supp. 2d at 1177. Again, though, since Plaintiffs have failed to establish any pre-sale knowledge on the part of Defendants and such statements have been held to be unactionable sales puffery, Plaintiffs cannot allege facts necessary to support the misleading partial representations *LiMandri* factor.

### iv.    Conclusion

Because Plaintiffs cannot establish pre-sale knowledge, the Court GRANTS Defendants' motion to dismiss the CLRA claim. And because Plaintiffs were on notice that this would be their

last chance at the pleading stage, due to letting two years pass before filing an amended complaint, the dismissal is WITH PREJUDICE.

### C.   FAL Claim

Plaintiffs' claim under the California False Advertising Law also fails due to a lack of knowledge on the part of Defendants.

The FAL, in part, provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly . . . to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement, . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code §17500. A statement is "misleading" under the FAL only if a "reasonable consumer" is "likely be deceived" by it. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone." *Daugherty*, 144 Cal. App. 4th at 838; *see Hodsdon*, 891 F.3d at 867–68 (applying that principle to FAL claims). In other words, a plaintiff bringing a claim under the FAL must allege sufficient facts to show that a defendant knew that any allegedly false or misleading statements were false or misleading when made. *Punian*, 2015 WL 4967535, at *9 (internal citations omitted). As discussed above, Plaintiffs have failed to plead any pre-sale knowledge on the part of Defendants, and, because this is dispositive of the claim, the Court need not address other arguments the parties raise. As such, this claim is DISMISSED WITH PREJUDICE.

### D.   UCL Claim

Plaintiffs also bring a claim under California Unfair Competition Law, which prohibits any "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. This statute prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

Plaintiffs assert a UCL claim under all three prongs. SAC ¶¶ 92–98. As set forth below, Plaintiffs have failed to plead knowledge, and thus, the UCL claim is dismissed in its entirety.

### i.   Unlawful

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (internal quotation marks omitted). That is, a defendant violates the UCL's prohibition on "unlawful" business practices if it engages in a business practice that is forbidden by some other statute or the common law. *Zhang v. Superior Court*, 57 Cal. 4th 364, 380 (2013). Here, Plaintiff predicates her claim under the "unlawful" prong on: (a) violations of the CLRA and (b) violations of the FAL. SAC ¶ 97.

First, because the Court has found that Plaintiff's claim for violation of the CLRA was insufficiently pled, Plaintiff cannot state a claim for violation of the UCL based on that violation of the CLRA. *See Daugherty*, 144 Cal. App. 4th at 837. As discussed above, Plaintiffs' attempt to predicate their UCL claim on a violation of the FAL also fails as well. Therefore, Plaintiffs fail to establish a violation of the UCL under the unlawful prong.

### ii.   Fraudulent

Plaintiff also asserts a UCL claim under the "fraudulent" prong of the UCL, alleging that Defendants' "omissions regarding risks associated with the Subject Phones were likely to deceive a reasonable person." SAC ¶¶ 94, 96. This, too, fails. A "fraudulent" business act or practice within the meaning of the UCL is one that is likely to deceive members of the public. *Davis*, 691 F.3d at 1169; *Weinstat v. Dentsply Intern., Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). As with claims under the FAL, "a failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 144 Cal. App. 4th at 838. Hence, "absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Hodsdon*, 162 F. Supp. 3d at 1026 (quoting *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007)). As a result, the Court must dismiss Plaintiffs' "fraudulent" theory under the UCL for the same reasons the Court dismissed Plaintiffs' FAL and CLRA claims: Plaintiffs have failed to allege Defendants' knowledge of the defect and

United States District Court
Northern District of California

thus a duty to disclose.

### iii.   Unfair

Finally, the Court comes to Plaintiffs' allegation that Defendants have engaged in an "unfair" act or practice within the meaning of the UCL. SAC ¶¶ 94–95. Plaintiffs allege that Defendants' "business practices, including the manufacture and sale of phones with a risk of overheating, explosion and fire that [Defendants] failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices, violating the unfair prong of the UCL." *Id.* ¶ 95. But again, "the failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e., a defect of which it is not aware, does not constitute an unfair . . . practice." *Wilson*, 668 F.3d at 1146 n.5 (citing *Daugherty*, 144 Cal. App. 4th at 838–39); *see also Hodsdon*, 891 F.3d at 867 (holding that a defendant's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical" and thus was not "unfair"). Consequently, Plaintiffs' failure to adequately plead Defendants' knowledge of the defect is fatal to their claim of "unfairness" as well.

### iv.   Conclusion

In sum, the Court holds that Plaintiffs' have failed to adequately plead their UCL claim and DISMISSES this cause of action WITH PREJUDICE.

### E.   Unjust Enrichment

The Court turns next Plaintiffs' claim for unjust enrichment. *See* SAC ¶¶ 113–114. Plaintiffs allege that as a result of Defendants' wrongful and fraudulent acts and omissions, Defendants "charged a higher price for the Subject Phones than the Subject Phones' true value" and "enjoyed the benefit of increased financial gains" to the detriment of Plaintiffs, "who paid a higher price for Subject Phones which actually had lower values." *Id.* Defendants move to dismiss Count 4 on the grounds that (1) it is subject to Rule 9(b) and was not properly pled under this heightened pleading standard, (2) Plaintiffs have not plausibly pled that their phones had any defect, (3) California law does not permit unjust enrichment where an express and limited warranty exist, and, in a footnote, (4) California does not recognize unjust enrichment as a cause

United States District Court
Northern District of California

1    of action at all. Mot. 22–23; *see also* Reply 14–15. Plaintiffs maintain that unjust enrichment is an

2    actionable claim under California law and that their unjust enrichment claim has been properly

3    pled as a "valid theory of recovery." *See* Opp'n 19–20. Plaintiffs also argue that the Court cannot

4    address the limited and express warranty provisions because the Court cannot take judicial notice

5    of materials "not within the confines of the SAC." *Id.* at 20.

6           There has been significant confusion over whether California law provides for a standalone

7    cause of action for "unjust enrichment. *See, e.g.*, *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d

8    1088, 1099 (N.D. Cal. 2007). In 2015, the Ninth Circuit indicated that, "in California, there is not

9    a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"

10   *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But in 2017, the Ninth

11   Circuit recognized that the California Supreme Court later "clarified California law, allowing an

12   independent claim for unjust enrichment proceed." *Bruton v. Gerber Prod. Co.*, 703 Fed. App'x

13   468, 470 (9th Cir. 2017) (citing *Hartford Casualty Ins. Co. v. J.R. Mktg.*, LLC, 61 Cal. 4th 988,

14   1000 (2015)); *see also In re Burke*, No. 1:09-BK-12469, 2019 WL 6332370, at *3 (B.A.P. 9th Cir.

15   Nov. 25, 2019).

16          California courts have described unjust enrichment as follows: "[U]njust enrichment is a

17   common law obligation implied by law based on the equities of a particular case and not on any

18   contractual obligation." *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008).

19   "Where the doctrine applies, the law implies a restitutionary obligation, even if no contract

20   between the parties itself expresses or implies such a duty." *Hartford*, 61 Cal. 4th at 998. As

21   relevant here, "traditional equitable principles" apply to claims for unjust enrichment. *Ghirardo v.*

22   *Antonioli*, 14 Cal. 4th 39, 50 (1996). This includes "the general principle of equity that equitable

23   relief will not be afforded when the plaintiff's remedies at law are adequate to redress his or her

24   injury." *Ramona Manor Convalescent Hosp. v. Care Enterprises*, 177 Cal. App. 3d 1120, 1140

25   (1986). Thus, an action for unjust enrichment is unavailable if plaintiff is entitled to compensatory

26   damages. *Id.* ("[A]n action for unjust enrichment is inappropriate in the circumstances of the case

27   at bench because Ramona can obtain full redress for its loss of profits under its action for

28   [intentional interference with contractual relations]").

1      Defendants' argument regarding the express warranty is not determinative at this stage.

2  Defendants are correct to state that unjust enrichment claims cannot move forward when a contract

3  defining the rights of the parties exists. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d

4  1151, 1167 (9th Cir. 1996). However, even if the Court were to take judicial notice of the express

5  limited warranty submitted by Defendants, the Court would not be able to conclude at this stage of

6  the proceedings that the warranty is a "valid or binding contract[]." *In re Google Assistant Privacy*

7  *Litig.*, 457 F. Supp. 3d 797, 814 (N.D. Cal. 2020) (quoting *Datel Holdings Ltd. v. Microsoft Corp.*,

8  712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010)).

9      However, Defendants are correct that plaintiffs have not satisfied the Rule 9(b) pleading

10  requirements for a fraud claim since Plaintiffs have not factually established that Defendants had

11  pre-sale knowledge of the defects that would have required disclosure. *See Wilson*, 668 F.3d at

12  1141. To be sure, "knowledge" need not be plead particularly, even in the fraud context, see

13  *United Healthcare Ins. Co.*, 848 F.3d at 1184, but Plaintiffs have not sufficiently plead any

14  knowledge. Plaintiffs argue that the Court should not "dismiss [Plaintiffs'] claim for restitution

15  based solely on its label" and instead should review the SAC to determine whether Plaintiffs have

16  alleged "a valid theory of recovery." Opp'n 19 (citing *City of Los Angeles v. Wells Fargo & Co.*,

17  22 F. Supp. 3d 1047, 1061 (C.D. Cal. 2014)). The Court has found that Plaintiffs have failed to

18  allege a valid theory of recovery due to the failure to plead sufficient facts. Thus, the Court will

19  dismiss Plaintiffs' unjust enrichment claim because Plaintiffs have failed to establish that

20  Defendants had any knowledge of any defect and any corresponding obligation to disclose the

21  defect.

22      Accordingly, Defendants' motion is GRANTED as to the unjust enrichment claim, and it is

23  DISMISSED WITH PREJUDICE.

24

25  **V.    ORDER**

26      For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to

27  Dismiss is GRANTED as to Plaintiffs' claims under California's Unfair Competition Law, False

28  Advertising Law, Consumer Legal Remedies Act, and unjust enrichment. These claims are

United States District Court
Northern District of California

1   DISMISSED WITH PREJUDICE.

2

3   Dated: December 24, 2020

4   _____

5   BETH LABSON FREEMAN
    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28